IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-14 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI ASSOCIATION, | § | |
| INC., and RONALD BEEMAN, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S COMPLAINT**

Plaintiff Bear Ranch, LLC complains of defendants HeartBrand Beef, Inc., American Akaushi Association, Inc., and Ronald Beeman, based upon actual knowledge as to itself and its own actions and upon information and belief as to all other persons and matters, as follows:

**Nature of the Case**

1.  Bear Ranch brings this action under the Sherman Act and Packers & Stockyards Act seeking declaratory and injunctive relief preventing defendants from monopolizing the market for Akaushi beef products in the United States and engaging in unfair practices in the livestock industry. Plaintiff further seeks declaratory relief as to its rights and duties with regard to defendants with respect to certain Akaushi cattle it now owns.

**Parties**

2.  Plaintiff Bear Ranch, LLC is limited liability company whose member is a citizen of Florida.

3.  Defendant HeartBrand Beef, Inc. is a Texas corporation with its principal place of business in this District and Division.

4. Defendant American Akaushi Association, Inc. (AAA) is a Texas corporation with its principal place of business in this District and Division.

5. Defendant Ronald Beeman is a citizen of Texas.

## Jurisdiction and Venue

6. This Court has subject-matter jurisdiction under 15 U.S.C. §§ 4, 15, and 26, and 28 U.S.C. §§ 1331, 1332, 1337, and 1367. The citizenship of the parties is diverse, and the matter in controversy, without interest and costs, exceeds the sum or value of $75,000.

7. Venue exists in this District under 28 U.S.C. § 1391(b) and 15 U.S.C. § 22. All defendants reside in this District, a substantial part of the events or omissions giving rise to plaintiff's claims occurred here, and defendants are found and transact business here.

8. There is an actual, justiciable controversy between the parties concerning the rights and duties of plaintiff with regard to certain cattle it now owns. Declaratory relief will resolve this controversy.

## Factual Allegations

**A.     Relevant Market and HeartBrand's Monopoly Power**

9. Akaushi cattle are a breed of cattle that trace their lineage to Japan. As a result of their unique genetics, Akaushi cattle are predisposed to develop a high amount of intramuscular fat (marbling) and a relatively high concentration of monounsaturated fat to saturated fat. As a result, beef from Akaushi cattle is prized for its rich flavor, tenderness, and juiciness. The muscle fibers in Akaushi beef are longer and thinner than in beef from American breeds of cattle, and Akaushi beef has a higher water-binding capacity, which helps keep the beef moist and fresh. Those attributes, in combination with the beef's particular fatty acid composition, result in significantly more tender beef, which is consistently rated several levels above USDA prime.

10. In addition, the particular fatty acid composition of Akaushi beef has health benefits over beef from traditional American breeds such as Angus beef. Akaushi beef is a significant source of oleic acid and conjugated linoleic acid, which studies have shown can lead to lower cholesterol levels and the prevention of coronary heart disease. A study by a Texas A&M University researcher, for example, showed that daily consumption of Akaushi beef led to better health results than daily consumption of Angus beef.

11. Akaushi beef reaches consumers through the slaughter of Akaushi cattle raised specifically for beef production. After being weaned, cattle spend a significant amount of time feeding until they reach a certain finished weight. The cattle are then either sold or bailed to packers and transported to a packing plant, where they are killed and their carcasses are processed into various primal cuts, including rounds, chunks, loins, and flanks. The primal cuts, or small sub-primal cuts, are then packed for sale. The packer may itself sell the beef, or it may return the beef to the producer of the cattle to sell the beef, to customers.

12. The sale of Akaushi beef is a relevant product market. Akaushi beef is a distinct product with a specialized group of customers, for whom the beef has no reasonable substitute. It differs from beef from American breeds of cattle because of the genetic predisposition of Akaushi cattle to intense marbling and higher proportions of unsaturated fat, oleic acid, and conjugated linoleic acid. The price of Akaushi beef is as much as ten times higher than the price of beef from American breeds of cattle and does not move in price harmony with that beef. There is no substitute food product to which customers for Akaushi beef likely would turn in sufficient numbers to render a small but significant non-transitory increase in price unprofitable.

