UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6-12-14 |
| | § | |
| HEARTBRAND BEEF, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Akaushi cattle, a national treasure of Japan, are the subject of this antitrust

suit deep in the heart of Texas.  The issue before the Court is whether to grant

Twinwood Cattle Company's motion to intervene in the lawsuit Plaintiff Bear

Ranch, LLC filed against Defendants HeartBrand Beef, Inc., American Akaushi

Association, Inc., and Ronald Beeman, the chairman of HeartBrand Beef, Inc.

(collectively, the "HeartBrand Defendants").  After considering the facts of the

case, the arguments of counsel, and the applicable authorities, this Court is of the

opinion that Twinwood's motion must be put out to pasture.  Twinwood's motion

to intervene is therefore **DENIED.**

### I.   BACKGROUND

Akaushi cattle are native to Japan.  According to the parties, Akaushi meat is

predisposed to developing higher marbling than does the meat of ordinary cattle, as

well as a higher proportion of monounsaturated fat.  The parties allege that this

1

tendency gives Akaushi meat a taste that is renowned for its flavor, tenderness, and juiciness.  Japan places severe restrictions on the export of Akaushi cattle.

HeartBrand is the self-proclaimed sole source of 100% pure Akaushi beef in the United States.  In 1994, HeartBrand's predecessor exploited, in HeartBrand's own words, a "loophole" in a trade agreement between the United States and Japan, and imported a small number of pure-bred Akaushi cattle to Texas.  *Our History*, HEARTBRAND BEEF, http://www.heartbrandbeef.com/?page=shop/history (last visited Oct. 31, 2012).  Since that time, HeartBrand has used those original animals to breed a larger herd of pure-bred, or "full blood," Akaushi cattle. HeartBrand uses this herd to supply Akaushi beef products to restaurants, retailers, and consumers.  Additionally, it sells Akaushi cattle and semen to other beef producers.  When HeartBrand makes these sales, its contracts contain a number of provisions that create obligations and duties for purchasers.  Notably, these provisions include requirements that purchasers register all Akaushi offspring with Defendant American Akaushi Association and abide by that Association's regulations.  The provisions also forbid purchasers from collecting or selling Akaushi semen and restrict how purchasers may market and sell Akaushi cattle and meat products to third parties.

In 2010 and 2011, Bear Ranch purchased a total of almost 1,200 Akaushi cattle from HeartBrand and other producers, including the proposed intervenor

Twinwood, who had themselves purchased cattle from HeartBrand.  Then, in March 2012, Bear Ranch brought this suit alleging that the obligations and restrictions contained in HeartBrand's sales contract violate federal antitrust law and are unenforceable under Texas law.  In the alternative, if the contractual restrictions are deemed lawful, Bear Ranch contends that the HeartBrand Defendants breached the sales contract by not imposing the same restrictions on other purchasers of Akaushi cattle.  The HeartBrand Defendants have counterclaimed for breach of contract.

Twinwood now seeks to join the rodeo.  It moves to intervene as a "party-plaintiff" as a matter of right under Federal Rule of Civil Procedure 24(a) and permissively under Rule 24(b).  However, unlike Bear Ranch, it does not ask this Court to hold that the purchaser obligations and restrictions in HeartBrand's contracts are invalid.  Twinwood requests only a declaratory judgment that the "most favored nations" clause in its contract with HeartBrand entitles its to the same benefits that Bear Ranch has now and will receive if that company prevails in invalidating the obligations and restrictions in its own contract with HeartBrand.  Bear Ranch and the HeartBrand Defendants have momentarily ceased stamping their hooves at each other to join forces in opposition to Twinwood's motion.

## II.   INTERVENTION AS A MATTER OF RIGHT

Twinwood first argues that it is entitled to intervene as a matter of right under Rule 24(a)(2).   That rule requires the Court to allow intervention when "(1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which [it] seeks to intervene; (3) the disposition of that case may impair or impede the potential intervenor's ability to protect [its] interest; and (4) the existing parties do not adequately represent the potential intervenor's interest."   *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001); *see also* Fed. R. Civ. P. 24(a)(2).   A "[f]ailure to satisfy any one requirement precludes intervention of right."   *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc).   For the reasons discussed below, the Court concludes that Twinwood does not meet the second requirement because it does not have a legally recognized interest in the property or transaction underlying this suit.

