# Vinson&Elkins

James A. Reeder, Jr.  jreeder@velaw.com
**Tel** +1.713.758.2202  **Fax** +1.713.615.5947

June 18, 2013

Judge Gregg J. Costa
c/o United States District Clerk
601 Rosenberg Street, Suite 613
Galveston, Texas 77550

      Re:    Cause No. 6:12-CV-14; *Bear Ranch, LLC v. HeartBrand Beef, Inc., et al.*; in the United States District Court for the Southern District of Texas

Dear Judge Costa:

      On behalf of Defendants HeartBrand Beef, Inc., Ronald Beeman, and the American Akaushi Association ("AAA"), we write to request a telephone conference with the Court to address the discovery dispute raised by Plaintiff Bear Ranch and to suggest a means of short-circuiting that dispute.

      Over the last few weeks, Bear Ranch has launched a substantial amount of short-notice third-party discovery and has demanded new corporate representative depositions on more than twenty topics and sub-topics. In addition, Bear Ranch has demanded—and received—information from Defendants about the lineage of numerous Akaushi cattle that they have identified as being of interest to them. However, Bear Ranch has of late insisted that it receive production of the AAA's entire cattle registry, a proprietary compilation of data created by Defendants at substantial cost, the disclosure of which could severely injure Defendants' business but which has no relationship to any legitimate claim in the case.

      The reason for this eleventh-hour push for new discovery, unfortunately, is tied to the fact development on the merits of the case. Bear Ranch initially pled this case as an antitrust case, alleging that HeartBrand's Akaushi beef is a product market distinct from other types of beef and that HeartBrand has monopoly power in that market. (Compl. ¶¶ 12, 16.) As the case has progressed, it has become clear that this claim is untenable, and that outside the context of this litigation, not even Bear Ranch considers Akaushi beef to be a product market distinct from other types of beef.

      As such, Bear Ranch has lately shifted its focus to an alternative theory—one that has no legal merit. Under the alternative theory, Bear Ranch asserts that it was fraudulently induced to contract with HeartBrand because it was misled into believing that HeartBrand *was* a monopolist with respect to Akaushi cattle. Clever though this theory may be, it is not one that Bear Ranch is actually willing to pursue to its legal end. Bear Ranch does not seek

**Vinson & Elkins LLP  Attorneys at Law**
Abu Dhabi  Austin  Beijing  Dallas  Dubai  Hong Kong  Houston  London  Moscow
New York  Palo Alto  Riyadh  San Francisco  Shanghai  Tokyo  Washington

1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
**Tel** +1.713.758.2222  **Fax** +1.713.758.2346  **www.velaw.com**

the only legally cognizable remedies for its fraud claims (rescission or damages). Instead, Bear Ranch would like to create a new contract, under which it can keep the cattle it bought without complying with the mutual promises it made to HeartBrand to obtain the cattle. That remedy is not a fraud remedy available under Texas law, and it is not one that is appropriate to the undisputed facts. Had this theory been the only one pled by Bear Ranch, instead of being secondary to an antitrust claim, Defendants would have sought dismissal of the case under Rule 12(b)(6). Given that this facially deficient theory is the only one advanced by Bear Ranch's late and burdensome discovery crush, the parties would benefit from a pause in discovery to more efficiently address whether Bear Ranch has stated a claim. To address that issue without further delay, Defendants are this day moving for judgment on the pleadings.

In addition, the risks to Defendants from disclosure of the registry far outweigh any benefit that production of the registry offers relative to the parties' heretofore cooperative sharing of lineage information on specific animals. First, the AAA registry has little relevance to Bear Ranch's claims. Bear Ranch seeks to prove that there are genuine Akaushi animals that are not in the HeartBrand herd and have not been registered by the AAA's members—but obviously, the registry is not the place to go looking for *unregistered* animals. To the extent Bear Ranch wants to argue that unregistered animals are full-blood Akaushi because their known forebears *are* registered, the current approach (in which Bear Ranch identifies the registered animals, and the AAA produces identification and lineage from the registry for those animals) is sufficient to meet Bear Ranch's needs without posing unnecessary risk to the AAA's interests. Second, the AAA's confidentiality concerns are real. The data compilation in the registry is virtually the AAA's only valuable asset; there is little else the AAA can offer its members other than its unique ability to certify the lineage and genetic identification of the entire registered herd and to supply AAA members with commercially valuable progeny data. This data would be exceedingly valuable to Bear Ranch, and just as troublingly, to its outside expert, who acts as a reproductive and genetic consultant and service provider to cattle ranchers across the country. Defendants should not face such risk without good reason, and here, there is none.

Defendants seek a telephone conference to propose that the Court stay discovery for a short period to allow for consideration of Defendants' Rule 12(c) motion as to Bear Ranch's fraud claim, and to hear Bear Ranch's response to that motion. Resolution of the motion would allow the curtailment of burdensome discovery or the tailoring of that discovery to relevant issues, so that the case may efficiently proceed to trial or resolution without unnecessary costs. In addition, because the recent discovery has prevented the timely availability of expert witness depositions, and because of a trial schedule conflict with Defendants' counsel, Defendants intend to request a short delay in the dispositive motions deadline and trial setting to allow the parties to finish the work that remains.

We thank the Court for its consideration.

Sincerely,

*/s/ James A. Reeder, Jr.*

James A. Reeder, Jr.

c:　*Via Email*
　　Arturo A. Rivera, Case Manager

　　*Via CM/ECF*
　　Counsel for Plaintiff Bear Ranch