IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
## TO DISMISS FRAUDULENT-INDUCEMENT CLAIMS

Defendants' motion to dismiss Bear Ranch's fraudulent-inducement claims (Dkt. #60) should be denied.  Like its prior motion for judgment on the pleadings (Dkt. #42), this motion is based largely on the incorrect premise that Bear Ranch seeks rescission, rather than damages for existing injury and prevention of future injury.  Bear Ranch does not seek to cancel the contract and put the parties in their positions before the contract, even assuming that would be feasible.  Instead, it affirms the contract and pursues an offsetting remedy for its loss from the fraud.

Its loss is the difference between the value of what Bear Ranch was induced to give up and the value of what it received.  Under the contract, it has parted with both monetary consideration (paying over $2 million for the cattle it bought) and in-kind consideration (forbearing from competitive conduct).  It continues to pay

in-kind consideration each passing day.  And, with the truth about the availability of Akaushi cattle now known, Bear Ranch knows that it received cattle worth less than the consideration it has paid.  Bear Ranch seeks damages for the overpayment. And because every day that it renders the in-kind consideration (adherence to competitive restrictions) adds to its out-of-pocket injuries, Bear Ranch seeks a declaration that its fraud defense offsets that future performance.

## I.    Factual and Procedural Background

Bear Ranch and HeartBrand entered into a contract embodying reciprocal promises.  HeartBrand agreed to sell 424 Akaushi cattle, and Bear Ranch agreed to pay over $2 million and to refrain from certain competitive conduct (as laid out in the contract).  Am. Compl. (Dkt. #59) ¶¶ 21-22, 27, 39.  HeartBrand delivered the cattle, and Bear Ranch paid the cash and limited its business operations per the contract restrictions.  *Id*. ¶¶ 27, 39.  (There is a dispute about the scope of the restrictions, but it is raised in a different claim not at issue here.)  The restrictions are ongoing and continue to restrict Bear Ranch's operations.  *See id.* ¶¶ 21-23.

Bear Ranch has since learned that, contrary to what HeartBrand said when it was selling the cattle—that one had to enter into a contract with HeartBrand to gain access to Akaushi genetics outside of Japan—Akaushi cattle and genetics had been widely marketed and sold by HeartBrand's predecessor and were possessed

by breeders outside of Japan.  *Id*. ¶ 38.  Bear Ranch had believed the claims of exclusivity, which supported the contract restrictions.  *Id*. ¶¶ 22, 37.

Accordingly, Bear Ranch's original complaint, filed in March 2012, sought a declaration of its fraudulent-inducement defense.  Compl. (Dkt. #1) ¶¶ 47-52.  Bear Ranch also pleaded that defense in answering HeartBrand's and Beeman's counterclaims.  *See* Ans. to Counterclaims (Dkt. #20) ¶ 38.  The parties then conducted extensive discovery on the fraud claim, as Bear Ranch noted in moving to amend its complaint to seek recovery of damages for the fraud.  *See* Mot. for Leave to Amend Compl. (Dkt. #43) at 4-6; Reply in Supp. (Dkt. #53) at 2-6.

For the first 15 months of the case, Defendants never argued that the fraud claim was badly pleaded.  Indeed, in response to interrogatories, they refused to provide any basis for their pleaded defense (in their answer) that the fraud count failed to state a claim.  *See* Exh. 29, Resp. to Mot. for Partial Dismissal (Dkt. #44-27).  Because Bear Ranch amended its complaint to drop its competition-law claims and add a damages claim, the Court denied Defendants' motion for partial judgment and allowed renewal of their arguments as to the amended complaint.  Mem. & Order (Dkt. #57) at 6.  The arguments, as reasserted, lack merit.

## II.    The Fraud Counts State Claims on Which Relief May Be Granted.

A motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted."  *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677

F.2d 1045, 1050 (5th Cir. 1982).   A court will not look beyond the face of the complaint, *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), which must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   It assumes all pleaded material facts are true and resolves all inferences for the plaintiff.   *Id*.

