IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., et al., | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S REPLY TO REJOINDER ON MOTION
### TO DISMISS FRAUDULENT-INDUCEMENT CLAIMS

Defendants' Rejoinder requires a brief, focused reply. Contrary to their claim, the *Anderson* case recognizes that a fraud victim who elects not to rescind a contract has a remedy to the extent of his injury from fraud, including a defense to enforcement of injurious contract obligations. Because the contract is not rescinded, there is no requirement that the parties then engage in restitution, returning all benefits under the contract. The case imposes no such requirement.

The Rejoinder emphasizes that the defendant in *Anderson* complied with a contract provision that was *not* claimed to be part of the fraud injury, thus returning products it had received because the manufacturer terminated the distributorship contract. But the court then upheld the fraud defense to the contract restrictions the defendant *was* challenging as injury, which is exactly how the defense is used here.

Here, we address only the correct interpretation of *Anderson*, which nowhere suggests that preventing injury caused by fraud is a "windfall."

In *Anderson*, plaintiff Anderson, Greenwood ("AGCO") was a manufacturer of valves, which it sold through independent distributors such as the Nibsco defendants. 44 S.W.3d at 205. Nibsco had sold AGCO valves for years, *id.* at 206, but when the parties were negotiating their continued relationship in 1992, Nibsco was concerned about AGCO canceling it as a dealer. *Id.* at 206-207. AGCO said they would have a long relationship, and that AGCO did not intend to pursue a direct relationship with Nibsco's biggest customer, Linde Praxair. *Id.* at 206-07.

Nibsco thus entered into a contract renewing its relationship with AGCO. *Id.* at 205. That contract imposed competitive restrictions on Nibsco (e.g., it could not stock or advertise competitor products, with limited exceptions) and it required Nibsco to report on its customers to AGCO. *Id.* at 205-06. The contract allowed AGCO to terminate the distributorship, at which point it had to repurchase the valves in Nibsco's stock. *Id.* at 206.

In 1995, AGCO terminated the contract, alleging that Nibsco had violated the contract restrictions by selling competitor valves, selling outside its territory, and copying AGCO's valve parts. *Id.* at 206-07. Upon termination, Nibsco sent its inventory of valves to AGCO for repurchase under the contract, but AGCO did

not pay. *Id.* at 206.  The year after AGCO terminated, it entered into a direct-sales contract with Linde Praxair, cutting out Nibsco. *Id.* at 207.

AGCO sued Nibsco for breaching the contract restrictions, and Nibsco responded with a counterclaim and affirmative defense of fraudulent inducement. *Id.* at 209.  It argued that AGCO had a "sub rosa" plan to obtain its customer information, terminate the agreement, and then sell directly to Linde Praxair. *Id.* at 207, 212.  Nibsco argued that the contract terms that AGCO sued on were part of its injury from the fraud, as Nibsco had been developing a valve (based on the design of an AGCO valve) but had not sold its valve because of the contract restrictions. *Id.* at 206, 212.

The jury found that Nibsco had breached the competitive restrictions and caused $120,000 in damages. *Id.* at 207.  But the jury also found that AGCO defrauded Nibsco. *Id.*  The jury did not award Nibsco its requested lost-profit damages on its affirmative claim of fraud, but the trial court held that the fraud gave Nibsco a defense to AGCO's recovery on its contract claim. *Id.*

AGCO appealed, arguing that the fraud defense did not excuse Nibsco's breach because it never returned the benefits it got from AGCO under the contract. *Id.*  The court of appeals first found that AGCO did not adequately identify what the benefits were. *Id.* at 209. But "[i]n any case," the court held, the trial court acted properly because "Nibsco pleaded the defense of fraud in the inducement."

3

*Id.* at 209.  Although AGCO relied on rescission cases to argue that Nibsco must return its contract benefits, the court explained that Nibsco "did not ask for a rescission of the contract." *Id.*

Instead, the court analogized Nibsco's claim to a case in which the fraud defense was used to defeat enforcement of a duty to pay money. *Id.* at 209-10 (citing *Roberts v. Tipton*, 562 S.W.2d 921, 923 (Tex. Civ. App.—Waco 1978, no writ), which awarded Roberts damages on his fraud claim and affirmed his valid fraud defense to enforcement of an obligation to make periodic payments).

