UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-00014 |
| | § | |
| HEARTBRAND BEEF, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

This is the second phase of a dispute over specialty Akaushi cattle between Defendant HeartBrand Beef, Inc., a cattle ranching and beef production company, and Plaintiff Bear Ranch, LLC, one of its contracted producers.  After Bear Ranch dropped its antitrust claims and filed an amended complaint, HeartBrand and its co-Defendants, American Akaushi Association, Inc. (AAA) and Ronald Beeman, moved to dismiss Bear Ranch's fraudulent inducement claims.  The Court has considered the extensive briefing, the allegations, and the relevant law, and now **GRANTS IN PART** and **DENIES IN PART** Defendants' Partial Motion to Dismiss (Docket Entry No. 60).

# I. BACKGROUND[1]

Akaushi cattle are a specialty breed from Japan that produce beef "prized for its rich flavor, tenderness, and juiciness."  Docket Entry No. 59 ¶ 9.  Japanese laws "protect Akaushi cattle as a national treasure and highly restrict their export."  *Id.* ¶ 17.  In the 1990s, HeartBrand's predecessor acquired a small number of Akaushi breeding cattle and HeartBrand steadily increased the herd size.  *Id.*

In July 2010, Bear Ranch purchased 424 Akaushi cattle and 10,000 units of Akaushi semen from HeartBrand for about $2.4 million.  *Id.* ¶ 27.  The purchase contract included restrictions such as limitations on the sale of beef labeled as "Akaushi" and the resale of offspring of the cattle, required registration of all offspring, and prohibitions on the collection of semen from the cattle and its offspring.[2]  *See id*. ¶¶ 21–23.  Prior to executing the contract, Heartbrand represented orally and in writing to Bear Ranch "that it was the only source of full-blood Akaushi cattle and genetics outside of Japan."  *Id.* ¶ 36.

In its original complaint, Bear Ranch alleged that its contract with HeartBrand violated the Sherman Antitrust Act and similar laws aimed at anticompetitive conduct, and in the alternative, sought a declaration that the contract restrictions were unenforceable because Bear Ranch was fraudulently

---

[1] The background section is based on allegations in Plaintiff's First Amended Complaint, *see* Docket Entry No. 59, which the Court must assume to be true at this stage. Fed. R. Civ. P. 12.

[2] There is a dispute about the scope of some of these restrictions, but it is raised in a different breach of contract claim not at issue in this motion to dismiss.

induced to enter into the contract by HeartBrand's representations that it was the sole source of Akaushi cattle outside of Japan. *See* Docket Entry No. 1.  Bear Ranch also asserted its fraudulent inducement defense in answering Defendants' breach of contract counterclaims. *See* Docket Entry No 20 ¶ 38.  After extensive discovery, Bear Ranch requested leave to amend its complaint in order to drop its antitrust claims and add a new damages claim for fraudulent inducement.  S*ee* Docket Entry No. 43.  The Court allowed Bear Ranch to amend its complaint, *see Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 2013 WL 4520425 (S.D. Tex. Aug. 26, 2013), and Defendants subsequently filed this motion to dismiss Bear Ranch's fraudulent inducement claims.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (citation and internal quotation marks omitted).  To survive a motion to dismiss, a claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

For allegations of fraud, a complaint must meet the additional pleading standards of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). To meet this standard, the plaintiff must "at a minimum . . . set forth the who, what, when, where, and how of the alleged fraud." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citations and internal quotation marks omitted).

## III. DISCUSSION

The motion to dismiss challenges the two remedies Bear Ranch seeks for its allegations of fraudulent inducement. The first is its new claim for the damages it allegedly "overpaid" for the cattle as a result of being misled into believing that HeartBrand was the sole source of Akaushi cattle outside Japan. Defendants contend this claim fails because the overpayment allegation lacks specificity. The second seeks a declaratory judgment that Bear Ranch has a valid defense of fraudulent inducement to its future obligations under the contract that requires invalidating the contractual restrictions on resale and other use of the purchased cattle. Defendants contend the law does not provide such a remedy for fraudulent inducement.

