IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## BEAR RANCH'S MOTION FOR JUDGMENT AS MATTER OF LAW AT THE CLOSE OF DEFENDANTS' CASE

Plaintiff Bear Ranch, LLC files this motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).

### Applicable Legal & Procedural Principles

A court should grant a motion for judgment as a matter of law if "there is a lack of substantial evidence, in the light most favorable to the [non-moving] party, to support [a] verdict." *Am. Home Assurance Co. v. United Space Alliance, LLC,* 378 F.3d 482, 487 (5th Cir.2004) (citation omitted).

A Rule 50(a) motion should also include purely legal grounds that do not depend on jury findings, including those raised previously in summary judgment. *See Black v. J.I. Case Co.*, 22 F.3d 568, 571 n.5 (5th Cir. 1994); *Maryland Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 705 (5th Cir. 2011) (noting that purely

legal issue raised in motion for summary judgment had been preserved by raising the issue also in a motion for directed verdict and motion for judgment as a matter of law). To the extent that the parties have previously briefed any of the following issues, plaintiff will not burden the Court with repetitive briefing but will rather summarize or incorporate by reference their prior briefing by docket numbers.

### Grounds for a Judgment as a Matter of Law in Favor of Bear Ranch

1. HeartBrand's fraud claim concerning the 2010 sale fails as a matter of law for want to sufficient evidence. An alleged breach of contract, standing alone, is legally insufficient to support a finding of no intent to perform at the time the promise is made. *E.g., Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1998); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). This is a point made in Bear Ranch's motion for partial summary judgment on this claim, incorporated by reference herein. *See* Dkt. #73 (MSJ) at 10-15; Dkt. #85 at 29.

The record does not contain any evidence sufficient to allow a rational jury to find an intent at the time of the 2010 contracts not to perform the registration and rules provisions. Rob Gill paid Bear Ranch's dues, and satisfaction of these duties were not even disputed until well after a year later. In fact, Bear Ranch took significant steps to comply with the contract even after it sought declaratory relief

regarding the parties' unclear or disputed rights and obligations. For example, Bear Ranch:

- "Paid every penny that HeartBrand had coming to it", paid AAA membership fees, and "honored" its "end of the contract" (Beeman, Tr. Day 5: 39:25-40:2; 42:3-5, 10-12);

- Spent "hundreds of hours" each year gathering DNA samples on all animals and inputting data into the AAA system (Brandstadt, Tr. Day 2, 91:22-92:3; 92:20); and

- On behalf of Spears and itself, tried "to comply with whatever registration and other rules HeartBrand had" (Spears, Tr. Day 2, 42:11-43:6)

Partial performance of a contract is evidence of intent to perform. *See, IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 125 (Tex. App. 2003); *Reyna v. First Nat'l Bank*, 55 S.W.3d 58, 68 (Tex. App. 2001) (partial payment showed intent to perform). And there is not even circumstantial evidence of fraud sufficient to allow a rational jury to find a lack of intent at the time to comply with the pleaded contract obligations. Filing this lawsuit regarding disputed contractual provisions cannot be the basis for a fraud claim.

2. As a matter of law, HeartBrand does not have a viable common-law-fraud claim regarding the June 2011 sale by Beeman because it has no sufficient evidence that HeartBrand had a veto right on this sale. The premise of this claim is that HeartBrand had such a right and was defrauded into not exercising it. It

is not merely that HeartBrand could advise Beeman about his sale; that would not support a fraud claim or out-of-pocket damages.

Beeman has signed only one Full-Blood Contract with HeartBrand. That was in 2009, and it covered only the 100 cows he bought then. DX 122. It is undisputed that, in 2011, when Beeman bought 500 more cows from HeartBrand, he did not sign another contract covering those cows. Beeman's position is that his 2009 contract covered the 2011 cows automatically, giving HeartBrand a veto right over the sale of those cows. But that position fails as a matter of law.

The sale restriction in Beeman's 2009 Full-Blood Contract is the same in pertinent part as in Bear Ranch's 2010 Full-Blood Contract with HeartBrand. As the Court has ruled as a matter of law, that provision unambiguously applies to the animals purchased at that time, not later purchases. Dkt. #91 at 15 ("The Full-Blood Contract does not purport to be a master sales agreement covering any future purchases of Akaushi cattle."). Accordingly, the 2009 contract did not give HeartBrand a veto right over the 500 cows Beeman bought in 2011. There is no other evidence of a veto right. Accordingly, this claim fails as a matter of law.

