UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-14 |
| | § | |
| HEARTBRAND BEEF, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## COURT'S INSTRUCTIONS TO THE JURY

The following instructions were presented to the jury on the 28th day of May, 2014.

**MEMBERS OF THE JURY**:

## GENERAL INSTRUCTIONS

Now that you have heard the evidence, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.  It is your duty as jurors to follow the law as stated in the instructions of the Court, and to apply the rules of law so given to the facts as you find them from the evidence in this case. You, the jury, are the judges of the facts.

## Court's and Jurors' Duties

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  Neither are you to be concerned with the wisdom of any rule of law stated by the Court.  Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court, just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence

presented to all the jury and to arrive at the verdict by applying the same rules of law as given in the instructions of the Court.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the evidence. You are to perform this duty without bias or prejudice as to any party. Our system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion. A corporation, business entities, and all other persons are equal before the law and must be treated as equals in a court of justice. Both the parties and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court, and reach a just verdict, regardless of the consequences.

## Consideration of Evidence

**General:** In determining whether the party bringing a claim has met the burden of proof on any fact in issue, you may, unless otherwise instructed, consider the sworn testimony of all witnesses, regardless of who may have called them, all exhibits received in evidence, regardless of who may have produced them, and all facts which may have been admitted or agreed to. Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

**Objections and Stricken Testimony:** At times during the trial, I sustained objections to questions asked without permitting the witness to answer or, where

an answer had been made, instructed that it be stricken from the record and that you disregard it and dismiss it from your minds.  You may not draw any inference from a question that was not answered because I sustained an objection; nor may you consider in reaching your decision testimony or exhibits which have been stricken.  The law requires that your decision be made solely upon the competent evidence I received in this case.  Items, if any, I have stricken from your consideration were excluded because they are not legally admissible.

**Types of Evidence:**  There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence.  In determining whether Plaintiff has met his burden of proof, you must consider all the credible evidence, both direct and circumstantial.  While you are to consider only the evidence in the case, you are permitted to draw such reasonable inferences as seem justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from facts which have been established by the testimony and evidence in the case.

I also instruct you that statements and arguments of counsel are not evidence in the case, nor are they instructions on the law.

**Credibility of Witnesses and Weight of Evidence:** Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate. As the sole judges of the facts, you must determine the credibility, or "believability," of each witness, and what portion of his or her testimony you accept and what weight you attach to it.

You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter of evidence which tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive, state of mind, demeanor, and manner while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified, and whether the witness impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory, and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness. The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence, but which witness, and which evidence, appeals to your minds as being most accurate, and otherwise trustworthy.

**Expert Witnesses**: When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical

field–called an expert witness–is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and income from such testimony represents a significant portion of his or her income.

**Deposition Testimony:** During the course of trial, certain testimony was presented to you through deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

## Burdens of Proof

In this case, the party asserting a claim must prove its claims by a preponderance of the evidence, except as discussed in the Questions for Exemplary Damages where a different burden applies. This means you must determine as to each element whether or not the party asserting the claim has shown from the admissible evidence (both direct and circumstantial) that its contention on that element is "more likely true than not true."

Later in the instructions will be a discussion of affirmative defenses. Any party asserting an affirmative defense must prove the elements of the affirmative defense by a preponderance of the evidence.

In deciding whether any fact has been proven by a preponderance of the evidence, you should, unless otherwise instructed by the Court, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them, and give such evidence the weight you believe it deserves.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers to every question and your verdict must be unanimous.

## Notes of Jurors

If you have elected to take notes during this trial, your notes should be used only as memory aids. You should not give your notes precedence over your independent recollection of the evidence. If you did not take notes, you should rely upon your own independent recollection of the proceedings and you should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you have taken notes or not, each of you must form and express your own opinion as to the facts of the case.

## CASE SPECIFIC INSTRUCTIONS

### Parties

The Plaintiff in this case is Bear Ranch, LLC.

The Defendants are HeartBrand Beef, Inc. and Ronald Beeman. HeartBrand also asserts claims against Bear Ranch.

### Purchases

"The HeartBrand Purchase" means Bear Ranch's first purchase of Akaushi cattle from HeartBrand Beef in July 2010. "The Agreements" means the Full Blood Contract and the F1 Contract from the HeartBrand Purchase.

