**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| **BEAR RANCH, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:12-cv-14** |
| | § | |
| **HEARTBRAND BEEF, INC.,** | § | |
| **AMERICAN AKAUSHI** | § | |
| **ASSOCIATION, INC.,** | § | |
| **and RONALD BEEMAN,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' SUR-REPLY TO
BEAR RANCH'S REPLY IN SUPPORT OF ITS
RENEWED MOTION FOR JUDGMENT AS A MATTER
OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 50(b)**

Defendants submit this Sur-reply to Bear Ranch's Reply (Dkt. #196, the "Reply") in support of its renewed motion for judgment as a matter of law (Dkt. #180, the "Renewed JMOL Motion").

**I.      Limited purpose of the Sur-reply.**

Although Defendants disagree with the positions Bear Ranch states in the Reply, most of the arguments concern matters that were addressed in Defendants' Response (Dkt. #192) and require no further refutation.  Although Defendants prefer not to file further briefing, Defendants believe they must address new arguments made by Bear Ranch in the Reply.

1

**II.   Bear Ranch's all-new statute of frauds argument—which has already been waived—is wrong.**

In the Reply, Bear Ranch contends that the unjust enrichment damages model advanced by HeartBrand at trial as a remedy for Bear Ranch's 2011 fraud violates the statute of frauds, because it is equivalent to benefit-of-the-bargain damages.  (Reply at 7.)  Neither this argument nor the cases cited in support are anywhere to be found in the Renewed JMOL Motion or the "Original JMOL Motion" (Dkt. # 158).[1]  Because this argument was not presented in the Original JMOL Motion, it cannot be considered as part of the Renewed JMOL Motion.[2]

Regardless of whether the argument was preserved, it is patently untrue.  Bear Ranch also raised this argument in its Response to Defendants' Motion for Entry of Judgment, so we reserve discussion of the issue for the Defendants' Reply to that response, filed this same day, and incorporate that discussion by reference.

**III.   Bear Ranch misstates the law in its new case citations on reliance issues.**

Bear Ranch contends that its false promise that it would sell calves to HeartBrand, made to induce the sale of cattle from Beeman, does not constitute fraud if a specific price was not offered in the promise.  In response, HeartBrand cited cases demonstrating that a promise can give rise to fraud injury without

---

[1]   The Renewed JMOL Motion stated that Defendants do not present an out-of-pocket damages model (Dkt. #180 at 7-8 n.4).  Bear Ranch did not contend, however, that the unjust enrichment model presented at trial was a benefit-of-the-bargain damages model.

[2]   *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 247 (5th Cir. 2005) ("If a party fails to raise an issue in its Rule 50(a)(1) motions at trial, it may not do so in its post-trial Rule 50(b) motion."); *accord Wallace v. Methodist Hosp. Sys.*, 85 F. Supp. 2d 699, 707 (S.D. Tex. 2000).

2

meeting the standards for enforceability as a contract (especially so where, as here, the claimant does not seek the benefit of the bargain), and showed that the facts here would satisfy even the specificity standards applicable in contract cases. Bear Ranch replies by simply misstating the law.

First, Bear Ranch denies that a contract can be enforced if it is "missing" a price term. Notwithstanding Bear Ranch's facile distinction of the *Sacks* case, the black letter law says otherwise. Texas courts have repeatedly recognized that, where the parties fail to specify a price term, a reasonable price will be presumed to effectuate the parties' agreement. *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966) (holding that absence of express agreement as to price did not preclude specific performance); *Davis v. Chaparro*, 431 S.W.3d 717, 723-24 (Tex. App.— El Paso 2014, pet. denied) (holding that contract for translations services was still enforceable "absent an express agreement on the price"); *see also Enermark, Inc. v. Sandpoint Petroleum, Inc.*, 1993 WL 529768, at * (5th Cir. Dec. 2, 1993) ("[A] contract for goods or services may be enforceable even though the exact amount of compensation is uncertain."). This principle is particularly applicable where, as here, the agreement concerns the sale of goods. *See* TEX. BUS. & COM. CODE ANN. § 2.305(a)(1) (stating that, in a sale of goods transaction, the price will be considered to be a reasonable price if nothing is said as to price).

Second, Bear Ranch's assertion that price terms are "universally critical to definiteness" once again relies on contract cases, without any support from fraud cases of the kind at bar. The *Playoff* and *Liberto* cases on which Bear Ranch relies are both contract cases, and further distinguishable on their facts. *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 456 (Tex. App.—Fort Worth 2009, pet. denied) (holding that the only evidence of a material term in the parties' alleged contract was the plaintiff's admission that it was "the major unresolved element"); *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 324-25 (5th Cir. 2006) (holding that agreement to enter into a future trademark license agreement was unenforceable because necessary elements of the license, including its duration, were omitted). Although the remaining case cited by Bear Ranch, the *T.O. Stanley* case, involved both contract and fraud claims, the opinion in the case actually undermines Bear Ranch's position. In *T.O. Stanley*, the court found an alleged contract to lend money failed for indefiniteness, because there was no evidence of any repayment terms or an interest rate. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221-22 (Tex. 1992). But even after the Court found that the promise to loan money was unenforceable as a contract due to indefiniteness, the Court still considered the plaintiff's fraud claim based on the same promise, and separately analyzed whether there was evidence of intent to perform the promise. *Id.* at 222. In other words, the absence of an interest rate "price" was

4

not, as Bear Ranch suggests, sufficient to decide the fraud claim.  The court's separate analysis of the fraud demonstrates that the "definiteness" standards in contract cases and fraud cases cannot be improperly conflated, as Bear Ranch attempts.

