IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-14 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI | § | |
| ASSOCIATION, INC., | § | |
| and RONALD BEEMAN, | § | |
| | § | |
| Defendants. | § | |

### HEARTBRAND BEEF, INC.'S MOTION FOR RECOVERY OF ATTORNEYS' FEES, EXPENSES, AND COSTS

Pursuant to Federal Rule of Civil Procedure 54, the stipulation of the parties,[1] and the Court's Memorandum and Order granting in part and modifying in part Defendants' motion for entry of judgment on the verdict (Dkt. #240), Defendant HeartBrand Beef, Inc. ("HeartBrand") submits this Motion for Recovery of Attorneys' Fees, Expenses, and Costs (the "Motion").

### I.  NATURE AND STAGE OF THE PROCEEDINGS

Following an eight day trial, the jury in this case returned its unanimous verdict on May 29, 2014. (Dkt. #172.) In its verdict, the jury made the following

---

[1] Prior to trial, the parties stipulated that "[a]ll issues pertaining to recovery of attorney's fees, costs, and expenses of litigation (including the entitlement to and calculation of such amounts) shall be presented to the Court without a jury after trial" as the Court may direct. (Dkt. #157).

1

findings (terms of which are defined in the charge): (i) HeartBrand did not commit fraud against Plaintiff Bear Ranch, LLC ("Bear Ranch") by fraudulently inducing Bear Ranch to agree to the HeartBrand Purchase; (ii) Bear Ranch committed fraud against HeartBrand by fraudulently inducing its necessary approval of the Beeman Purchase; (iii) as a result of Bear Ranch's fraud, it had been unjustly enriched in the amount of $23,199,000 and $1,825,000 in exemplary damages should be assessed against Bear Ranch and awarded to HeartBrand; (iv) Bear Ranch failed to comply with the terms of the Contracts and its failure to comply was not excused; and (v) Bear Ranch reasonably spent $6,284,000 acquiring, producing and maintaining the cattle Bear Ranch acquired in the HeartBrand Purchase, their offspring, and genetic material.  The jury thus found no liability on the part of the Defendants, and found that Bear Ranch was liable to Defendants with respect to certain of their fraudulent inducement claims and their breach of contract claims.

On September 24, 2014, this Court heard final arguments concerning Bear Ranch's renewed motion for judgment as a matter of law (Dkt. #180) and Defendants' motion for entry of final judgment (Dkt. #193).  At this hearing, the Court denied Plaintiffs' renewed judgment as a matter of law with respect to issues concerning Defendants' liability on Bear Ranch's claims and affirmed the jury's findings regarding Bear Ranch's liability on Defendants' claims.  This Court memorialized its ruling in a September 4, 2015 Memorandum and Order granting

in part and modifying in part Defendants' motion for entry of judgment on the verdict (Dkt. #240).  In that order, this Court also established that "any request for costs or attorneys fees shall be filed" within 30 days.  (*Id.*).

Pursuant to the terms of the contracts between HeartBrand and Bear Ranch, HeartBrand hereby moves this Court for an award of $4,723,421.80 for its reasonable attorneys' fees, expenses, and other costs incurred in this matter for work performed through August 31, 2015.  HeartBrand also requests leave to file a supplemental request for attorneys' fees, expenses, and other costs incurred from September 1, 2015 to the entry of a final judgment in this matter within fourteen days after entry of final judgment.

## II.   ARGUMENT AND AUTHORITIES

### A.   HeartBrand is entitled to recover reasonable attorney's fees, expenses, and costs pursuant to the terms of the 2010 Contracts.

#### 1.   Based on the record evidence, HeartBrand's attorney's fees, expenses, and costs are presumptively reasonable.

Federal courts sitting in diversity, such as this one, apply state substantive law and federal procedural law.[2]  An award of attorneys' fees is governed by state

---

[2] *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) ("It is a long recognized principle that federal courts sitting in diversity cases, such as this one, apply state substantive law and federal procedural law."); 1st Am. Compl. (Dkt. #59) ¶ 6 (asserting diversity jurisdiction).

