IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF BEAR RANCH'S MOTION FOR
ATTORNEY FEES, EXPENSES, AND COSTS**

On March 18, 2014, the Court granted summary judgment, in part, against HeartBrand's breach-of-contract claim, as requested by Bear Ranch, finding that the 2010 Full Blood contract does not require Bear Ranch to sell its Akaushi offspring to HeartBrand and that the restrictions in the contract do not apply to the Beeman, Twinwood, and Spears cattle. The ruling left only a narrow contract question for trial—whether Bear Ranch had failed to register the offspring of the HeartBrand Purchase cattle and pay a minimal fee. With most of HeartBrand's contract claim decided, the parties' focus at trial was their competing fraud claims.

While overshadowed by the fraud claims, the dueling contract claims were important, in part, because the contract provides for attorney fees, expenses, and costs to a party prevailing on a claim under the agreement. Accordingly, Bear

Ranch now files this Motion for Attorney Fees, Expenses, and Costs associated with its defense of HeartBrand's contract claims on which Bear Ranch prevailed.

Based on the Court's rulings, Bear Ranch is the prevailing party under the terms of the contract and Tex. Civ. Prac. & Rem. Code §38.001 and is entitled to attorney fees of $276,456 and expenses and costs of $20,998.

## Argument and Authorities

### A.   Texas Law Governs this Request for Attorney Fees.

"State law controls both the award of and the reasonableness of attorney's fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). *See also Tex. Commerce Bank Nat'l Ass'n v. Capital Bancshares Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990) ("In diversity cases state law governs the award of attorney fees.") Here, diversity exists between the parties and Texas law governs their contractual dispute. Therefore, Texas law applies to this request for attorney fees.

### B.   The Contract Mandates an Award of Fees, Expenses, and Costs.

A litigant may recover its attorney fees and expenses "if authorized by statute or by a contract between the parties." *Intercontinental Group Partnership v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 653 (Tex. 2009).

Here, the parties' contract, which is governed by Texas law, authorizes the recovery of attorney fees, expenses, and costs for the party that prevails in a legal

action under the contract:

> If any legal action is brought to enforce this Agreement by either of the parties hereto, it is expressly agreed that the prevailing party in such legal action shall be entitled to recover from the other party reasonable attorney's fees, expenses, and costs.

PX1 § XX.

HeartBrand sued to enforce the agreement when it asserted a breach of contract claim against Bear Ranch. (Dkt. #7, 61) After extensive legal research, depositions, and briefing, Bear Ranch defeated the claim by proving that the contract does not apply to the cattle purchased from Beeman, Spears, and Twinwood and did not, in any event, require the sale of offspring to HeartBrand. (Dkt. #91) Bear Ranch is thus the prevailing party regarding this issue and, as a result, is entitled to its "reasonable attorney's fees, expenses, and costs." PX1 § XX.

Moreover, even if the contract did not address attorney fees—which it does—Bear Ranch would be entitled to attorney fees under Texas Civ. Prac. & Rem. Code §38.001, which provides that a party may recover reasonable attorney fees in a breach of contract case.

For these reasons, Bear Ranch respectfully seeks recovery for its reasonable attorney fees, expenses, and costs, segregated only as to the contract issues.

### C.  Bear Ranch's Fee Request is Reasonable and Necessary.

#### 1.  Standards governing whether attorney fees are reasonable.

Bear Ranch is entitled to attorney fees reasonably incurred to prevail on the

-3-

contract counterclaims asserted by defendant HeartBrand, under both the terms of the 2010 contract and §38.001. To decide whether a party's fees are reasonable, a court may look to factors that include:

1. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

2. the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent on results obtained of uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). *See also OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 2015 WL 5021954, at *4 (S.D. Tex. 2015) (citing *Andersen* factors). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet denied). While a court may consider these factors in making a determination regarding fees, the requesting party need not address them

all. The court "is not required to receive evidence on each of [the eight] factors." *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.). Here, the relevant factors confirm that plaintiff's fee request is reasonable.