13. The United States is a relevant geographic market for the production and sale of Akaushi beef. Akaushi beef is sold to customers throughout the United States, and packers

outside the United States face significant practical and financial barriers to importation of this beef. A small but significant, non-transitory increase in the price of Akaushi beef in the United States likely would not cause customers here to turn to foreign suppliers in sufficient volumes to make such a price increase unprofitable.

14. The production and sale of Akaushi beef in the United States is a line of interstate commerce and a relevant product market.

15. Defendant HeartBrand produces fed Akaushi cattle in Texas and then sells the beef produced from its cattle to customers throughout the United States.

16. HeartBrand has monopoly power in the market for the sale of Akaushi beef in the United States and has had such monopoly power since the 1990s. It has at least a 90% share of the market for the sale of Akaushi beef in the United States. It represents on its website that it is the only source in the United States for Akaushi beef, i.e., that it has a 100% market share.

17. HeartBrand acquired its market power because Japanese laws protect Akaushi cattle as a national treasure and highly restrict their export. HeartBrand's predecessor acquired a small nucleus of Akaushi breeding cattle in the United States in the 1990s, and HeartBrand grew that herd while declining to sell cattle from the herd. The Japanese export restrictions create significant barriers to entry into the market for the sale of Akaushi beef in the United States, by severely limiting the supply of Akaushi cattle.

**B.  Defendants' Exclusionary Strategy**

18. HeartBrand has engaged in a practice of selling its Akaushi cattle to third parties while purporting to require those purchasers, through contractual provisions, not to compete with HeartBrand in the sale of fed Akaushi cattle.

19. HeartBrand has not limited its assertion of those anticompetitive restrictions to the Akaushi cattle sold to purchasers. Rather, it has asserted that restrictions on the sale or use of Akaushi cattle apply not only to cattle purchased from HeartBrand, but to offspring of those cattle and even to Akaushi cattle bought from other sellers and not subject to any contract with HeartBrand. And HeartBrand purports to contractually bar anyone who has purchased Akaushi cattle from it from marketing any of the purchaser's cattle or beef -- acquired from any source whatsoever -- as being derived from or having the benefits of Akaushi cattle.

20. HeartBrand is not entitled to alienate its cattle while asserting that those cattle cannot be used to compete with it and, moreover, asserting that none of the purchaser's cattle can be used to compete with it. Likewise, HeartBrand is not entitled to conspire with the AAA, an Akaushi breed club, to force Akaushi cattle purchasers to abide by HeartBrand's unlawful restrictions. By that conduct, HeartBrand seeks to reserve for itself a monopoly in the market for the sale of Akaushi beef in the United States.

21. HeartBrand has drafted a set of restrictions that it requires purchasers of Akaushi cattle to sign, purporting to restrict them from competing with HeartBrand in the relevant market by restricting purchasers' sale or transfer of fed Akaushi cattle for processing into Akaushi beef. Some of those restrictions directly prohibit competition with HeartBrand, and others rely on membership in a breed club that HeartBrand founded -- the AAA -- to require that purchasers of Akaushi cattle from HeartBrand may sell them only to third parties who are members of the AAA. Members of the AAA, in turn, have signed a contract with HeartBrand containing the same contractual restrictions.

22. The specific restrictions that HeartBrand purports to impose on purchasers of Akaushi cattle include:

- purchased cattle may not be sold to third parties;
- offspring of those cattle may be sold only to HeartBrand or AAA members;
- the purchaser must register all offspring of the purchased cattle with the AAA and must subject itself to AAA regulations;
- the purchaser may not collect or sell semen from the purchased cattle or from the progeny of those cattle; and
- after termination of the contract, the purchaser may not market any cattle or beef as derived from or having health benefits of Akaushi cattle for 50 years;

23. Those restrictions would require that all fed Akaushi cattle be returned to HeartBrand before being processed into Akaushi beef and sold to consumers, or the resulting beef may not be identified as Akaushi.

24. The contract containing these anticompetitive restrictions has a severability clause, by which the unenforceability, invalidity, or illegality of the restrictions does not affect the sale of the Akaushi cattle to the purchaser.

25. Defendants have asserted that the anticompetitive contract restrictions govern even Akaushi cattle purchased from other sources, even though these cattle are not subject to any purchase contract with HeartBrand.