To be entitled to intervention, a party must have a "direct, substantial, legally protectable interest in the proceedings."   *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* (*NOPSI*), 732 F.2d 452, 463 (5th Cir. 1984) (en banc) (citations and quotation marks omitted).   Under this standard, "something more than an economic interest is necessary."   *Id.* at 464.   The interest asserted must be

one "that the substantive law recognizes as belonging to or . . . owned by the applicant" for intervention. *Edwards*, 78 F.3d at 1004.

Decisions within the Fifth Circuit demarcate those interests that are sufficient to warrant intervention as of right. In *In re Lease Oil Antitrust Litigation*, 570 F.3d 244 (5th Cir. 2009), the State of Texas had the right to intervene to contest the distribution of unclaimed funds from a class action settlement. This was because, under state law, the State had a right to unclaimed or abandoned property, and thus had "a property right in interest from the unclaimed funds that [was] recognized under state law." *Id.* at 251. Likewise, an interest sufficient for intervention as a matter of right was found in *United Rentals, Inc. v. Martitrend, Inc.*, No. 00-3600, 2002 WL 230816 (E.D. La. Feb. 13, 2002), a case that arose out of a breached contract for the sale of damaged forklifts. *Id.* at *1. The plaintiff in that case, the owner of the forklifts, brought suit against the company that damaged the forklifts. *Id.* At the same time, the plaintiff agreed to sell the damaged forklifts to the intervenor, but breached the sales contract and sold instead to a different bidder. *Id.* The intervenor's asserted interest was sufficient because it had a contractual interest in the actual property underlying the suit—the damaged forklifts—the value of which was at issue in the plaintiff's claim for damages against the defendant. *Id.* at *3.

In contrast, courts have found that asserted interests are not sufficient to justify intervention when either no legally recognized interest existed or when the interest asserted was too contingent, speculative, or remote from the subject of the case.   In *NOPSI*, the plaintiff, a private utility company providing electric power to the City of New Orleans, filed suit against the defendant, a seller of natural gas, over a contractual dispute concerning fuel prices.  *NOPSI*, 732 F.2d at 454–55. The Mayor of New Orleans and a number of other citizens attempted to intervene on the ground that the electricity rates they paid would be increased if the fuel-pricing dispute was decided against the plaintiff utility company.  *Id.* at 460–61. The *NOPSI* court held this "purely economic interest" to be insufficient to justify intervention.  *Id.* at 466.

The district court relied on similar reasoning in *Adams v. Consol. Wood Prods. Emp. Benefit Plan*, No. 2:10-cv-310-TJW, 2011 WL 665821 (E.D. Tex. Feb. 14, 2011).  In that case, two workers, a grandfather and grandson, were badly injured while unloading wooden pallets from a tractor-trailer.  *Id.* at *1.  The grandfather filed a claim against his employer's ERISA plan, and the grandson, who was not covered by the plan, attempted to intervene because the employer's total insurance was capped at $1 million, such that any ERISA payment to the grandfather would limit the insurance money available to pay off the grandson's separate negligence suit.  *Id.* at *1, *4.  Despite the significant economic impact

6

the case might have on the grandson, the court denied intervention because the grandson had no legal interest in the ERISA plan itself.  *Id.* at *4.

*Texas v. Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985), demonstrates that speculative interests are insufficient.  In that case, the State of Texas filed for review of the U.S. Department of Energy's designation of several west Texas sites as nuclear waste depositories.  *Id.* at 551.  A large number of electrical utilities operating nuclear power plants moved to intervene, arguing that any delay caused by the review would increase their statutory obligations to pay into the Department's nuclear waste offset fund.  *Id.*  While the court noted that intervention might be appropriate if the legality of the offset fund itself was challenged, it stated that the asserted interest was too indirect; the intervenors' interest in the fund would only be implicated if the State's suit were successful, that success caused significant delays, and those delays increased the monetary demands on the fund.  *Id*. at 552.

These cases demonstrate that Twinwood does not satisfy the requirement of having a "direct, substantial, legally protectable interest in the proceedings." *NOPSI*, 732 F.3d at 463 (citations and internal quotations omitted).  In contrast to the cases allowing intervention when the intervenor asserted a statutory (*In re Lease Oil Antitrust Litigation*) or contractual (*Martitrend*) right to the property at issue in the lawsuit, Twinwood does not allege any ownership interest in Bear

Ranch's cattle.  Neither does the contract between Bear Ranch and Heartbrand vest Twinwood with any rights.  Instead, the sole interest alleged by Twinwood is that the terms of its own, separate contracts with HeartBrand will place it at a competitive disadvantage if it does not receive whatever benefits Bear Ranch already possesses or will receive from the disposition of this suit.  This is the type of interest that is both purely economic, like that in *NOPSI*, and indirect and speculative, like that in *Dep't of Energy*.  It cannot justify intervention under Fifth Circuit precedent.