### A.      Bear Ranch Has Alleged Injury from Defendants' Fraud.

A fraudulent-inducement claim requires one to allege and later prove six elements: a material representation, its falsity, either the defendant's knowledge of the falsity or recklessness as to a positive assertion, intent to induce reliance, the plaintiff's entry into a contract in reliance on the representation, and injury.   *See Italian Cowboy Ptrs., Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (elements of fraud); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (fraudulent inducement is fraud where reliance is entry into a contract); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1998) (same); *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (citing Texas law).

As before, Defendants do not challenge the complaint as to the first five elements.   *See* Mot. (Dkt. #60) at 6-14.   The complaint identifies the material representations at issue, alleges falsity and knowledge, and explains how the

representations were intended to and did induce Bear Ranch to sign the contract. Am. Compl. ¶¶ 35-39.

The complaint then properly alleges injury from the fraud. Two types of injury are specifically alleged: overpayment for the cattle and subjecting the buyer to contract restrictions that limit its business activities, such as selling the cattle on the open market and selling the beef as Akaushi. *Id.* ¶ 39; *id.* ¶¶ 19-23 (describing contract limitations). Defendants argue (Mot. 6) that the complaint lacks an allegation that the cattle were worth less than "they were represented to be worth." By this they appear to reference a comparison of value received to the value parted with, which is the measure of out-of-pocket loss. *See Formosa Plastics*, 960 S.W.2d at 49 ("The out-of-pocket measure allows the injured party to recover the actual injury suffered measured by the difference between the value of that which he has parted with, and the value of that which he has received.") (quotation marks omitted). Bear Ranch has asserted just that injury, in alleging an "overpayment" for the cattle it received. Am. Compl. ¶ 39. It need not define well-understood terms to communicate their meaning. *See, e.g.*, Black's Law Dictionary (9th ed. 2009) (defining *actio quanti minoris* as "A purchaser's action to recover for his overpayment for a defective item," with no needed definition of "overpayment"); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("Plaintiffs seek recovery for their actual economic harm . . . e.g., overpayment, . . . .").

Nor is the existence of injury somehow implausible. The pleading test is whether the alleged facts raise the right to relief above a "speculative level," requiring a common-sense reading of the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, it is Defendants that tender a dubious proposition—that Bear Ranch was fraudulently induced into signing a contract that was totally fair. To the contrary, injury resulting from fraud is so ordinary that courts sometimes imply it. *See, e.g.*, 37 AM. JUR. 2D FRAUD & DECEIT § 265 (2d ed. & Supp. 2013) ("If the false statement relates to a material fact, the law may imply that the defrauded party has suffered an injury sufficient to defeat a recovery."); *see also Enis v. Bank of Am., N.A.*, 2013 WL 840696, at *3 (N.D. Tex. 2013) (unpub.) (pleading held adequate; court can "reasonably infer that the alleged RESPA violation resulted in unwarranted late fees and interest"). The point of HeartBrand's false representation of exclusivity—indeed, of any fraud—is for the wrongdoer to get something it would not obtain if the truth was known.

Unlike *Twombly* and *Iqbal*, which concerned the plausibility of wrongdoing in the first place, the complaint here does not allege that parallel action by phone companies is the product of collusion or that the Attorney General approved a

-6-

detainee policy while harboring personal animus on the basis of race or religion, thus opening the door to expansive discovery or bypassing qualified immunity. *Cf. Twombly*, 550 U.S. at 549-50; *Iqbal*, 556 U.S. at 668-69; *see also Iqbal*, 556 U.S. at 678-79 (expressing concern about "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions").