The court then discussed *Gage v. Langford*.  It noted that Gage, like Nibsco, "did not seek rescission," which would trigger "the general rules we have discussed which require a party to return or offer to return the other party to the status quo, or return the benefits received, when rescinding the contract for fraud in the inducement." *Id.* at 210.  But "nor did [Gage] seek damages or an offset," instead arguing that the fraud prevented any enforcement of the contract at all. *Id.*  Gage thus lost, because when a fraud victim is not rescinding the contract and thus "retains valuable consideration received under the contract,'" he must "establish the extent of his damages," which Gage did not do. *Id.*

While *Gage* involved a claimed breach of a monetary obligation, the *Anderson* court explained that the "word 'damage' should not be restricted to a

monetary loss." *Id.* at 212. Nibsco's inability to sell its own valve due to the contract obligations, the court held, was likewise an injury from the fraud. *Id*.

Addressing AGCO's argument that Nibsco had to return all benefits, the court explained that the Nibsco defendants "did not ask that the contract be rescinded" and instead raised the fraud defense so that "they should not be liable for any contract damages from their breach," because "AGCO's fraud vitiates the contract to the extent of AGCO's resultant injury [from the breach] and is a defense to the suit on any obligation they have under the contract." *Id.* at 210. The court thus expressly held that a party not rescinding a contract may raise fraudulent inducement as a defense to contract obligations, including the nonmonetary obligations there at issue.

The court's point that Nibsco returned its inventory of valves under the contract's termination provision (*id.* at 211) was that Nibsco was not seeking a remedy beyond its loss. It returned the valves, as the contract required, and it was not seeking to prevent enforcement of that obligation as part of the fraud injury. *Id.* Indeed, Nibsco actually sued and recovered *on* that contract obligation, alleging that AGCO breached its duty to pay for the returned valves; Nibsco thus retained that substantial benefit under the contract. *Id.* at 216. The competitive restrictions that AGCO sued on, however, were part of Nibsco's injury from the fraud. *Id.* at 212 ("Nibsco stated they refrained from selling their new F80 valve

. . . because they would violate their contract, and this abstention cost them money. We find that Nibsco proved an 'injury.'"). So the court affirmed the fraud defense defeating liability on those restrictions. *Id.*

AGCO further argued that the contract restrictions were not injury because the jury did not award Nibsco lost-profit damages on its affirmative claim of fraud. *Id.* at 211. But, as the court explained, even if Nibsco did not prove its entitlement to any specific amount of damages, the jury found that Nibsco was injured by the fraud. *Id.* That jury verdict confirms Bear Ranch's point that proving the proper amount of compensatory damages for lost profits can be difficult, thus preventing a full remedy even when injury occurs. *Id.* And the court held that the jury's finding was justified, as Nibsco refrained from selling its valve based on the contract restrictions. *Id.*

Thus, "even though no damages were found on the counterclaim, the jury found all the essential elements of fraud," and "Nibsco was entitled to their affirmative defense of fraud" against AGCO's claim for breach of the competitive restrictions. *Id.* at 212. Nibsco did return its inventory for repurchase under the contract provision it was not challenging as injury (and was actually suing on). But the court never held that Nibsco had to rescind the contract and thus make restitution. Indeed, the court expressly noted that Nibsco was *not* rescinding. *Id.* at 209.

That is the point here. Bear Ranch has a choice: It can rescind to pursue restitution (which is inconvenient and potentially ineffectual, given Bear Ranch's sunk costs in the cattle). Or it can keep the contract in place but have a remedy to the extent of its injury. The fraudulent-inducement defense is part of that remedy.

Dated: October 18, 2013

Respectfully submitted,

s/ R. Paul Yetter
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
J. Campbell Barker
State Bar No. 24049125
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway
Lubbock, Texas 79401
(806) 762-0214
(806) 762-8014 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

### Certificate of Service

I certify that on October 18, 2013, a copy of this document was served on all counsel of record using the Court's e-filing system.

s/ J. Campbell Barker
J. Campbell Barker