## A. Remedy for "Overpayment" Damages

Under Texas law, a fraudulent inducement claim has six elements: a material representation, its falsity, either the defendant's knowledge of the falsity or recklessness as to a positive assertion, intent to induce reliance, the plaintiff's entry into a contract in reliance on the representation, and injury. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (elements of fraud); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (fraudulent inducement is fraud where reliance is entry into a contract); *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993).

In its amended complaint, Bear Ranch includes specific details alleging the first five elements of fraudulent inducement, *see* Docket Entry No. 59 ¶¶ 35–40, and then describes its injuries resulting from the alleged fraud—the sixth element—as "damages from overpayment for cattle" and limitations on its "ability to sell and market its cattle and beef." *Id.* ¶ 39. Defendants challenge only the sufficiency of the sixth element because "no facts are pled to support 'overpayment' . . . [or] to show any injury suffered by the [contract] limitations." Docket Entry No. 60 at 6. The complaint does not, for example, state how much was overpaid, or cite any other sales of Akaushi cattle that show Bear Ranch overpaid.

Defendants contend that this "injury" element of a fraudulent inducement claim, like most other elements of a fraud claim,[3] must satisfy Rule 9(b)'s "particularity" requirement.  Docket Entry No. 60 at 5.  But Rule 9(b)'s heightened pleading standard is limited to the "circumstances constituting fraud," Fed R. Civ. P. 9(b), and the "reference to 'circumstances' in the rule is to matters such as the time, place, and contents of false representations or omissions, as well as the identity of the person making the misrepresentation or failing to make a complete disclosure and what that defendant obtained thereby."  5A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1297 (3d ed. 1998); *see also id.* ("As has been held by a significant number of federal courts, it is the pleading of the circumstances of the alleged fraud with a certain amount of precision that serves the federal rule's purpose by apprising the defendant or defendants of the nature of the claim and the acts or statements or failures to disclose relied upon by the plaintiff as constituting the fraud being charged against each of them.").  For this reason, numerous courts have held that the Rule's language does not extend the heightened pleading requirement to allegations concerning damages in a fraud case.  *See, e.g.*, *Andrews Farms v. Calcot, Ltd.*, 527 F. Supp. 2d 1239, 1252 (E.D. Cal. 2007) ("Defendants fail to cite to any authority that Rule 9(b) requires more particular pleading for the element of damages. While Rule 9(b) requires pleading

---

[3] Rule 9(b) omits from its requirement allegations concerning "[m]alice, intent, knowledge, and other conditions of a person's mind."

the circumstances of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud damages be pled with more specificity than required under normal notice pleading."); *Williams v. Sabin*, 884 F. Supp. 294, 297 (N.D. Ill. 1995) ("Rule 9(b) does not require any greater detail in pleading damages unless the information is necessary to give the defendant notice of the claims against him. . . . A detailed calculation of the damages alleged to have been incurred by the plaintiff is not necessary to give the defendant notice."). Although the Fifth Circuit has not directly addressed this issue, it has repeatedly described Rule 9(b) as requiring a fraud plaintiff to allege with particularity the "who, what, when, where, and how of the alleged fraud," *see, e.g.*, *United States ex rel. Steury*, 625 F.3d at 266, a comprehensive list that makes no mention of damages. *Cf. Interserve, Inc. v. Fusion Garage PTE Ltd.*, 2011 WL 500497, at *3 (N.D. Cal 2011) ("The Ninth Circuit has not addressed this issue directly, but has described Rule 9(b) as requiring a plaintiff to allege the 'who, what, where, when, and how' of the charged misconduct. . . . Accordingly, Rule 9(b) may not apply to the reliance and damages elements of a fraud claim." (citation omitted)).