3. As a matter of law, HeartBrand does not have a viable fraud claim regarding the July 2011 sale by Twinwood because there is no probative or sufficient evidence that a fraudulent misrepresentation occurred *prior to* the sale. *New Century Fin. Inc. v. Olympic Credit Fund, Inc.*, 487 F. App'x 912, 915 (5th Cir. 2012)

4

(recognizing that a representation made after a transaction is complete does not support a misrepresentation claim). To the contrary, the only documentary evidence proffered in support of this claim indicates that any purported representation was made only after the Twinwood transaction had been consummated. *See* PX 200.

Moreover, Twinwood's contract with HeartBrand did not give it a veto right as to the cattle it sold. *See* PX 112 at 7. Section 5.1.1 of Twinwood's contract with HeartBrand states the ban on selling Twinwood's purchased Akaushi and their offspring. It bans sale to people other than HeartBrand "or other member of the American Akaushi Association." *Id.* Because Bear Ranch was such a member, HeartBrand had no right to veto this sale. HeartBrand may argue that Section 7.3 of the Twinwood Contract imposes a sale restriction, *id.* at 10, but that section is expressly about the "methods for sale," not a ban on sales, which is covered by Section 5.1.1.

HeartBrand's claim is predicated on the existence of a right to block Twinwood's sale. That is the right that HeartBrand is supposedly out of pocket. Because there is no such right, this claim fails as a matter of law.

4.     As a matter of law, HeartBrand's 2011 fraud claims are not viable because there is no probative or sufficient evidence that an actionable fraudulent misrepresentation occurred. The alleged misrepresentations about selling HeartBrand with calves at undefined prices and undefined schedule are too indefinite

and immaterial to support any justifiable reliance. *See, e.g., Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 559 (Tex. App. 1998) (rejecting fraud and estoppel claims based on alleged statement "that employment for more than one year was 'doable'" because the "pleadings do not indicate any promises or assurances specific or definite enough upon which reliance can be reasonably made"); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 568 (Tex. App. 1989) (rejecting estoppel claim based on vague "commitment to upgrade [a hospital's] facilities and health care" and "make the level of patient care rise"). And the alleged representation about complying with the marketing restriction and AAA rules are not actionable because HeartBrand already had those duties under the intact 2010 contract. *See* PX 1.

5. As a matter of law, HeartBrand does not have a viable fraud claim because, with respect to the Twinwood and Beeman sales, the alleged misrepresentations amount to adding oral contractual obligations to the Full-Blood Contract, which has a no-oral-modifications clause. PX1 at 6. Enforcement of these promises is barred by the economic loss rule, applicable statute of frauds, parole evidence rule, or other doctrines that bar their enforcement in addition to the demonstrable agreements between the parties. *See, e.g., Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."); *Hameed Agencies (pvt) Ltd. v. J.C. Penney Purchasing Corp.*, 2007 WL 431339, at

6

\*5-\*6 (Tex. App. 2007) (after execution of a contract, plaintiff's claim of being defrauded into not exercising rights under the contract was a breach-of-contract claim, and under the economic-loss rule could not be maintained as a fraud claim). If, for example, there was a binding commitment to sell 30% of the calves back to HeartBrand, Bear Ranch would have reasonably "expect[ed] to see some sort of writing that confirms a 30 percent sellback provision between the parties." (Gill, Tr. Day 2, 255:15-18). Bear Ranch bought the subsequent cattle without a contract and without restrictions. (Gill, Tr. Day 2, 272:11-13; Tr. Day 3: 104:2-5)

6. HeartBrand's fraud claims as to the 2011 sales fail as a matter of law because it has not introduced any evidence of an out-of-pocket loss as to the sales. It has not shown whether Beeman or Twinwood would sell calves to HeartBrand if it exercised its alleged veto right. Nor has HeartBrand introduced evidence of what those calf sale prices would be or whether HeartBrand would make money or not.

HeartBrand argues that it expert testified to "unjust enrichment." But he explains that the liability predicate for his $90 million "unjust enrichment" opinion is the 2010 fraud claim – it would create the alleged unjustness which he purports to trace as a remedial matter to the later sales. He does not offer that unjust enrichment opinion on the 2011 fraud claims themselves:

> [B]ut for the fraud by which Bear Ranch persuaded HeartBrand to sell them cattle, Bear Ranch would not have been able to acquire additional full-blood Akaushi cattle from Beeman, Twinwood, and Rancho Delhi. . . .