"The Rancho Delhi Purchase" means Bear Ranch's purchase of Akaushi cattle from Rancho Delhi in December 2010.

"The Beeman Purchase" means Bear Ranch's purchase of Akaushi cattle from Ronald Beeman in June 2011.

"The Twinwood Purchase" means Bear Ranch's purchase of Akaushi cattle from Twinwood Cattle Company in July 2011.

You must give separate consideration to each claim and each party in this case.

## FRAUD INSTRUCTIONS

Bear Ranch has brought a fraud claim against Defendants, and HeartBrand has brought fraud claims against Bear Ranch.  To establish a fraud claim, the party bringing the claim must prove each element by a preponderance of the evidence.

Fraud occurs when—

- a party makes a material misrepresentation, and

- the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

- the misrepresentation is made with the intention that it should be acted on by the other party, and

- the other party relies on the misrepresentation and thereby suffers injury.

Fraudulent inducement is a type of fraud claim where the other party relies on the misrepresentation in entering into a contract.

"Misrepresentation" means either (a) a false statement of fact or (b) a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.  A misrepresentation is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a reasonable person or entity to which it is addressed.

A misrepresentation is "made recklessly" if the speaker (a) knows that he does not have sufficient information or basis to support it, or (b) realizes that he does not know whether or not the statement is true.

## COMPENSATORY DAMAGES INSTRUCTIONS

### No Inference from Instruction on Damages

The fact that I am instructing you on the proper measure of damages should not be considered as an indication of any opinion I may have as to whether any party is entitled to recover damages in this case.  Instructions are given as to the measure of damages only for your guidance in the event you should find in favor of any party on the question of liability, by a preponderance of the evidence, and in accordance with the other instructions.

### Compensatory Damages

If you find that the party sued for damages is liable to the party claiming damages, then you must determine an amount that is fair compensation for all of the claiming party's damages.  These damages are called compensatory damages. The purpose of compensatory damages is to make the party whole—that is, to compensate the claiming party for the damage that they have suffered.

The damages that you award, if any, must be fair compensation for all of the claiming party's damages, no more and no less.  Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the party sued for damages.  You should not award compensatory damages for speculative injuries, but only for those injuries which the party claiming damages has actually suffered or is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the party claiming damages prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

**Mitigation of Damages**

A party who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find the party sued for damages is liable and the party claiming damages has suffered damages, the claiming party may not recover for any item of damage which it could have avoided through a reasonable effort.

## EXEMPLARY DAMAGES INSTRUCTIONS

"Exemplary damages" means any damages awarded as a penalty or by way of punishment—not for the purpose of compensating the party claiming damages. Exemplary damages include punitive damages.

Factors to consider in awarding exemplary damages, if any, are—

a.   The nature of the wrong.
b.   The character of the conduct involved.
c.   The degree of culpability of the wrongdoer.
d.   The situation and sensibilities of the parties concerned.
e.   The extent to which such conduct offends a public sense of justice and propriety.
f.   The net worth of the party sued for damages.

Bear Ranch and HeartBrand each claims that it is entitled to exemplary damages because of the other parties' fraud.   In order to recover exemplary damages, the party claiming damages must prove by clear and convincing evidence that the harm resulted from fraud.

"Clear and convincing evidence" is a higher burden than preponderance of the evidence.   It means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

Consider only the measure of damages that a question states is relevant to that particular question.

14 / 27

## BEAR RANCH'S CLAIMS

**Bear Ranch's Fraudulent Inducement Claim against Defendants (HeartBrand Purchase)**

Bear Ranch alleges that at the time of the HeartBrand Purchase, Defendants made misrepresentations concerning the exclusivity of its Akaushi cattle and genetics, which led Bear Ranch to enter into the Agreements.

**Question 1a:** Did HeartBrand commit fraud against Bear Ranch by fraudulently inducing Bear Ranch to agree to the HeartBrand Purchase?

Answer "Yes" or "No":  ___*No*_____

**If "Yes," then answer Questions 1b, 2, and 3.  Otherwise, SKIP to Question 5.**

**Question 1b:** Did Beeman knowingly participate in HeartBrand's commission of fraudulent inducement against Bear Ranch?