Texas law does not excuse dishonesty as easily as Bear Ranch suggests. Bear Ranch did not even attempt to distinguish the authorities HeartBrand cited on this issue, such as *Anderson* or *Burleson State Bank*, which show that misrepresentations need not be detailed to give rise to reasonable reliance.  The jury's verdict is sound.

## IV.  Bear Ranch's new arguments as to breach of contract do not undermine the jury's verdict.

In Part 4 of the Reply, Bear Ranch confuses the defenses at issue with respect to HeartBrand's claim for breach of contract, and the standards applicable to those defenses at this stage of the case.  In the Original JMOL, Bear Ranch contended that it "has been tendering compliance" under the 2010 contracts and that HeartBrand's "rejected tender of performance" constituted waiver of any breach as a matter of law.  (Dkt. #158 ¶ 8.)  In the Renewed JMOL, Bear Ranch repeated this argument that it had "tendered" and "HeartBrand refused to accept" this tender, and that doing so constituted equitable estoppel and waiver.  (Dkt. #180 at 26, 29-30.)  In the Response, HeartBrand refuted the argument that Bear Ranch made a "tender," as properly understood under applicable law.

On Reply, Bear Ranch recasts its earlier arguments and says "the pertinent legal question here is not tender, but the defense of waiver."  Dkt. # 196 at 25. Bear Ranch's new position is that, even absent a valid tender, waiver as a matter of law was established by "locking Bear Ranch out of the reporting system and refusing to accept any payment."  (Reply at 26.)  This defense, however, was already presented at trial and found by the jury as a fact matter not to rise to the level of an "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."[3]

First, the evidence presented at trial was that Bear Ranch's access to the Association's online database was suspended after months of delays and non-performance culminating in a lawsuit in which Bear Ranch announced that it was refusing to complete its whole-herd reporting enrollment or pay assessments for its whole herd.  Even in the face of that refusal to perform, the evidence showed that Bear Ranch could have performed by using any of the offline methods of enrollment and registration made available by the Association, which methods had frequently been offered to Bear Ranch.[4]

---

[3]    *See* Jury Question 13; *see also Dike v. Valley Forge Ins. Co.*, 797 F. Supp. 2d 777, 785 (S.D. Tex. 2011), addressed in the Response (Dkt. #192) at 38.

[4]    *See* 5/21/14 Tr. (B. Bain) at 250 (explaining that access to the Association's online system was not necessary in order for members to comply with the Association's Whole Herd Reporting requirements); *id.* at 255 (the Association had offered assistance to Bear Ranch to help them meet the Association's reporting requirements despite Bear Ranch's performance delays); *see also* 5/27/14 Tr. (J. Bain) at 130-131 (indicating that Association members could fulfill whole herd reporting requirements by submitting information online or by submitting hard copy

Second, although Bear Ranch implies that there was some refusal to accept payments, the record evidence is that the Association never told Bear Ranch that it was refusing to accept its partial payment but, instead, requested additional information on the terms of Bear Ranch's purported "payment under protest" and requested that Bear Ranch fully perform its obligations under the 2010 Contracts, both in correspondence[5] and by counterclaiming to allege breach of contract. Bear Ranch never offered to perform—it simply offered to continue its willful breaches, effectively rewriting the plain language of the contract to its own liking. The jury was right: there is no basis on which to conclude that Defendants intentionally relinquished the right to Bear Ranch's performance.

## V.    Prayer.

Defendants respectfully request that the Court deny Bear Ranch's renewed motion for judgment as a matter of law, and grant Defendants such additional and further relief to which they show themselves entitled.

---

information for her to enter in the online system); i*d.* at 175-76 (noting that she enters the registration information for the majority of HeartBrand's contracted producers into the Association's online system).

[5] *See* PX 297 (September 9, 2013 letter from Bubba Bain to Rob Gill); *see also* DX 123 (May 9, 2014 letter from Bubba Bain to Rob Gill).

Respectfully submitted,

VINSON & ELKINS L.L.P.


/s/ James A. Reeder, Jr.
James A. Reeder, Jr.
Attorney-in-Charge
Texas Bar No. 16695010
Federal Bar No. 12381
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:  713-758-2636
Facsimile:  713-615-5033

OF COUNSEL:

Jason M. Powers
Texas Bar No. 24007867
Federal Bar No. 23567
Stacy M. Neal
Texas Bar No. 24060322
Federal Bar No. 892868
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

**ATTORNEYS FOR DEFENDANTS**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2014, a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system.


/s/Stacy M. Neal
Stacy M. Neal