3

substantive law and, thus, in this case, Texas law controls.[3]  Under Texas law, a litigant may recover its attorneys' fees and expenses "if authorized by statute or by a contract between the parties."[4]

In this case, Bear Ranch agreed to reimburse HeartBrand "all of its reasonable attorney fees and <u>any other costs</u> incurred in enforcing the terms of this agreement."[5] Bear Ranch also agreed that, in an action to enforce the contract, "the prevailing party in such legal action shall be entitled to recover from the other party reasonable attorney's fees, <u>expenses and costs</u>."[6]  The contractual term "reasonable attorneys' fees" is given its generally accepted meaning because it was not otherwise defined in the 2010 Contracts.[7]

Under Texas law, a court considers the reasonableness of an award of attorneys' fees in two stages.  First, the Court calculates the "lodestar" fee, the result of multiplying the number of hours reasonably expended on the litigation by

---

[3] *Chevron USA, Inc. v. Aker Maritime, Inc.*, 689 F.3d 497, 505 (5th Cir. 2012); *Shelak v. White Motor Co.*, 636 F.2d 1069, 1072 (5th Cir. 1981) ("[S]tate rather than federal law governs the issue of the awarding of attorney's fees.").

[4] *Intercontinential Group v. KB Home*, 295 S.W.3d 650, 653 (Tex. 2009).

[5] DX 17 § XVI; DX 18 § XVII (emphasis added).

[6] DX 17 § XX; DX 18 § XXI (emphasis added).  As described above, the jury found that Bear Ranch was liable to HeartBrand with respect to its breach of contract claims.  As a result, HeartBrand was the "prevailing party" on those claims.  *See Dear v. City of Irving,* 902 S.W.2d 731, 739 (Tex. App. — Austin 1995, writ denied) (prevailing party is one who is vindicated by trial court's judgment).

[7] *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense.").

a reasonable hourly billing rate.[8] In this case, the lodestar fee through August 31, 2015 is equivalent to $3,091,145.00, as demonstrated by the affidavit of lead counsel, James A. Reeder, Jr., and the supporting invoices and table attached thereto.[9]

Second, the Court is to consider eight factors in determining whether an adjustment to the lodestar is necessary for purposes of establishing a reasonable amount of attorney's fees.[10] However, the application of these factors should only rarely have an effect on the award amount; the lodestar amount is "presumptively reasonable and should be modified only in exceptional cases."[11] The eight factors include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the

---

[8] *Jiminez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010).

[9] HeartBrand has redacted, in part, certain entries in order to avoid the disclosure of confidential attorney-client communications. If necessary, HeartBrand can make these available to the Court for *in camera* review. HeartBrand has also redacted, in full, any time entries for legal services not directly related to the prosecution and defense of this case, for which HeartBrand does not seek recovery.

[10] *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[11] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[12]

The fee applicant is not required to present evidence on each of these factors. Rather, the "trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties."[13] Moreover, "uncontroverted attorney's testimony or affidavit testifying to the attorney's qualifications, reasonableness of the attorney's fees, and the basis for such opinion may be sufficient to support an award of attorneys' fees."[14]

Each of the eight factors are present and support the reasonable fee sought without adjustment to the lodestar amount. As described in the Affidavit of HeartBrand's lead counsel, James A. Reeder, Jr., (attached hereto as Exhibit A), there is no need to modify the lodestar amount in this case. As described by Mr. Reeder, (1) the time and labor required was significant, the novelty and difficulty

---

[12] *Arthur Andersen,* 945 S.W.2d at 818.

[13] *Weaver v. Jamar,* 383 S.W.3d 805, 814 (Tex. App. — Houston [14th Dist.] 2012, no pet.).