### 2. The time and labor required were significant.

Bear Ranch filed this lawsuit in March 2012 to obtain relief from the contract restrictions HeartBrand sought to enforce. Bear Ranch presented several bases for why its cattle were not and should not be subject to the contract restrictions. It asserted that the cattle purchased from Ronald Beeman, Twinwood Cattle Company, and Tony Spears were not subject to the contract nor to any contract restrictions. (Dkt. #1 at 14-15) In May 2012, HeartBrand counterclaimed for breach, asserting that the contract required Bear Ranch to sell back to HeartBrand the full-blood offspring of the 2010 HeartBrand Purchase cattle. (Dkt. #7 at 18-19) At the same time, Beeman counterclaimed for breach because Bear Ranch was not living up to the terms of the contract with respect to the 2011 Beeman Purchase cattle. (*Id.* at 19-20)

In September 2013, defendants amended their counterclaims to include claims for fraudulent inducement and common law fraud. (Dkt. #61) In addition, in Counterclaim 6, HeartBrand sought to enforce the contract and claimed that Bear Ranch breached with respect to its Akaushi, without distinction between the cattle acquired from HeartBrand, Beeman, Twinwood, and Spears. HeartBrand sought

repossession of the cattle and damages. (*Id.* at 22-23)

Over the course of the litigation, the parties engaged in intensive discovery, including taking 25 depositions, exchanging more than 20,000 pages of documents, not including third-party documents, and preparing extensive written discovery. (Ex. A ¶¶7-8) In December 2013, Bear Ranch moved for partial summary judgment seeking dismissal of HeartBrand's contract claim (Counterclaim 6), among others. (Dkt. #73) Bear Ranch also requested that the Court construe the contract as not applying to the Beeman, Twinwood, and Spears cattle, except with respect to marketing and registration, pursuant to its declaratory judgment claim. (*Id.*) Bear Ranch filed its MSJ Reply on January 14, 2014. (Dkt. #85)

In March 2014, the Court issued its Memorandum and Order on the parties' competing MSJs. (Dkt. #91) The Court granted Bear Ranch's motion as to HeartBrand's breach claim and found that the contract did not require Bear Ranch to sell cattle back to HeartBrand. (*Id.* at 8-11) Because HeartBrand's breach of contract claim made no distinction between the four purchases, the ruling applied to all cattle regardless of the time of purchase. In addition, the Court granted summary judgment on Bear Ranch's declaratory claim that the contract restrictions, except for the marketing and registration provisions, do not apply to the cattle purchased from Beeman, Twinwood, and Spears. (*Id.* at 30) As a result, Bear Ranch prevailed on HeartBrand's legal action to enforce the contract and is

entitled to fees related to those claims.

Moreover, the Court's contract ruling conferred a substantial benefit upon Bear Ranch. As this Court recognized, the restrictions imposed by HeartBrand "have value." (Dkt. #240 at 3) Now freed from the restrictions, Bear Ranch is not required to sell Akaushi offspring to HeartBrand. Further, with respect to the cattle purchased from Spears, Beeman, and Twinwood, none of the restrictions apply, other than those prohibiting Bear Ranch from marketing the beef as Akaushi and requiring it to register the cattle with the American Akaushi Association. (Dkt. #91 at 19; Dkt. #240 at 6)

Bear Ranch's legal team devoted a total of 719 hours to prevail against HeartBrand's breach of contract counterclaim. *See* Ex. A ¶6. This excludes time spent by these individuals and others on case-related tasks for which recovery is not allowed. (*Id.* ¶8) A breakdown of the hours worked and tasks performed by individual is included in Exhibit A1. In particular, the following individuals worked on the contract claims on which Bear Ranch prevailed:

- Paul Yetter (Attorney) – 73 hours: Lead counsel for Bear Ranch, with overall authority for its legal team; developed legal strategies; supervised briefing of summary judgment arguments; deposed Ronald Beeman; reviewed and revised filings of Bear Ranch.

- Cam Barker (Attorney) – 523 hours: Handled day-to-day management of the case; preparation for depositions of Rob Gill and Ronald Beeman; responsible for legal and factual development of response to HeartBrand contract counterclaim; researched and drafted motion for summary judgment and reply;

- Kevin Terrazas (Attorney) – 55 hours: Handled day-to-day management of case during discovery; deposed William Fielding and Ronald Beeman as corporate representative.

- Linda Calles (Paralegal) – 69 hours: Handled filing and service of the Complaint seeking declaratory relief and Answers to HeartBrand counterclaims; prepared exhibits necessary for the deposition of Ronald Beeman.

The time and labor expended by Bear Ranch was required in order to complete the necessary tasks to obtain a successful result in this matter.

### 3. The requested hourly fees are reasonable.

Plaintiff's request is reasonable given the amount and quality of legal services provided by its counsel in this case. The requested average billing rate for partners providing counsel to Bear Ranch related to these claims is $508 and for non-partner attorneys $362. ( Ex. A ¶10) These rates are discounted from counsel's standard rates and are well within the range normally charged by attorneys of comparable skill, expertise, and reputation in the Houston area. (*Id.*) In fact, the discounted fees charged by plaintiffs' attorneys are not even close to the high-end of what is considered to be reasonable for a complex case. (*Id.*) Moreover, plaintiff counsel was cost efficient in the manner that they staffed this case. (*Id.*)

For these reasons, plaintiff's request for fees is reasonable as compared to fees customarily charged for similar services.