26. Bear Ranch has acquired hundreds of Akaushi cattle from such other sources. None of those purchases were from HeartBrand or made under a contract that purports to restrict the use or sale of the purchased cattle or their offspring, or to require registration of cattle with the AAA or compliance with AAA rules. Specifically:

- In June 2011, Bear Ranch purchased 514 Akaushi cattle from Beeman d/b/a Beeman Ranch for about $2.6 million. The purchase was not made from HeartBrand or made under a contract that purports to restrict the use or sale of the cattle or their offspring or to require registration of the cattle or their offspring with the AAA or compliance with AAA rules.

- In July 2011, Bear Ranch purchased 195 Akaushi cattle from Twinwood Cattle Company, Inc. The purchase was not made from HeartBrand or under a contract that purports to restrict the use or sale of the cattle or their

- In December 2010, Bear Ranch purchased 50 Akaushi cattle from Tony Spears. The purchase was not made from HeartBrand or under a contract that purports to restrict the use or sale of the cattle or their offspring or to require registration of the cattle or their offspring with the AAA or compliance with AAA rules.

27. Bear Ranch's sole purchase of Akaushi cattle from HeartBrand was in July 2010, when it purchased 424 Akaushi cattle for a price of about $2.4 million. The contract included the anticompetitive restrictions described above, subject to the severability clause.

28. Despite the fact that most of Bear Ranch's Akaushi cattle were purchased from sources other than HeartBrand, HeartBrand and the AAA have asserted that the anticompetitive restrictions in the contract with HeartBrand apply to all the Akaushi cattle:

29. Specifically, in August 2011, the AAA sent Bear Ranch a request to submit a "whole herd" inventory report, and, in September 2011, the AAA similarly sent Bear Ranch an invoice for a whole-herd reporting fee. Under its whole-herd reporting system, the AAA assesses a fee on reproductively mature cattle that will bear offspring in a relevant season, spring or fall. The AAA calculated the reporting fee it demanded based on Bear Ranch's entire population of Akaushi cattle, and the AAA said that Bear Ranch's entire herd of Akaushi cattle is subject to the AAA reporting and inventory requirements.

30. Similarly, the AAA's regulations require the submission of DNA samples for Akaushi cattle that are required to be registered, and, in November 2011, the AAA sent Bear Ranch a notice that it must submit DNA samples for all its Akaushi cattle, without limitation. In January 2012, the AAA again sent Bear Ranch a demand to pay the reporting fee based on all of plaintiff's Akaushi cattle, without limitation. And HeartBrand's chairman, Beeman, endorsed the AAA's demands at a February 2012 meeting of AAA members, claiming that Bear Ranch

was in violation of its contract. HeartBrand and the AAA have agreed or conspired to make those overbroad impositions of the contractual restrictions and thereby restrain Bear Ranch from competing with HeartBrand.

31. By its overbroad imposition of these contractual restrictions, HeartBrand intends to sell its cattle to purchasers while retaining monopoly power in the market for the sale of Akaushi beef in the United States. Under HeartBrand's strategy, all Akaushi beef must come to market through HeartBrand, or else the beef cannot be identified as Akaushi. That is an anticompetitive attempt to monopolize the relevant markets by creating contractually -- or simply asserting -- nonexistent intellectual-property rights in property sold to others, and even property that others have independently acquired or produced.

32. Similarly, HeartBrand illegitimately asserts a registered trademark in the word Akaushi. Specifically, the title of HeartBrand's website has a trademark registration symbol after the word Akaushi, stating: "Welcome to the only source for Akaushi® Beef." HeartBrand has not registered the word Akaushi as a trademark. Indeed, when HeartBrand applied to register a trademark on the phrase HEARTBRAND AKAUSHI BEEF (an application that it later abandoned), the U.S. Patent & Trademark Office required HeartBrand to disclaim the phrase AKAUSHI BEEF as merely descriptive of origin.

33. HeartBrand has abused its monopoly power in the market for the sale of Akaushi beef in the United States in order to maintain that power and restrict competition. To the extent it does not have monopoly power in that market, it has engaged in exclusionary conduct with the specific intent of achieving monopoly power in the market; if its conduct is allowed to proceed, there is a dangerous probability that it will succeed in attaining that power. HeartBrand's

exclusionary conduct will deny consumers the benefit of competition and will result in higher prices for the sale of Akaushi beef in the United States.