Twinwood attempts to beef up its argument for intervention by citing two cases from other jurisdictions and a 1967 Supreme Court decision in which the courts granted intervention as a matter of right.  But *CRI, Inc. v. Watson*, 608 F.2d 1137 (8th Cir. 1979), actually aligns neatly with the Fifth Circuit cases cited above. In *Watson*, an investment firm sued an individual defendant for breaching his contract to sell his equity stake in a limited partnership.  *Id.* at 1139.  The broker who had negotiated the sale intervened, and the court held intervention to be proper because the broker was entitled to a commission under the sales contract that formed the subject matter of the suit and thus had a contractual interest that was directly affected by the defendant's breach.  *Id.* at 1139–40.  But the Bear Ranch contracts at issue in this case vest no rights in Twinwood; the interest Twinwood asserts in this case arises soley under the terms of its own contract with

8

HeartBrand and is simply contingent upon Bear Ranch's success.  *Cf. St. John's Univ. v. Bolton*, 450 F. App'x 81, 83 (2d Cir. 2011) (affirming the district court's conclusion that the proposed intervenor did not "have a direct, legally protected interest in the outcome of the underlying litigation sufficient to satisfy Rule 24(a), inasmuch as his interest is contingent both on [the plaintiff's] prevailing in the underlying action and on his prevailing in a separate action to enforce the agreement . . . .").[1]

Twinwood's reply brief relies heavily on *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129 (1967), an antitrust divestiture action in which the Supreme Court held that California and a utility met the Rule 24(a) criteria.  *See id.* at 135–36.  But the Fifth Circuit has noted two reasons why *Cascade*'s brief discussion of intervention—which does indeed take a broader view of the "interest" element—is of limited force.  *See NOPSI*, 732 F.2d at 466 n.28 (citing and discussing *Cascade*).  First, antitrust law vested the state intervenor with "substantive rights to be free of antitrust injury to its general economy."  *Id.*  Second, a subsequent Supreme Court case took a narrower view of

---

[1] The other case cited, *Am. Horse Protection Ass'n v. Veneman*, 200 F.R.D. 153 (D.D.C. 2001), was decided under a different test for mandatory intervention than the one that the Fifth Circuit follows.  *Veneman* applied the "liberal and forgiving standard" that the court thought appropriate in the D.C. Circuit, a standard under which the interest requirement could be dispensed with as long as the impairment and adequate representation requirements were met.  *Id.* at 157–58. Moreover, that court merged the Rule 24(a) analysis with the constitutional standing analysis. *See id.* at 157 ("[I]t is impossible to conjure a case in which an intervenor would have constitutional standing to intervene but not have a sufficient 'interest in the litigation' to justify intervention under Fed. R. Civ. P. 24(a)(2).").

the "interest" requirement—articulating the "significantly protectable" interest standard consistent with what the Fifth Circuit follows today—than did the *Cascade* Court, which was interpreting Rule 24(a)(2) in its infancy. *Id.* (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)); *see also* 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1908.1 (3d ed. 2007) (noting that "[w]ith an occasional rare exception, both the commentators and the lower courts have refused to regard *Cascade* as a significant precedent," that "it has been argued that *Cascade* must be limited to its own peculiar facts," and that *Cascade* was "complicated" by the fact that Rule 24 was amended during the pendency of the litigation (italics added)).

Twinwood's failure to satisfy the current "direct, substantial, legally protectable interest" requirement is further demonstrated by its argument that the "potential *stare decisis* implications of an adverse decision" in Bear Ranch's case establish the requisite interest.  Docket Entry No. 29, at 6 n.5; *see* Docket Entry No. 21, at ¶ 22.  The potential precedential effects of a court ruling are the type of indirect economic interests that are insufficient to confer intervention as of right.  Business litigation often has repercussions for other participants in the industry.  More particularly, it is often the case that one party will enter into similar contractual provisions with numerous counterparties.  This commonly occurs with intellectual property licenses, employment contracts, and consumer arbitration

agreements, to name just a few examples.  But Twinwood cites no case allowing a party to intervene as a matter of right because a lawsuit may rule on the validity or interpretation of a contractual provision similar, or identical, to one the intervenor also agreed to in a separate contract with one of the litigants.

For these reasons, Twinwood's interest is insufficient to justify intervention as a matter of right.