Nor is this case like *Luna v. Nationwide Prop. & Cas. Ins. Co.*, 798 F. Supp. 2d 821 (S.D. Tex. 2011), cited by Defendants, which concerned a plaintiff's attempt to turn a dispute about an insurer's valuation of property damage from Hurricane Ike into a claim of fraud and unreasonable business practices. The plaintiff alleged a business practice by the insurer of undervaluing property damage (which would allegedly show the insurer's knowledge of the falsity of its valuation of the plaintiff's property damage). *Id.* at 824. The complaint—identical to numerous other complaints filed by the plaintiff's counsel, *id.* at 827—gave no examples of the alleged business practices or how the claims adjuster had unreasonably denied the plaintiff's damage claims, *id.* at 828-31. Although Defendants describe that case as showing a failure to allege "plausible damages" (Mot. 7), the court was looking for allegations supporting a plausible inference of wrongdoing at all (i.e., any underappraisal of property damage). *Id.* The case was *Twombly* times two: seeking to infer collusion, without even parallel conduct.

Here, in contrast, the complaint states the misrepresentations by Defendants, explains their falsity with specific examples, and links how the claim of exclusivity caused Bear Ranch to overpay.  Am. Compl. ¶¶ 36-39.  None of the allegations is conclusory or fantastical.  Indeed, in *Erickson v. Pardus*, decided a few weeks after *Twombly*, the Supreme Court held that a prisoner's pro se complaint stating that a doctor's decision to withhold his Hepatitis C medication was "endangering his life" and causing "continued damage to [his] liver" was a sufficient allegation of substantial harm to survive a motion to dismiss.  551 U.S. 89, 91, 94 (2007).  The Court rejected the lower court's view that the plaintiff's common-sense injury allegations were "conclusory."  *Id.* at 93.

Nor does the complaint fail to serve its notice function.  It alleges the exact type of harm that naturally flows from fraud.  Am. Compl. ¶ 39; *cf. Cruz v. Allstate Tex. Lloyds*, 2011 WL 3502772, at *1 (S.D. Tex. 2011) (unpub.) ("Surely, the Defendants in this and similar cases can, without much intellectual effort, divine from Plaintiffs' allegations that Brunts is being accused of intentionally or negligently cheating Plaintiffs out of legitimately owed insurance proceeds."). Defendants have had no trouble answering the original and amended complaints. Indeed, the Order allowing amendment and giving Defendants time for a rebuttal expert was premised on the fact that Bear Ranch already served an expert report showing that 400 Akaushi cattle could be produced from a small initial group—

which we now know other sellers had—for far less than the price paid HeartBrand. *See* Mem. & Order 5 (allowing time for rebuttal expert); Exh. Q, Mot. for Leave to Amend Compl. (Dkt. #42-17) (expert report).   Any remaining questions about the calculation of Bear Ranch's damages can be addressed through discovery; they do not make the complaint so speculative that it fails to state a plausible claim. *See Nueces Cty. v. MERSCORP Holdings, Inc.*, 2013 WL 3353948, at *11 (S.D. Tex. 2013) (unpub.) ("Plaintiff has stated sufficient facts upon which Defendants can prepare an effective response and defense to all Plaintiff's allegations.   Nothing more is required at this stage of the litigation.") (citation omitted); *In re FEMA Trailer Formaldehyde Prods. Liability Litig.*, 2008 WL 5217594, at *4 (E.D. La. 2008) (unpub.) (holding that plaintiffs need not explicate their personal injuries in the complaint, as the defendants "will be allowed to conduct discovery to gain more knowledge in this area").

Although Defendants say that Bear Ranch's injury from being induced to submit to the burdensome ongoing contractual restrictions is not alleged to be pecuniary harm (Mot. 6-7), this case is all about financial harm.   The complaint repeatedly alleges how the contract restricts Bear Ranch's "sale or use" of the cattle, limits its "marketing" of the beef, and restricts its ability to "collect and sell" the semen.   Am. Compl. ¶¶ 19, 22-23, 39.   It states that the restrictions require registration with HeartBrand's captive breed club (the AAA), *id.* ¶ 22, and explains

that the AAA demands fees from Bear Ranch under the contract, *id.* ¶ 29. This alleges pecuniary harm. *See, e.g.*, *Spear Marketing, Inc. v. BancorpSouth Bank*, 2013 WL 3297593, at *8 (N.D. Tex. 2013) (unpub.) (single paragraph is sufficient allegation of injury from fraud); *Access Mediquip L.L.C. v. UnitedHealth Grp. Inc.*, 2013 WL 3049293, at *2 (S.D. Tex. 2013) (unpub.) ("Rule 9(b) requires no more detail than is provided by United . . . .").