Both cases Defendants did not require a focus on whether Rule 9(b)'s language creates a heightened pleading standard for the damages element because they held that other elements in addition to damages were insufficiently pleaded. *See, e.g.*, *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 195 (5th Cir. 1996)

(affirming dismissal of plaintiff's fraud claims because the complaint made no mention of "when" the fraudulent charge was incurred—a classic Rule 9(b) requirement—or "the extent of [plaintiff's] damages"); *Luna v. Nationwide Prop. & Cas. Ins. Co.*, 798 F. Supp. 2d 821, 828–29 (S.D. Tex. 2011) (dismissing plaintiff's fraud claim under either a Rule 8 or 9(b) standard for a number of reasons including the failure to allege an actionable misrepresentation and because the alleged injury of "undervalued" property damages provided "no indication of how and how much").  These cases also had unique factual and procedural aspects that led the courts to require quantification of damages at the pleading stage that is not ordinarily required.  *See Oppenheimer*, 94 F.3d at 195 (highlighting that the district court had specifically ordered the plaintiff "to provide the amount of the hidden sales charge" in an order for more definite statement, which he failed to do); *Luna*, 798 F. Supp. 2d at 827 (emphasizing that plaintiff's counsel had filed "virtually identical" pleadings in numerous other lawsuits and failed to allege facts specific to the individual's claim of undervalued property damages).

In contrast, Bear Ranch alleges the first five elements of fraudulent inducement in detail and links how HeartBrand's allegedly fraudulent claim of exclusivity caused Bear Ranch to overpay and agree to strict contract limitations. The injury alleged by Bear Ranch is a well understood type of damages in contract cases, certainly a "plausible" one within the meaning of *Iqbal* and *Twombly*, and is

easily understood in the larger context of the fraud allegations in the complaint. *Cf. Cruz v. Allstate Tex. Lloyds*, 2011 WL 3502772, at *1 (S.D. Tex. Aug. 10, 2011) ("Allegations against an [insurance] adjuster like . . . undervaluing damages . . . [are] sufficient.  Surely, the Defendants in this and similar cases can, without much intellectual effort, divine from Plaintiffs' allegations [what Defendant] is being accused of.").  Just as "lost wages" or "lost profits" are commonly alleged without much additional detail in the complaint about the scope of such damages, the "overpayment" allegation provides sufficient notice.  *See Nueces Cty. v. MERSCORP Holdings, Inc.*, 2013 WL 3353948, at *11 (S.D. Tex. July 3, 2013) ("Plaintiff has stated sufficient facts upon which Defendants can prepare an effective response and defense to all Plaintiff's [fraudulent filing] allegations. Nothing more is required at this stage of the litigation." (citation omitted)); *Williams*, 884 F. Supp. at 297.

It may turn out to be the case, as Defendants contend, that Bear Ranch actually got a good deal and underpaid for the cattle.  But that is an evidentiary determination that the Court cannot consider at this stage.  The allegation that Bear Ranch suffered "overpayment" damages as a result of Defendants' misrepresentations is sufficient for it to move on to the more challenging phase at which it will have to offer proof to support that claim.

## B. Remedy for Declaratory Relief

HeartBrand's second basis for dismissal has more force: Bear Ranch's claim seeking a declaration that the contract restrictions are unenforceable is not an available remedy under Texas law.  This is the issue that led the parties to file a surreply, a rejoinder to the surreply, a reply to the rejoinder, and a "rejoinder (supplemental) to Plaintiff's reply to rejoinder."   Docket Entry Nos. 66–69.  Despite the extensive briefing and citation to numerous cases, the Court agrees with Defendants that basic principles of contract law resolve this contentious issue.

It "is well settled that one who is induced by fraud to enter into a contract has his choice of remedies.  'He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing brought, and receive back what he paid.'"   *Dallas Farm Machinery Co. v. Reaves,* 307 S.W.2d 233 (Tex. 1957) (quoting *Blythe v. Speake*, 23 Tex. 429, 436 (1859)); *see also Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 676–77 (Tex. 2000).   Thus, the remedies available to Bear Ranch for fraudulent inducement are to either (1) fully rescind the contract or (2) affirm the contract and recover any monetary damages for its injuries.  Bear Ranch has made it clear that it does not seek rescission and instead plans to keep the cattle.  Thus, its only remedy is damages for its injuries from the fraud.  Within that world of a damages remedy, Bear Ranch contends it may seek a declaration excusing it from future compliance with the contract

restrictions as "an offsetting remedy for its loss from the fraud."  Docket Entry No. 63 at 1.