> Accordingly, if the Court finds that HeartBrand was fraudulently induced into selling cattle to Bear Ranch, Bear Ranch has been unjustly enriched, as it is in possession of full-blood Akaushi cattle purchased subsequently (from Beeman, Rancho Delhi, and Twinwood) that it would not possess but for its fraudulent acts.
>
> I have quantified Bear Ranch's unjust enrichment by determining the fair market value of [the cattle from those sellers].

5/1/14 Andrien Rpt. (Dkt. #150-1) at 21-22 (emph. added). In other words, even if the later sales were not fraudulently induced, HeartBrand thinks they represent unjust enrichment on the 2010 sale fraud claim. So Andrien's "unjust enrichment" opinion is about a restitutionary remedy that HeartBrand seeks on its 2010 sale fraud claim; it is not evidence of out-of-pocket damages. *See Walker v. Cotter Properties, Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay.").

Andrien's "unjust enrichment" opinion is manifestly not the right calculation of out-of-pocket damages on the 2011-sale fraud claims. In those sales, HeartBrand alleges that it gave up a putative veto right, which would allegedly allow it to have the sellers (Beeman, Twinwood) keep their cattle. HeartBrand has not calculated any such damages. That alleged veto right would be valued, if at all, by the alleged profits to HeartBrand from receiving calves from Beeman and Twinwood and selling

the beef. Of course, Beeman did not himself sign a contract on the 514 cattle he bought, so he could do what he wanted. And even Beeman's contract on his 2009 purchase of other cattle had a different base price for calves than Bear Ranch's contract, while also affording Beeman the right to set a higher minimum price. PX 122. Likewise, Twinwood's contract allowed it to set a minimum price on and sell its calves to other AAA members. PX 112. So it is unclear that either owner would have sold any calves to HeartBrand or what profits HeartBrand would have made on them, had it exercised its alleged veto right. In any event, no expert has set out to answer those questions. There is no evidence on any legal remedy for the jury to decide on the 2011-sale fraud claims.

7. As a matter of law, defendants are barred from recovering on their fraud claims based on the evidence establishing their own unclean hands, which the Court has subsumed in Bear Ranch's fraud claim against HeartBrand. For example, HeartBrand admits that through its embellished and untrue marketing materials it was falsely "telling producers that HeartBrand was the sole owner of Akaushi fullblood cattle outside of Japan," which creates "value, a higher value." (Beeman, Tr. Day 5:112:18-21; 48:13-18; 79:17-80:24; 107:18-22; 123:18-124:3; 127:4-10)

8. As a matter of law, HeartBrand does not have a viable breach of contract claim because Bear Ranch complied or has been tendering compliance on the clear payment and other terms of its contract while seeking declaratory relief as to disputed

provisions. *See, e.g.,* Beeman, Tr. Day 5: 39:25-43:10; Brandstadt, Tr. Day 2, 91:22-92:20, 112:5-8; Gill, Tr. Day 2, 277:8-14. Said rejected tender of performance amounts to a waiver of any alleged breach of contract on the part of the Plaintiff and thereby prevents defendant from recovering under this claim.

9. As a matter of law, HeartBrand's claim for breach of contract is barred due to its own prior material breach of the contract through the acts of its wholly owned subsidiary and instrumentality the American Akaushi Association. *See* Dkt. #62 at ¶67 (pleading defense). The Full-Blood Contract required HeartBrand to deliver Full Blood Akaushi Cattle. *See* PX 1 at 1. In the absence of parentage information delivered, Bear Ranch had no way to discern that it had received what it had paid for. While on the one hand HeartBrand and its instrumentality the AAA failed to adhere to its own contractual requirements and organizational rules, on the other it first insisted that Bear Ranch comport with numerous AAA requirements and then rejected Bear Ranch's tender of performance. Such concerted acts constituted both a breach of an implied term of the Full Blood Contract (verification of the cattle as Full Blood Akaushi). The evidence adduced at trial shows that HeartBrand violated this duty on multiple occasions and long prior to any breach of the alleged agreement by Bear Ranch. HeartBrand's breach of contract claim is barred on that basis.

10. As a matter of law, HeartBrand's claim for breach of contract is barred due to its own waiver or by equitable estoppel, as HeartBrand knowingly acquiesced

to delayed or different performance, which Bear Ranch relied upon to its detriment. AAA was still developing at the time, and there was "no sense of emergency." *See, e.g.*, Bain, Tr. Day 3: 182:13-19; 184:13-15; Brandstadt, Tr. Day 2, 95:11. Indeed, Bear Ranch was entitled to and did justifiably rely upon the AAA's written representations to the effect that its calves could be registered "at any time." PX 219.