"Knowingly" means actual awareness, at the time of the conduct, of the facts constituting fraudulent inducement. Awareness may be inferred where objective manifestations indicate that a person acted with awareness.

"Participate" means giving substantial assistance or encouragement to the primary actor or doing an act in concert with the actor pursuant to a common purpose with the intent to pursue an unlawful purpose.

Answer "Yes" or "No":  _____

**Continue to Question 2.**

15 / 27

**Question 2:** What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Bear Ranch for its damages, if any, that resulted from HeartBrand's fraud?

For purposes of this Question, the measure of damages, if any, is the difference between the value of the assets Bear Ranch received and what it gave up under the Agreements.

Answer in dollars and cents, if any: _____

**Exemplary Damages on Bear Ranch's Fraud Claim**

**Question 3:** Do you find by clear and convincing evidence that the harm to Bear Ranch resulted from fraud by HeartBrand?

Fraud is defined on page 11.  Clear and convincing evidence is defined on page 14.

Answer "Yes" or "No": _____

**If "Yes," then answer Question 4.  Otherwise, SKIP to Question 5.**

**Question 4:** What sum of money, if any, if paid now in cash, should be awarded to Bear Ranch as exemplary damages, if any, for the conduct found in response to Question 3?

Answer in dollars and cents, if any: _____

**Continue to Question 5.**

16 / 27

## HEARTBRAND'S CLAIMS

**HeartBrand's Fraudulent Inducement Claim against Bear Ranch (HeartBrand Purchase)**

HeartBrand alleges that at the time it entered into the HeartBrand Purchase, Bear Ranch misrepresented that it intended to comply with the contractual obligations under the Agreements to register offspring of the cattle it purchased and to follow the rules of the American Akaushi Association.

**Question 5:** Did Bear Ranch commit fraud against HeartBrand by fraudulently inducing HeartBrand to enter into the 2010 Agreements?

Fraud is defined on page 11.

Answer "Yes" or "No": _____ *No* _____

**If "Yes," then answer Question 6.  Otherwise, SKIP to Question 7.**

**Question 6:** What sum of money, if any, if paid now in cash, would fairly and reasonably compensate HeartBrand for its damages, if any, that resulted from Bear Ranch's fraud?

For purposes of this Question, the measure of damages, if any, is the difference between the value received by HeartBrand and what it gave up under the Agreements.

Answer in dollars and cents, if any: _____

**HeartBrand's Fraud Claim against Bear Ranch  (Beeman Purchase)**

HeartBrand alleges that at the time of the Beeman Purchase, Bear Ranch misrepresented that it intended to sell to HeartBrand 30% of its calves and that it would comply with the restrictions in the 2010 Agreements for the cattle purchased from Beeman.

**Question 7:** Did Bear Ranch commit fraud against HeartBrand by fraudulently inducing HeartBrand's approval of the Beeman Purchase (if such approval was necessary)?

Fraud is defined on page 11.

Answer "Yes" or "No":  ___Yes___

**Continue to Question 8.**

18 / 27

**HeartBrand's Fraud Claim against Bear Ranch (Twinwood Purchase)**

HeartBrand alleges that at the time of the Twinwood Purchase, Bear Ranch misrepresented that it intended to comply with the restrictions of the 2010 Agreements for the cattle in this purchase from Twinwood.

**Question 8:** Did Bear Ranch commit fraud against HeartBrand by fraudulently inducing HeartBrand to approve the Twinwood Purchase (if such approval was necessary)?

Fraud is defined on page 11.

Answer "Yes" or "No": _____No_____

**If you answered "Yes" to <u>any</u> of Questions 5, 7, or 8, then answer Questions 9 and 10.  Otherwise, SKIP to Question 12.**

**Unjust Enrichment**

**Question 9:** How much, if any, was Bear Ranch unjustly enriched by purchasing cattle in 2010 and 2011 from the sellers listed below?

Answer in dollars and cents, if any, as to each purchase separately.

Beeman Purchase: _$23,199,000.00_

Rancho Delhi Purchase: _____

Twinwood Purchase: _____

**Exemplary Damages for HeartBrand's Fraud Claims**

**Question 10:** Do you find by clear and convincing evidence that the harm to HeartBrand resulted from fraud by Bear Ranch?

Fraud is defined on page 11. Clear and convincing evidence is defined on page 14.