[14] *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184, 2014 WL 1017056, at *3 (N.D. Tex. March 17, 2014) (citing *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App. — Fort Worth 1997, no writ)). *See also Tex. Comm. Bank v. New*, 3 S.W.3d 515, 517–18 (Tex. 1999) (holding that an affidavit from plaintiff's counsel was "legally sufficient to support the trial court's attorney's fees award"); *Marine Geotechnics, LLC v. Williams*, No. H–07–3499, 2011 WL 147722, at *4 (S.D. Tex. Jan. 18, 2011) (declaration from plaintiff's attorney as to the "reasonableness and necessity of the attorneys' fees" was sufficient evidence).

of the questions involved was great, and the skill required to perform the legal services properly was high; (2) the acceptance and prosecution of this case precluded attorneys from handling and working on other cases during the times they were working on this matter; (3) the fees charged are customary in the relevant market for this level of litigation; (4) the amount claimed was substantial and a positive result was obtained; (5) time limits were imposed by the circumstances; (6) the attorneys have maintained an ongoing professional relationship with HeartBrand since the filing of this suit, encompassing both this and other matters; (7) the experience, reputation, and ability of HeartBrand's attorneys is substantial; and (8) the fee is based on a fixed hourly rate, which varied according to each attorney's level of legal experience.  As a result, there is simply no need to adjust the lodestar amount, which as described above, is presumptively reasonable.

> **2.    Under these circumstances, there are no fees and costs that must be segregated based on the cause of action at issue.**

As a general rule, where only some of a claimant's fees and expenses are recoverable, the claiming party typically must segregate recoverable fees from unrecoverable fees.[15]  However, "when discrete legal services advance both a

---

[15] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).

recoverable and unrecoverable claim," the services are said to be "so intertwined that they need not be segregated."[16]

Where, as here, a party seeks to enforce a contract, and to do so, must overcome defenses or causes of action asserted by the breaching party in order to recover on that contract, Texas courts hold that the attorney's fees incurred in overcoming those defenses or causes of action are inextricably linked to the breach of contract claim.[17]

In this case, the fees incurred by HeartBrand in defeating Bear Ranch's antitrust and fraud claims do not need to be segregated from those fees related to HeartBrand's breach of contract claim. From the dawn of this case, Bear Ranch's causes of action were defensive in nature and sought to prevent enforcement of the 2010 Contracts. In fact, the original complaint in the case sought no damages; the

---

[16] *Id.* at 313-14; *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (providing for a previous exception to the general rule that is still used by the courts in the limited circumstance when fees for recoverable and unrecoverable claims are so intertwined that including both in the fee award is reasonable).

[17] *See, e.g.*, *Tony Gullo Motors*, 212 S.W.3d at 314 (noting that a party who raises a defense to a breach of contract claim "should not be allowed to suggest to the jury that overcoming those defenses was unnecessary" in terms of allocating recoverable fees); *RepublicBank Dallas, N.A. v. Shook*, 653 S.W.2d 278, 282-83 (Tex. 1983) (allowing for the recovery of attorney's fees incurred defeating the opposing party's claims first because the prevailing party was forced "to defend against all of the [plaintiff's] claims before it could recover the money outstanding on the notes"); *Uretek (USA), Inc. v. Ureteknologia de Mexico S.A. de C.V.*, No. H-11-3060, 2013 WL 3280151 (S.D. Tex. June 27, 2013) (holding that recovering the attorney's fees incurred in defeating a fraudulent inducement claim, as well as those fees incurred prosecuting a subsequent breach of contract claim, was reasonable because the recovering party had to prove the validity of the contract before it could prove the opposing party breached the contract).

only remedies sought for both Bear Ranch's antitrust and fraud causes of action were an injunction against performance of the contract and a declaration that the contract was unenforceable.[18]  Bear Ranch's Amended Complaint likewise contended that Bear Ranch's fraud claim was a defense to the enforcement of HeartBrand's contract.[19]  Moreover, Bear Ranch requested a jury question on HeartBrand's alleged fraud as a defense to HeartBrand's contract claim, which was substantially duplicative of the question Bear Ranch obtained on the fraud claim for its case-in-chief.[20]

Here, the jury found that HeartBrand did not fraudulently induce Bear Ranch's entry into the Full Blood Contract, and Bear Ranch abandoned its antitrust defenses/claims after more than a year of litigation.  HeartBrand could not have recovered for its breach of contract claim without overcoming those defenses. Therefore, under the Texas authority described above, the defense of these claims was inextricably intertwined with prosecuting HeartBrand's own breach of contract claim, and HeartBrand is entitled to recover its attorney's fees with respect to all such matters.