### 4. The amount involved and results obtained are significant.

Bear Ranch's success in the litigation depended in large measure upon the skill of its counsel. Its legal team faced a defense/counter-claimant team that included experienced litigation counsel from one of the country's largest law firms, Vinson & Elkins, which vigorously contested the contract claims in the case. HeartBrand counsel raised many legal arguments that required a high degree of skill to overcome. Success in the litigation with respect to HeartBrand's contract claims required a legal team who could perform efficiently and strategically, prepare high-quality briefing, and effectively advocate before the Court.

### 5. The relationship between plaintiff and counsel is long.

Yetter Coleman has represented Bear Ranch, its principal William Koch, or other companies that he owns for over five years. (Ex. A ¶10) As a result, Yetter Coleman has developed a strong relationship with this client. (*Id.*) The representation of Bear Ranch came at the expense of other work that its legal team could have accepted. (*Id.*) The work related to the claims on which Bear Ranch prevailed required hundreds of hours of investment, the full-time attention of Cam Barker, and substantial time from several others. (Ex. A1) The case resulted in foregone opportunities for all of the attorneys involved and delayed work on pending cases. (Ex. A ¶10)

### 6. Plaintiffs' counsel is known for its litigation abilities.

The strong reputations and abilities of Bear Ranch's attorneys further

support the reasonableness of the requested fees.

Bear Ranch's lead trial counsel has been in practice for over 30 years. (Ex. A at ¶2) He has handled scores of trials and has substantial experience in complex commercial cases. (*Id.*) In 1997, he founded Yetter Coleman, and the firm has grown from two to 30 lawyers. (*Id.*) It was named to the "Litigation Boutique of the Year" list by *The American Lawyer* in 2005 and 2009. (*Id.*) In 2013, it was named "Litigation Department of the Year – Midsize Firm" by *Texas Lawyer*. (*Id.*) In 2012 and 2015, it was named to "Litigation Boutique Hot List" by the *National Law Journal*. (*Id.*) The attorneys working with him have stellar reputations, abilities, and credentials and produce outstanding work product. (*Id.* ¶3) Indeed, in January 2015, Cam Barker began serving as the Deputy Solicitor General of the State of Texas in recognition of his litigation abilities. (*Id.* at ¶4) Likewise, the firm's paralegals have great experience working in complex litigation matters. (*Id.*)

### 7. Bear Ranch has appropriately segregated its fees.

Every party claiming attorney fees must segregate recoverable fees from unrecoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). Bear Ranch has segregated its recoverable fees by eliminating all time entries not necessary to obtaining summary judgment on HeartBrand's contract claims. *See* Ex. A1 (identifying each entry for recoverable fees). Bear Ranch has only included fees for work necessary to its defense of the contract claims. (Ex. A

¶7) To that end, it has eliminated all entries after the filing of its MSJ Reply on January 14, 2014. (Ex. A1; Dkt. #85) It has further segregated its fees by reviewing all time entries from March 2012 to January 2014 and only including fees for work related to defeating HeartBrand's contract claims. (Ex. A ¶8)

For that time period, Bear Ranch is not seeking fees of $1.1 million, which were not necessary to the defense of HeartBrand's contract counterclaims. (*Id.*) For example, Bear Ranch only seeks fees related to the depositions of Beeman, Fielding, and Gill, the testimony of whom was cited in its MSJ briefing. *See* Dkt. #73; Dkt. #85. It has not included fees associated with the other 19 depositions taken prior to January 2014. (Ex. A ¶8) Likewise, it has excluded legal research not related to HeartBrand's counterclaims to enforce the contract, such as research related solely to antitrust or fraud claims. (*Id.*)

### D. Bear Ranch Is Entitled to Expenses and Costs.

As previously stated, the parties' contract authorizes Bear Ranch to recover not only fees but also costs and expenses. PX1 § XX. It seeks an award of its reasonably and necessarily incurred expenses and costs of $20,998, which are itemized with supporting documentation in Exhibit B, associated with defending and prevailing on HeartBrand's contract counterclaim.

### Conclusion and Prayer

For these reasons, Bear Ranch respectfully requests that the Court award it

reasonable and necessary attorney fees in the amount of $276,456 and its expenses and costs of $20,998, and all other appropriate relief.

Dated: October 5, 2015

Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
James E. Zucker
State Bar No. 24060876
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER LLP
4825 50th St., Suite A
Lubbock, Texas 79414
(806) 793-1906
(806) 792-2135 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

## Certificate of Service

I certify that on October 5, 2015, a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ James E. Zucker
James E. Zucker