34. Defendants' anticompetitive strategy injures Bear Ranch in its business by seeking to restrict Bear Ranch's ability to sell fed Akaushi cattle to packers for processing into Akaushi beef sold in the United States and to outsource the processing of those cattle and itself sell Akaushi beef in the United States. Defendants' violation of the antitrust laws threatens to bar Bear Ranch from the market for the sale of Akaushi beef in the United States, an injury as to which damages cannot reasonably be estimated.

### First Claim
### (Sherman Act § 1)

35. Plaintiff realleges the material factual allegations in the preceding paragraphs.

36. The restrictions described above constitute a conspiracy among defendants that unreasonably restrains trade in the market for the sale of Akaushi beef in the United States, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.

37. Bear Ranch seeks a judgment adjudging and declaring that defendants have entered into an unlawful conspiracy which unreasonably restrains the trade in that market, in violation of § 1 of the Sherman Act, and enjoining defendants and all persons, firms, and corporations acting on their behalf and under their direction or control from engaging in, carrying out, renewing or attempting to engage, carry out or renew, any contracts, agreements, practices, or understandings in violation of the Sherman Act.

## Second Claim
### (Sherman Act § 2)

38. Plaintiff realleges the material factual allegations in the preceding paragraphs.

39. By engaging in the acts and practices described above, HeartBrand has monopolized, attempted to monopolize, and conspired to monopolize the market for the sale of Akaushi beef in the United States.

40. Such conduct constitutes monopolization of, attempted monopolization of, and a conspiracy with the AAA and Beeman to monopolize the market for the sale of Akaushi beef in the United States, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.

41. Bear Ranch seeks a judgment adjudging and declaring that HeartBrand has monopolized, attempted to monopolize, and conspired to monopolize the interstate trade and commerce in the market for the sale of Akaushi beef in the United States, in violation of § 2 of the Sherman Act, and enjoining defendants and all persons, firms, and corporations acting on their behalf and under their direction or control from engaging in, carrying out, renewing or attempting to engage, carry out or renew, any contracts, agreements, practices, or understandings in violation of the Sherman Act.

## Third Claim
### (Packers & Stockyards Act)

42. Plaintiff realleges the material factual allegations in the preceding paragraphs.

43. At all material times, HeartBrand was a packer, a market agency, and a dealer within the meaning of the Packers & Stockyards Act, 7 U.S.C. §§ 191, 201.

44. The acts and practices described above occurred in connection with the receiving, marketing, buying, or selling on a commission basis or otherwise of livestock.

45. By those acts and practices, HeartBrand has engaged in unfair, unjustly discriminatory, and deceptive practices and devices, in violation of the Act, 7 U.S.C. §§ 192(a), 213(a).

46. Plaintiff seeks a judgment adjudging and declaring that HeartBrand has engaged in unfair, unjustly discriminatory, and deceptive practices and devices, in violation of the Act, 7 U.S.C. §§ 192(a), 213(a), and enjoining defendants and all persons, firms, and corporations acting on their behalf and under their direction or control from engaging in, carrying out, renewing or attempting to engage, carry out or renew, any contracts, agreements, practices, or understandings in violation of the Act.

## Fourth Claim
### (Declaration of Fraudulent Inducement of Contract)

47. Plaintiff realleges the material factual allegations in the preceding paragraphs.

48. Before execution of the contract for Bear Ranch's purchase of Akaushi cattle, HeartBrand represented that it was the only source of full-blood Akaushi cattle in the United States. Those representations were made in the July 2010 contract between HeartBrand and Bear Ranch for the purchase of Akaushi cattle.

49. HeartBrand made those representations knowingly and with intent to induce Bear Ranch to enter into the contract. As HeartBrand intended, those representations induced Bear Ranch to enter into the contract in justifiable reliance on the representations. Those representations are material because they reasonably affect the basis for the one-sided, anticompetitive restrictions of the contract.

50. HeartBrand's representations were knowingly false. HeartBrand and Beeman knew that full-blood Akaushi cattle were possessed by other person or persons in the United

States, including Johnie Broussard of Pine Island, Louisiana. Broussard's cattle were derived from the same group of cattle imported from Japan that HeartBrand now owns.