### III.   PERMISSIVE INTERVENTION

Twinwood also seeks this Court's permission to intervene under Rule 24(b). That Rule gives district courts discretion to allow intervention when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989); *see also* Fed. R. Civ. P. 24(b)(1)(B).  Even if these elements are present, however, permissive intervention "is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied."  *NOPSI*, 732 F.2d at 471 (citation, brackets, and ellipsis omitted).

Both Bear Ranch and the HeartBrand Defendants oppose permissive intervention on the ground that Twinwood's claim does not share a question of law

or fact in common with the claims in the underlying litigation.  In addition, the HeartBrand Defendants argue that Twinwood lacks standing to request permissive intervention and, furthermore, that Twinwood cannot establish an independent basis for federal jurisdiction over its claim.

"It is well-established . . . that a party must have independent jurisdictional grounds to intervene permissively under Rule 24(b)."  *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985) (citations and quotation marks omitted). Generally, jurisdiction is easily found when parties to seek to permissively intervene in a federal-question case; however, this is one of the "very few cases in which one who has sought to intervene as a plaintiff in a federal-question case [is] asserting a claim not raising a federal question."  7C CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1917 (3d ed. 2007).  Because Twinwood only requests a declaration regarding its state-law contract claim and because both Twinwood and HeartBrand are citizens of Texas, neither federal-question nor diversity jurisdiction is present.  Twinwood must therefore show the presence of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), which grants such jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  For that to occur, Twinwood's claim and the claims at issue between Bear Ranch and the HeartBrand Defendants must

be "derive[d] from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Arena v. Graybar Elec. Co.*, 669 F.3d 214, 221 (5th Cir. 2012).  Moreover, the claims "must be so interrelated that plaintiffs 'would ordinarily be expected to try them all in one judicial proceeding.'"  *Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983) (quoting *Gibbs*, 383 U.S. at 725)).

Twinwood cannot show that its claim and the claims in the original action are derived from a common nucleus of operative fact.  A common nucleus can be found where claims arise from the same incident, contract, or injury.  *See, e.g.*, *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 160, 165 (1997) (holding the standard satisfied when the plaintiff's state and federal law claims, both challenging a city's denial of demolition permits to that plaintiff, arose from the city's refusal to issue the permits); *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (holding similarly when a variety of claims between an insured, an insurer, and the local agent that the insured purchased the policy from all arose from the purchase and enforceability of a single insurance policy).  But such is not the case here.  The nucleus of operative fact that gives rise to the claims and counterclaims in this case consists of the formation and performance of Bear Ranch's contracts, as well as the allegedly illegal acts committed by the HeartBrand Defendants.  By contrast, the nucleus of operative fact that gives rise

to Twinwood's claim consists of the formation of the most favored nations clause contained in the Twinwood–HeartBrand contract. These are different contracts between different parties entered into under different circumstances. They are not derived from a common nucleus of operative fact.

Because Twinwood has not established an independent ground for subject matter jurisdiction over its claim, permissive intervention is inappropriate, and the Court need not determine whether Twinwood has standing to request permissive intervention or if Twinwood's suit has a question of law or fact in common with the underlying litigation. The Court notes, however, that even if Twinwood could meet the jurisdictional and Rule 24(b) prerequisites, the Court would exercise its discretion to deny permissive intervention. Twinwood's intervention would not produce the efficiency gains that justify intervention. The gravamen of Twinwood's complaint—that the "most favored nations" clause entitles it to any relief Bear Ranch obtains in this case from the HeartBrand restrictions[2]—is implicated only in the event that Bear Ranch prevails. Because that contingency would arise only at the completion of the litigation between Bear Ranch and HearBrand, Twinwood's involvement would only add a new chapter to this litigation raising distinct issues of contractual interpretation. And Twinwood

---

[2] Twinwood claims that its "most favored nations" clause entitles it to certain more favorable conditions that HeartBrand is currently giving Bear Ranch, though it has not alleged a single such condition. Adding this tag-along claim would also be inefficient and potentially confuse the main issues in this case. Once again, Twinwood will suffer no prejudice because it can file a separate lawsuit seeking any more favorable conditions that Bear Ranch currently enjoys.

suffers no prejudice from the denial of its intervention request as it is free to pursue the typical course of filing a separate lawsuit to enforce a "most favored nations" clause.

### IV.   CONCLUSION

Because Twinwood does not satisfy the standard for intervention as a matter of right and has not shown there to be an independent grounds of jurisdiction that could allow permissive intervention, some culling of the herd is appropriate. Twinwood Cattle Co.'s Opposed Motion for Leave to Intervene (Docket Entry No. 21) is **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 1st day of November, 2012.

_____
Gregg Costa
United States District Judge