Finally, Defendants' factual argument—that even if the public knew the truth, HeartBrand still would have tried to sell its cattle with restrictions—goes not to the adequacy of the pleading, but to proof of injury. If *nobody* (HeartBrand included) would have sold Akaushi cattle without these strict restrictions, then Bear Ranch will have a hard time showing that it got an unfair deal (i.e., that the cash and in-kind consideration it paid far exceed the value of the cattle). But this is merely a question of Bear Ranch's ability to prove its injury at trial, not of the adequacy of the complaint, which states a cognizable, recognized form of injury. Yet even if the Court were to consider factual matters at this juncture, there is ample evidence of Akaushi available for sale *without* restriction, including cattle born to the very Akaushi from which HeartBrand derived its own cattle. *See* Am. Compl. ¶ 38; Resp. to Mot. for Partial Dismissal (Dkt. #44) at 4-7.

###### B.    Contrary to the Motion, Bear Ranch Does Not Seek Rescission.

Defendants' central theme is that Bear Ranch impermissibly seeks to rescind the contract while affirming HeartBrand's delivery of consideration (cattle).  Mot. 8-14.  This misconceives the case.  To repeat what it's said before, Bear Ranch is *not* seeking rescission.  It alleges injury from the fraud, raised to offset Defendants' claims of breach and to support a damages recovery of the shortfall between what it got and what it gave.

In general, "one who is induced by fraud to enter into a contract has his choice of remedies.  He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid."  *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 676-77 (Tex. 2000); *see Andrews v. Powell*, 242 S.W.2d 656, 661 (Tex. Civ. App. 1951) (noting that affirmance of the transaction does not waive a claim of damages for fraud). The distinct remedies—damages and rescission—achieve distinct purposes.

The damages remedy compensates for the loss from the fraud.  It allows the plaintiff to recover the difference between the value paid and the value he in fact received.  *See Formosa Plastics*, 960 S.W.2d at 49 ("The out-of-pocket measure allows the injured party to recover the actual injury suffered measured by the difference between the value of that which he has parted with, and the value of that which he has received.") (quotation marks omitted); *Morriss-Buick Co. v.*

*Pondrom*, 113 S.W.2d 889, 890 (Comm'n App. 1938, holding approved) ("The true measure of damages in a case based upon fraud is the actual amount of the loss of the complaining party resulting directly and proximately from the fraud practiced upon him."); Restatement (Second) of Torts § 549 (1977) (victim of fraud is entitled to recover the difference between the value of what he has received in the transaction and the value given for it). The damages remedy focuses on that loss.

In contrast, rescission is focused on unwinding the transaction, not on the loss. The parties are released from all obligations under the contract (rescission) and, due to the lack of a contract, the parties must then restore what they got from the other side (restitution).

> Rescission is merely the "common, shorthand name" for the composite remedy of rescission and restitution. . . . [I]t restores the parties to the status quo ante by unwinding the contractual exchange instead of pressing it forward.

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2012) (quotation marks omitted). "Rescission works to avoid the contract, return any consideration paid, and to return the parties to their respective positions as if no contract had ever existed." *Humphrey v. Camelot Ret. Cmty.*, 893 S.W.2d 55, 59 (Tex. App.—Corpus Christi 1994, no writ). Thus, instead of providing the plaintiff the difference between the value paid and the value received, rescission undoes the transaction and tries to restore everyone to their original position.