Bear Ranch essentially wants to "have its steak and eat it too" by seeking to keep the cattle it purchased under the contract yet undo part of that deal—the contract restrictions to which it agreed.  The law does not allow such partial rescission.  *See Costley v. State Farm Fire & Cas. Co.*, 894 S.W.2d 380, 387 (Tex. App.—Amarillo 1994, writ denied) (finding it to be the "longstanding general rule in Texas that a rescission of a contract must be in toto." (citing *Demaret v. Bennett*, 29 Tex. 262, 269 (Tex. 1867))); *Nat'l Aid Life of Okl. City v. Adams*, 157 S.W.2d 957, 958 (Tex. Civ. App.—Eastland 1941) ("The principle, which must rule the judgment in this case, is, that one cannot enforce an advantage existing only by virtue of a contract, and at the same time repudiate the contract as one not binding upon him, thereby avoiding some of its provisions."); *Sw. Cooperage Co. v. Kivlen*, 266 S.W. 826, 829 (Tex. Civ. App—Dallas 1924, no writ) ("[Partial rescission would] permit the [plaintiffs] to set aside the contract in part for fraud, in so far as against their interest, and to enforce that part of the contract beneficial to them; in other words to retain all the benefits of the contract and escape its obligation on account of the fraud, which would be in direct violation of the fundamental principle governing the rescission of contracts, to wit, that same must be repudiated as a whole or affirmed as a whole." (citations omitted)).  Such a

remedy would violate the principle that a court cannot change the terms of a contract to which the parties agreed.  *See Fawcett, Ltd. v. Id. N. & Pac. R.R. Co.*, 293 S.W.3d 240, 251 (Tex. App.—Eastland 2009, pet. denied) ("Equity cannot be invoked to create a contract that the court considers should have been made but was not." (citations omitted)).  This case well illustrates the reason for that rule. For business reasons a court is not in the best position to understand, Heartbrand may not have entered into a contract with Bear Ranch—even if Bear Ranch had been willing to pay a much higher price—had it known Bear Ranch would not be bound by the restrictions on resale.

Bear Ranch asserts that this remedy is necessary to make it whole—in addition to the damages it claims for past harm, the declaration would prevent ongoing future injuries resulting from the fraud.  It seeks to offset its future performance of in-kind, or nonmonetary, consideration—the competitive conduct restrictions that were fraudulently induced.  Performance of nonmonetary, or in-kind, consideration is a recognized type of injury.  *See Austin v. United States*, 509 U.S. 602, 609–10 (1993) (referencing "in cash or in kind" payments (citations omitted)); *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).   However, injuries from performance of nonmonetary consideration are incorporated into the out-of-pocket damages measure by quantifying their value as part of the entire "value of what

[was] received."   Douglas Laycock, MODERN AMERICAN REMEDIES 55 (2002)

("[T]he victim of fraud may always recover his reliance damages: the difference

between what he paid and the value of what he received."); *see Formosa Plastics*

*Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex.

1998) ("The out-of-pocket measure allows the injured party to recover the actual

injury suffered measured by the difference between the value of that which he has

parted with, and the value of that which he has received." (quotation marks

omitted)); *see, e.g.*, *Anderson*, 44 S.W.3d at 212 ("[Plaintiff] stated they refrained

from selling their new F80 valve designed by Mr. Powell because they would

violate their contract, and this abstention cost them money.").