11. As a matter of law, HeartBrand's breach claims beyond the scope of the Court's summary-judgment order (Dkt. #91) fail. This applies to HeartBrand's claim regarding registration of offspring of cattle not purchased from Beeman, submission of data on such offspring, and a freestanding contract duty to register such offspring with the Whole Herd Reporting system. On the last point, there is no such contract duty, as the Court has ruled (*see id.* at 15). If such a duty exists, it is only through the AAA rules (which can change in time and have not been interpreted as a matter of law), and thus is subsumed within the allegation of a breach by failing to comply with AAA rules. *See* PX 1 at 2 (stating scope of reporting duty).

12. Defendants' affirmative defense of ratification fails as a matter of law because there is no probative or sufficient evidence that Bear Ranch accepted, knowingly or otherwise, defendants' deficient performance under the contracts. The fact that it took time for Bear Ranch to uncover defendants' fraud and misleading value proposition, while itself investing significant time and money developing the

assets it purchased, cannot be the basis for ratification. If Defendants intend to pursue that affirmative defense, it fails as a matter of law.

13. As a matter of law, Defendants' affirmative defense of waiver and estoppel should be dismissed because there is no probative or sufficient evidence that plaintiff made a misrepresentation or acted in such a way so as to cause Defendants to rely to their detriment. Bear Ranch's statements or conduct relating to its performance under the contract, particularly when it is unaware of the fraud or already invested in the purchased assets, cannot form the basis for waiver or estoppel. To the extent Defendants intent to rely on such a defense, it fails as a matter of law.

14. As a matter of law, HeartBrand cannot recover when there is no probative or sufficient evidence that it sustained damages or damages proximately caused by Bear Ranch. First, its alleged damages are based on untimely and unfounded expert opinions about alleged improperly calculated damages or "unjust enrichment". These points are explained in Bear Ranch's motion and briefing on Jeffrey Andrien testimony, Dkt. #150, 153, 155, incorporated here by reference. HeartBrand's alleged losses are unmoored from its alleged fraud and related breaches of contract, such as the alleged failure to submit DNA or to register or enroll with the AAA or otherwise comply with its rules. HeartBrand does not properly seek out-of-pocket losses for these breaches, but rather the alleged value of the cattle without any contractual restrictions. HeartBrand has also failed in its burden to establish a

remedy of rescission or to buy back the cattle that Bear Ranch bought and developed years ago. HeartBrand seek remedies barred by the economic loss rule. *Haase v. Glazner*, 62 S.W.3d 795, 796 (Tex. 2001).

15. To the extent HeartBrand plans to claim lost-profits damages, or effectively seeks that through its "unjust enrichment" valuation predicated on a hypothetical business making profits, the claim fails as a matter of law. HeartBrand has not comported with Section 18.091 of the Texas Civil Practice and Remedies Code, which requires that any claimant seeking loss of earnings or contributions of a pecuniary value present evidence of any loss in the form of a net loss after reduction for income tax payments. The evidence proffered by HeartBrand or in its expert's report (Dkt. #150-1) is not presented in such form and thereby fails to meet the statutory requirements for the recovery of such damages.

16. As a matter of law, HeartBrand is not entitled to seek exemplary damages because there is no probative or sufficient evidence allowing a rational jury to find by clear and convincing evidence that Bear Ranch committed fraud, or that its alleged wrongful acts caused HeartBrand's alleged losses, as argued above.

## Conclusion

Bear Ranch respectfully requests that the Court grant it judgment as a matter of law as to HeartBrand's three fraud counterclaims; the portions of HeartBrand's breach counterclaims beyond the Court's summary-judgment order (Dkt. #91);

requests for unjust enrichment "damages," out-of-pocket damages, and lost-profits damages; and affirmative defenses of ratification, waiver, and estoppel. Bear Ranch also requests all other just relief to which it may be entitled.

Dated:   May 28, 2014                    Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
Collin J. Cox
State Bar No. 24031977
J. Campbell Barker
State Bar No. 24049125
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway
Lubbock, Texas 79401
(806) 762-0214
(806) 762-8014 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

**Certificate of Service**

I certify that on May 28, 2014, a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ J. Campbell Barker
J. Campbell Barker

14