Answer "Yes" or "No" as to each alleged fraud separately. Answer regarding a purchase only if you answered "Yes" to the underlying fraud liability question for that purchase. Otherwise, do not answer this Question for that purchase.

HeartBrand Purchase: _No_

Beeman Purchase: _Yes_

Twinwood Purchase: _No_

**If "Yes" to any of the Purchases in Question 10, then answer Question 11. Otherwise, SKIP to Question 12.**

**Question 11:** What sum of money, if any, if now paid in cash, should be assessed against Bear Ranch and awarded to HeartBrand as exemplary damages, if any, for the conduct found in response to Question 10?

Answer in dollars and cents, if any, as to each purchase separately. Answer regarding a purchase only if you answered "Yes" to the purchase in Question 10. Otherwise, do not answer this Question for that purchase.

HeartBrand Purchase: $1,825,000.00

Beeman Purchase: $1,825,000.00

Twinwood Purchase: _____

**Continue to Question 12.**

**HeartBrand's Breach of Contract Claim against Bear Ranch**
**(HeartBrand Purchase)**

HeartBrand claims that Bear Ranch breached the terms of the Agreements.

**Question 12:** Did Bear Ranch fail to comply with the 2010 Full-Blood

Contract or F1 Program Contract?

Answer "Yes" or "No": ____Yes_____

**If "Yes," then answer Questions 13 and 14.  Otherwise, do not answer any more Questions.**

22 / 27

## Bear Ranch's Affirmative Defense

Answer each question separately based on the definitions provided:

**Question 13—Waiver.**   Was Bear Ranch's failure to comply, if any, excused?

Failure to comply is excused if compliance is waived by HeartBrand. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No": _____*No*_____

Under certain circumstances, the Court could be permitted to award possession of the cattle described in the categories below to HeartBrand. To receive the cattle back, HeartBrand must compensate Bear Ranch for the reasonable amount Bear Ranch spent to acquire, produce, and maintain those cattle. The reasonable amount Bear Ranch spent to acquire, produce, and maintain the cattle does not include all amounts Bear Ranch spent on its business operations, but rather addresses the amounts Bear Ranch spent to acquire Akaushi cattle from particular outside sources, to produce additional cattle from those animals, and to maintain the health and welfare of those cattle while in Bear Ranch's possession.

Answer Question 14 without regard to the amount of any damages you may have awarded in response to another Question.

**Question 14:** What amount of money, if any, do you find Bear Ranch reasonably spent acquiring, producing, and maintaining the cattle listed in the categories below?

Answer in dollars and cents, if any, as to each category. Do not include in your answers any amounts Bear Ranch spent on animals that Bear Ranch slaughtered or harvested, or on animals that have died.

**a)**  the living Akaushi cattle that Bear Ranch acquired through the HeartBrand Purchase, and any living offspring of those animals

Answer in dollars and cents, if any: $6,034,000.00

**b)**  the living Akaushi cattle that Bear Ranch acquired through the Beeman Purchase, and any living offspring of those animals

Answer in dollars and cents, if any: $6,832,000.00

**c)**  the living Akaushi cattle that Bear Ranch acquired through the Rancho Delhi Purchase, and any living offspring of those animals

Answer in dollars and cents, if any: $784,000.00

**d)**  the living Akaushi cattle that Bear Ranch acquired through the Twinwood Purchase, and any living offspring of those animals

Answer in dollars and cents, if any: $378,000.00

**e)**  the Akaushi embryos in Bear Ranch's possession

Answer in dollars and cents, if any: $90,000.00

**f)**  the straws of Akaushi semen in Bear Ranch's possession

Answer in dollars and cents, if any: $160,000.00

## CONCLUDING INSTRUCTIONS

When you retire to the jury room to deliberate on your verdict, you may take this charge with you, as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

If you want to communicate with me at any time, please give a written message or question to the courtroom deputy, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always disclose to the attorneys your question and my response before I answer your question.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reach an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

26 / 27

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

After you have reached your unanimous verdict, your Foreperson is to fill in your answers to the questions on the verdict form.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to conduct your deliberations.

# CERTIFICATE

We, the jury, have answered the above questions and return same into the Court as our verdict.

Foreperson of the Jury
Signed this _29_ day of May, 2014.

1/1