Similarly, the fees incurred by HeartBrand in pursuing its fraud claims on the 2011 Beeman sale need not be segregated from those fees related to

---

[18] *E.g.*, Orig. Compl. ¶¶ 36-37, 39-41, 44-46, 51, 55, 59, 65, Prayer (E), (F), and (G).

[19] 1st Am. Compl. ¶¶ 42, 49, Prayer (A).

[20] Dkt. #124, question 22.

Defendants' breach of contract claim. HeartBrand sought a ruling that the 2010 Contract applied to the 2011 Beeman cattle sale, and that Bear Ranch had breached the contract with respect to that sale or committed fraud in making the purchase. Although HeartBrand's contract cause of action on the 2011 sale did not lead to a breach finding, HeartBrand did prevail in "enforcing the terms of the contract" on the 2011 sale: the Court's remedy on HeartBrand's fraud and unjust enrichment claim applies the 2010 Contract terms to the 2011 sale.

Moreover, HeartBrand's injury arising out of the 2011 sale was the injury to HeartBrand's expectation that the 2010 Contract would be performed with respect to the 2011 sale. Collecting and presenting the proof that Bear Ranch breached the 2010 Contract terms necessarily served both the causes of action related to the 2010 Contract and those related to the 2011 sale, and the legal services directed to those issues were necessarily bound up together. The intertwined and overlapping nature of these causes of action is an independent reason that Texas law does not require segregation of fees concerning Bear Ranch's fraudulent promises to comply with the terms of the 2010 Contracts. HeartBrand is entitled to recover its attorney's fees and costs without artificially separating the legal services pertaining to these two related claims.[21]

---

[21] *Tony Gullo Motors* at 313-14 ("To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.").

### B. HeartBrand is also entitled to recover its other fees and expenses pursuant to the terms of the 2010 Contracts.

As noted above, Bear Ranch agreed to reimburse HeartBrand "all of its reasonable attorney fees and <u>any other costs</u> incurred in enforcing the terms of this agreement."[22] Bear Ranch also agreed that "the prevailing party in such legal action shall be entitled to recover from the other party reasonable attorney's fees, <u>expenses and costs</u>."[23]

These costs, which are set forth in the tables attached to Exhibit A include paralegal and technology specialist support fees, court reporting fees, expert witness fees, and electronic discovery fees. These fees and costs were reasonably and necessarily incurred by HeartBrand in pursuing its breach of contract claims against Bear Ranch as well as defending against Bear Ranch's antitrust and fraud defenses to that contract claim. As a result, these costs are recoverable under the terms of the 2010 Contracts.

## III. CONCLUSION

For the foregoing reasons, HeartBrand requests that the Court grant its Motion and order that HeartBrand is entitled to recover $4,723,421.80 for the reasonable attorneys' fees and expenses and other costs it incurred at the trial level through August 31, 2015. HeartBrand also requests leave to file a supplemental

---

[22] DX 17 § XVI; DX 18 § XVII (emphasis added).

[23] DX 17 § XX; DX 18 § XXI (emphasis added).

request for attorneys' fees, expenses, and other costs incurred from September 1, 2015 to the entry of a final judgment in this matter within fourteen days after entry of final judgment.

Respectfully submitted,

VINSON & ELKINS L.L.P.

*/s/ James A. Reeder, Jr.*
James A. Reeder, Jr.
Attorney-in-Charge
Texas Bar No. 16695010
Federal Bar No. 12381
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:  713-758-2636
Facsimile:  713-615-5033

OF COUNSEL:

Jason M. Powers
Texas Bar No. 24007867
Federal Bar No. 23567
Stacy M. Neal
Texas Bar No. 24060322
Federal Bar No. 892868
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2015, a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system.

*/s/Stacy M. Neal*
Stacy M. Neal