51. HeartBrand's fraudulent inducement of Bear Ranch to execute the contract injured Bear Ranch by subjecting an unrestricted purchase of cattle to burdensome purported restrictions that would greatly limit its ability to use and sell property it validly purchased. As a result of the fraudulent inducement, those collateral restrictions are invalid and unenforceable.

52. Bear Ranch seeks a judgment adjudging and declaring that the contract with HeartBrand is unenforceable.

## Fifth Claim
### (Declaration of Voidness As Against Public Policy)

53. Plaintiff realleges the material factual allegations in the preceding paragraphs.

54. Provisions of the contract for purchase of Akaushi cattle from HeartBrand purport to restrict Bear Ranch's ability to use and sell the cattle and the offspring of those cattle. Those provisions are invalid restraints of trade. Bear Ranch obtained title to the purchased cattle, and the putative restrictions on its ability to use and sell the cattle and the offspring of those cattle are an invalid attempt to restrain it in the exercise of gainful commerce, to prevent competition, and to restrict the alienability of property, making the contract void as against the public policy of the State of Texas.

55. Bear Ranch seeks a judgment adjudging and declaring that the contract with HeartBrand is unenforceable.

## Sixth Claim
### (Declaration of Contract Illegality)

56. Plaintiff realleges the material factual allegations in the preceding paragraphs.

57. Bear Ranch's contract with HeartBrand for the purchase of cattle is unenforceable on grounds of public policy because it is an illegal contract under the Business Opportunity Act, Tex. Bus. & Com. Code § 51.001 *et seq*.

58. HeartBrand is a "seller" under that Act because the contemplated sale is a "business opportunity." The sale is for an initial consideration of more than $500 for cattle to be used by Bear Ranch to begin a business in which HeartBrand represented that it would provide a "marketing program," including promotional literature provided by the AAA, and HeartBrand represented that Bear Ranch would earn a profit in excess of the initial consideration. HeartBrand violated the Act by failing to register that business opportunity with the Secretary of State before the offer for sale, *see id.* § 51.051, and that failure is an unlawful false, misleading, or deceptive act or practice, *id.* §§ 17.46(a), 51.302(a). It is against the public policy of the State of Texas to enforce unlawful contracts.

59. Bear Ranch seeks a judgment adjudging and declaring that the contract with HeartBrand is unenforceable.

**Seventh Claim**
**(Declaration of Breach of Contract)**

60. Plaintiff realleges the material factual allegations in the preceding paragraphs.

61. Bear Ranch maintains its position that the contractual restrictions on its use of the cattle it purchased from HeartBrand are illegal and unenforceable. If those restrictions were enforceable, however, Bear Ranch pleads in the alternative that the contract memorializes HeartBrand's promise to "protect" its "preeminent position" as "owner of Akaushi genetics outside of Japan." That promise required HeartBrand, if the restrictions imposed on plaintiff are valid, to impose the same restrictions on other purchasers of HeartBrand's Akaushi cattle. The

contract recognizes that the restrictions serve the purpose of attempting to "protect HEARTBRAND'S position" to the "mutual" economic benefit of HeartBrand and Bear Ranch.

62. Bear Ranch performed on the contract by purchasing the cattle as contemplated.

63. HeartBrand materially breached the contract by failing to impose the same restrictions on all purchasers of its Akaushi cattle. Instead, HeartBrand sold Akaushi cattle without restrictions to one or more buyers, including Beeman.

64. HeartBrand's breach of the contract caused Bear Ranch injury by leaving it exposed to burdensome restrictions on its use of the cattle purchased under the contract, while other purchaser or purchasers from HeartBrand are not subject to the same restrictions.

65. Bear Ranch seeks a judgment adjudging and declaring that HeartBrand materially breached the contract for the purchase of cattle by selling Akaushi cattle to other purchaser or purchasers without imposing on them the same restrictions imposed on Bear Ranch and, therefore, that the contract is unenforceable.