Bear Ranch does not seek rescission, so a narration of rescission law (Mot. 9-12) is irrelevant.  Rather, Bear Ranch elects to affirm the sale and be made whole for its loss from the fraud.  Because the contract remains in place, the question is by what amount the fraud caused Bear Ranch to overpay for the cattle.  *Formosa Plastics*, 960 S.W.2d at 49 (out-of-pocket damages).  HeartBrand is still held to deliver the cattle (as it has done), and Bear Ranch is still held to its promises to the extent they are not offset by the fraud.  Hence, it seeks to be made whole for its loss, not returned to a prior status regardless of loss.

And Bear Ranch has suffered substantial injury.  It parted with a significant cash payment and has limited its business activity per the contract.  It brings a damages claim for the excess of the value of its payments over the value of the cattle it received.  Am. Compl. ¶¶ 35-40.  Moreover, its injury is ongoing, as it continues to limit its business activities per the contract and yet did not receive cattle truly worth even the initial cash payment, much less the ongoing in-kind payments.  Accordingly, it seeks a remedy for that ongoing injury by a declaration of its fraud defense.  *Id*. ¶¶ 41-42.

This remedy is in the nature of an abatement to Defendants' claims of breach of contract.  It is hornbook Texas law that a party may raise a fraud defense and offset liability under a contract, in whole or in part, to the extent of his injuries. *See, e.g.*, *Mason v. Peterson*, 250 S.W. 132, 146-47 (Tex. Comm'n App. 1923,

-13-

holding approved) (due to the seller's fraud concerning the acreage of purchased land suitable for irrigation, the plaintiff "is entitled to an abatement in the amount of his obligation to the extent of his injury, whenever his vendor or a holder of his obligation charged with notice of the fraud or mistake seeks to enforce payment of that obligation.  Fraud or mistake enters into and vitiates the contract to the extent of the resultant injury and is a defense to a suit on his obligation"); *Terry v. Baskin*, 44 S.W.2d 929 (Tex. Comm'n App. 1932, holding approved) (same); *Mitchell v. Zimmerman*, 4 Tex. 75, 82 (1849) ("It appears to have been optional with the defendant, whether he would at once abandon and avoid the contract altogether or remain upon and cultivate the land actually conveyed and to have an abatement of the price *pro tanto* the deficiency."); *Blanks v. Ripley*, 27 S.W. 732 (Tex. Civ. App.—Austin 1894, no writ) (fraud as to ownership of irrigation ditches entitled purchaser of land to abatement of price as defense to suit on notes).

Recent Texas cases concur.  *See Hobbs Trailers v. J. T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 88 (Tex. 1977) (for "partial or total failure of consideration of a contract by reason of fraud," "relief may be awarded in abatement of the price contracted to be paid, and when so sought it is purely defensive matter"); *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 209 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("fraud in the inducement is fatal to a contract and a good defense against the enforcement of such contract"); *Gage v. Langford*, 615

S.W.2d 934, 940 (Tex. Civ. App. 1981, writ ref'd n.r.e.) (party retaining consideration under contract may urge fraudulent inducement as defense to an action on the contract and show offset to the extent of his damages); *Bodovsky v. Texoma Nat'l Bank of Sherman*, 584 S.W.2d 868, 871 (Tex. Civ. App. 1979, writ ref'd n.r.e.) (applying fraud defense: "to the extent that the bank's present claim [on a note] is based on the original indebtedness incurred at the time the representations were made, it must be reduced by the amount of the damages resulting from the false representations"); *Finger v. Morris*, 468 S.W.2d 572, 579 (Tex. Civ. App. 1971, writ ref'd n.r.e.) (fraud "inducing the making of a contract can successfully be established as a defense to a suit on the contract").[1]

Contrary to the motion's hyperbole (Mot. 12), Bear Ranch does not seek to create an "new agreement," which is a creature of consent. Nor does it seek to "modify" or "reform" the contract, which is a distinct legal concept turning on the parties' original intent. It seeks to be made whole for its injuries caused by fraud, which induced it to pay much more (in cash and in kind) than the cattle were worth. That relief would change the parties' position, to be sure, as relief always

---

[1]      *See also Oilwell Div., U.S. Steel Corp. v. Fryer*, 493 S.W.2d 487, 490-91 (Tex. 1973) (observing that "[f]raud is an affirmative defense under Rule 94, Texas Rules of Civil Procedure"); Tex. Bus. & Com. Code § 2.721 ("Remedies for material misrepresentation or fraud include all remedies available under this chapter for non-fraudulent breach."); Tex. Bus. & Com. Code § 2.717 ("The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any

does.   But it would do so only by compensating for fraudulently induced overpayments, as Texas law requires.  *See, e.g.*, *Formosa Plastics*, 960 S.W.2d at 49.  Defendants simply never come to grips with that point.

On Defendants' worldview, every damages award creates a "new deal," as it restores to the plaintiff some consideration he provided under the contract.  But that is the very purpose of a civil remedy—to restore benefits wrongly extracted.  Take, for example, this simplified scenario:

> H sells a milk cow in exchange for B agreeing to pay $5,000 and to mow H's lawn for ten years.  One year into the contract—after B has paid the $5,000 and mowed H's lawn for a year—B discovers that she was induced into the contract by H's false claim that he owned the only milk cows in the county.  In fact, H knew of many other milk cows, which were worth only $1,000 each.

B may elect, perhaps because rescission is inconvenient or she has invested in the cow, to forgo rescission and instead recover her out-of-pocket loss—the extra $4,000 she was induced to overpay and the value of the lawn service she was induced to provide.  Moreover, because she will incur loss each additional year of lawn service, B has a defense offsetting any liability to H on that fraudulently induced duty under the contract.  *See Formosa Plastics*, 960 S.W.2d at 49; *Hobbs Trailers*, 560 S.W.2d at 88; *Mason*, 250 S.W. at 146-47.

---

breach of the contract [or fraud, *see* § 2.721] from any part of the price still due under the same contract.").

Struggling against that hornbook Texas law, Defendants misconstrue *Formosa Plastics*, suggesting that it forecloses relief that "effectively binds" the defendant to consideration it did not contract for. Mot. 14. But, again, that loose phrasing simply complains that the damages remedy for fraud requires determining the value of what the plaintiff received, to determine the extent of his loss. That is settled law: "The out-of-pocket measure allows the injured party to recover the actual injury suffered measured by the difference between the value of that which he has parted with, and the value of that which he has received." *Formosa Plastics*, 960 S.W.2d at 49 (quotation marks omitted). For example, *Formosa* cited *George v. Hesse*, 93 S.W. 107 (Tex. 1906), in which the Supreme Court held that when a seller fraudulently represented that land he sold had a water well on it, determining the plaintiff's loss required valuing the land as it actually existed without a well. *Id.* at 108. Defendants would seemingly object that *George* itself, in allowing the plaintiff to stay on the land to recover the difference between the value he paid and the land's real value, creates a "hypothetical contract that was never struck."

Yet the law endorses just that result, and rightly so. It does not "bind" the parties to a new "contract," which is a consensual arrangement. It awards damages for fraud-caused injury. Indeed, the Restatement applies that rule on similar facts:

> A induces B to purchase a bull by showing him a fraudulent pedigree representing it to be of pure Guernsey ancestry. Before discovering the falsity of A's representation, B breeds the bull to his Guernsey cows. B is entitled to recover not only the difference between the price paid and *the actual value of the bull* but also the loss sustained by the inferiority of the calves got by the bull upon his Guernsey cows.

Restatement (Second) of Torts § 549, illus. 1 (emph. added).

To construct their argument, Defendants are thus forced to lift out of context a discussion about "hypothetical contracts" in *Formosa*. In that passage, the court discusses a second type of injury that fraud may cause: not the excess value that the plaintiff was defrauded into giving up (out-of-pocket damages), but the loss of profits the plaintiff expected to receive in the bargain (benefit-of-the-bargain damages). 960 S.W.2d at 50. Recovery of benefit-of-the-bargain damages ensures that damages for fraud are at least as protective as damages for breach of contract. The court's point was that this type of damages protects lost profits under a deal actually agreed to (as would a remedy for breach of contract), not profits under a hypothetical deal never in place (for which no contract claim could lie). *Id.*

But that measure of damages is not at issue here. Bear Ranch alleges out-of-pocket injury from being induced to overpay, not also benefit-of-the-bargain injury from being denied profit it expected. Thus, whether it did or does intend to sell the cattle commercially and the "prices they expected to receive" (Mot. 6) are

irrelevant.  What matters is that Bear Ranch was defrauded into paying too much, and it seeks recovery for its out-of-pocket damages.[2]

### III.   Bear Ranch Should Be Allowed Leave to Amend Any Pleading Defect.

Even if there were some pleading defect in either or both of the fraud claims (and there is not), Bear Ranch would be entitled to amend.  Indeed, Defendants do not argue for dismissal with prejudice.  *See* Mot. 15.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see Bittinger v. Wells Fargo Banks NA*, 744 F. Supp. 2d 619, 624 (S.D. Tex. 2010) (granting leave

---

[2]       By footnote, Defendants argue that the fraud claims against Beeman and the AAA should be dismissed because the complaint has no fraud pleadings against them. Mot. 2 n.2.  Procedurally, the Court need not address a dismissal argument buried in a footnote.  A "one-sentence footnote briefly mentioning the issue in [a] motion for summary judgment is insufficient to raise" the issue.  *Branch v. CEMEX, Inc.*, 2012 WL 2357280 (S.D. Tex. 2012) (unpub.) (citing cases "finding arguments raised perfunctorily in a footnote to be waived").  In any event, the point is meritless.  The complaint alleges that *all three* Defendants "participated in and abetted the deception" and are liable for damages as such.  Am. Compl. ¶ 40.  Further, Defendants have asserted that Bear Ranch's purchase of cattle from Beeman is governed by the challenged contract restrictions, *id*. ¶ 25, so Bear Ranch seeks a declaration that its fraud defense likewise applies to any such restrictions.  *Id*. ¶ 42; *cf., e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125, 130 (2007) (noting Declaratory Judgment Act coverage of a patent-invalidity defense to a breach-of-license claim that would follow if plaintiff breached).

to amend, noting: "the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (citation omitted).

Bear Ranch has amended its complaint to focus its case, but this Court has never found any deficiency in Bear Ranch's pleadings.  If one exists, Bear Ranch has explained in detail (and in prior briefing) why and how it was injured, and any necessary amendment can be easily made and would work no hardship on Defendants.  They already know the case against them.

Bear Ranch has pleaded and developed its fraud claim since the case began. *See* Compl. (Dkt. #1) ¶¶ 47-52; Ans. to Counterclaims (Dkt. #20) ¶ 38 (pleading fraud as affirmative defense to counterclaims).  Defendants raised their current objections *15 months* after the case began, and after Bear Ranch asked early on (and without results) that Defendants explain the basis for saying, in their answer, that the complaint fails to state a claim.  *See* Exh. 29, Resp. to Mot. for Partial Dismissal (Dkt. #44-27).  So although this case has progressed substantially, the delay in addressing any pleading deficiency that may exist is laid at Defendants' feet.  If there is any deficiency, Bear Ranch should be granted leave to correct it.

## IV.   Conclusion

For these reasons, Bear Ranch respectfully requests that the motion to dismiss Counts One and Two of the Amended Complaint be denied or, if there is any defect in the pleading, that the Court grant leave to amend the complaint.

Dated:  September 30, 2013       Respectfully submitted,

s/ R. Paul Yetter
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
J. Campbell Barker
State Bar No. 24049125
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway
Lubbock, Texas 79401
(806) 762-0214
(806) 762-8014 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

## Certificate of Service

I certify that on September 30, 2013, I served a copy of this document on all counsel of record using the Court's e-filing system.

s/ J. Campbell Barker
J. Campbell Barker