Bear Ranch argues that cases granting declarations of affirmative defenses

against future *monetary* damages (and there are many of those) have not explicitly

held that "the fraudulent inducement defense applies only to certain types of

breach actions," and therefore that these courts have indicated the remedy is also

available for nonmonetary obligations.  *See, e.g.*, *Mason v. Peterson*, 250 S.W. 142

(Tex. Comm'n App. 1923) (awarding a defense against future monetary

obligations and not addressing whether the defense would apply to hypothetical

future nonmonetary obligations).  Interpreting case law based on what an opinion

does not say is dubious at best, and even more so when Bear Ranch is unable to

cite a case ever affirmatively recognizing the relief it seeks.[4]  Moreover, allowing an offset of fraud damages against future monetary obligations under a contract makes sense because it is easy to determine whether the offset is appropriate when both sides of the equation are expressed in monetary terms.  But the remedy Bear Ranch seeks—a declaration that it no longer has to comply with the contractual restrictions if it proves it was defrauded—appears to omit the vital step of determining the extent of its fraud damages.  *See Gage v. Langford*, 615 S.W.2d 934, 940 (Tex. Civ. App.—Eastland 1981) ("[W]here the [party] retains valuable consideration received under the contract, he must establish the extent of his damages.").  Bear Ranch would only be entitled to offset its future compliance with the contractual restrictions if it proved that the damages resulting from Defendants' fraud equaled or exceeded the value of those contract restrictions. *See id*. at 937–40 (explaining that a defendant who asserted against a claim for payment of a note the defense that the plaintiff fraudulently induced him by misrepresenting the number of wells available on certain leases could not automatically avoid payment of the note upon a finding of fraud but must

---

[4] The case Bear Ranch cites for its proposition that "the [fraudulent inducement] defense likewise applies to breach claims based on nonmonetary obligations" did not actually provide the defense Bear Ranch seeks.  *See Anderson, Greenwood & Co.,* 44 S.W.3d 200.  In *Anderson*, the contract at issue had already been terminated, so the party asserting fraud was not attempting to obtain an abatement of ongoing contractual obligations as Bear Ranch seeks.  *Id.* at 207.  Furthermore, the plaintiff in *Anderson* did not raise fraudulent inducement as a defense to nonmonetary obligations, but asserted it against the manufacturer's claims for monetary damages.  *Id.* at 207, 211.  Thus, *Anderson*, nor any other case presented, has awarded the relief Bear Ranch seeks.

"establish by jury finding the amount of damages he has incurred as a result of [the] fraudulent representations").    That would require placing a dollar value on the restrictions.  But once all that is accomplished and the nonmonetary terms of the contracts are given monetary values, the court would simply be able to award the traditional damages remedy instead of invalidating a contractual term and offending the rule against partial rescission.

     For the same reason, Bear Ranch's policy arguments about the difficulty and inefficiency of estimating monetary damages for future contract restrictions do not help its cause.   Bear Ranch's entitlement to any remedy—whether it be the traditional "overpayment" damages it seeks or its novel theory of declaratory relief invalidating the contract restrictions going forward—depends on it showing that the misrepresentations caused it to enter into a "bad deal."  *See Gage*, 615 S.W. 2d at 640.  And proving it got a bad deal requires valuing all the consideration in the contract, including the restrictions that were an integral part of the consideration. So assigning a monetary value to the restrictions seems unavoidable.

     While an unavoidable task, it should not be an impossible, or even a particularly difficult, one.  Economists are able to monetize all sorts of things these days, including assets that are much further afield from the financial realm than restrictions in a contract between two businesses.  It is such a damages calculation that will have to serve as Bear Ranch's remedy if it proves the allegations of fraud.

A declaration invalidating the contract terms Bear Ranch now wishes to avoid, but to which it agreed when it obtained the cattle, is not a permissible remedy.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' Partial Motion to Dismiss (Docket Entry No. 60) is **GRANTED** with respect to Bear Ranch's "Second Claim" for "Declaration of Affirmative Defense of Fraudulent Inducement of Contract and **DENIED** with respect to Bear Ranch's "First Claim" for "Fraudulent Inducement of Contract."

**SIGNED** this 26th day of November, 2013.

_____
Gregg Costa
United States District Judge