**Eighth Claim**
**(Declaration of No Contract Restrictions)**

66. Plaintiff realleges the material factual allegations in the preceding paragraphs.

67. Bear Ranch maintains its position that the contractual restrictions on its use of the cattle it purchased from HeartBrand are illegal and unenforceable. If those restrictions are enforceable, however, Bear Ranch pleads in the alternative as follows:

68. Bear Ranch has made several unrestricted purchases of Akaushi cattle that are not subject to any contract with HeartBrand. Specifically, Bear Ranch bought 514 Akaushi cattle from Beeman d/b/a Beeman Ranch, 195 Akaushi cattle from Twinwood Cattle Company, Inc., and 50 Akaushi cattle from Tony Spears.

69. Those cattle and their descendants are not subject to restrictions under any contract with HeartBrand or any contract restricting how Bear Ranch may use or sell the cattle or requiring registration of cattle with the AAA or compliance with AAA rules.

70. Bear Ranch seeks a judgment adjudging and declaring that the cattle it purchased from sellers other than HeartBrand, and the descendants of those cattle, are not subject to restrictions under a contract with HeartBrand, the AAA, or Beeman and are not subject to any registration or other requirements with the AAA.

## Ninth Claim
### (Declaration of No Contract Restrictions)

71. Plaintiff realleges the material factual allegations in the preceding paragraphs.

72. Bear Ranch maintains its position that the contractual restrictions on its use of the cattle it purchased from HeartBrand are illegal and unenforceable. If those restrictions are enforceable, however, Bear Ranch pleads in the alternative as follows:

73. Bear Ranch's herd of Akaushi cattle now includes offspring of the offspring of the cattle it purchased from HeartBrand. Bear Ranch's contract with HeartBrand for the purchase of cattle does not purport to restrict such offspring of offspring, or any later generations of cattle, and those cattle are not subject to restrictions under a contract with HeartBrand.

74. Bear Ranch seeks a judgment adjudging and declaring that offspring of offspring, and later-generation descendants, of the cattle it purchased from HeartBrand are not subject to any restrictions under a contract with HeartBrand, the AAA, or Beeman and are not subject to any registration or other requirements with the AAA.

**Prayer for Relief**

Wherefore, Bear Ranch respectfully requests that the Court enter judgment as follows:

A. That the Court adjudge and declare that HeartBrand and the AAA have entered into an unlawful conspiracy which unreasonably restrains the interstate trade and commerce in the market for the sale of Akaushi beef in the United States, in violation of § 1 of the Sherman Act.

B. That the Court adjudge and declare that HeartBrand has monopolized, attempted to monopolize, and conspired to monopolize the interstate trade and commerce in the market for the sale of Akaushi beef in the United States, in violation of § 2 of the Sherman Act.

C. That the Court adjudge and declare that HeartBrand has engaged in unfair, unjustly discriminatory, and deceptive practices and devices, in violation of the Packers & Stockyards Act, 7 U.S.C. §§ 192(a), 213(a).

D. That HeartBrand, the AAA, Beeman, and all persons, firms, and corporations acting on their behalf and under their direction or control be permanently enjoined from engaging in, carrying out, renewing or attempting to engage, carry out or renew, any contracts, agreements, practices, or understandings in violation of the Sherman Act or the Packers & Stockyards Act.

E. That the Court adjudge and declare that HeartBrand's contract with Bear Ranch is unenforceable.

F. That the Court adjudge and declare that the cattle Bear Ranch purchased from sellers other than HeartBrand, and the descendants of those cattle, are not subject to restrictions under a contract with HeartBrand, the AAA, or Beeman and are not subject to any registration or other requirements with the AAA.

G. That the Court adjudge and declare that offspring of offspring, and later-generation descendants, of the cattle Bear Ranch purchased from HeartBrand are not subject to any restrictions under a contract with HeartBrand, the AAA, or Beeman and are not subject to any registration or other requirements with the AAA.

H. That Bear Ranch have such other relief as the Court may consider necessary or appropriate.

I. That Bear Ranch recover the costs of this action, including a reasonable attorney's fee.

Dated:  March 6, 2012.

Respectfully submitted,

s/ R. Paul Yetter
R. Paul Yetter
Attorney in Charge
State Bar No. 22154200
J. Campbell Barker
State Bar No. 24049125
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
 (713) 632-8000
 (713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway
Lubbock, Texas 79401
 (806) 762-0214
 (806) 762-8014 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC