IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**BEAR RANCH'S RESPONSE TO HEARTBRAND'S MOTION
FOR RECOVERY OF ATTORNEYS' FEES, EXPENSES, AND COSTS**

HeartBrand seeks 100% of its fees and costs—over $4.7 million—incurred from day one of this lawsuit, despite having won only a single contract claim for which it is entitled to fees under the parties' agreement. It has not segregated a dime for the fees and costs associated with its contract claim related to the Beeman Purchase cattle, which it lost when the Court determined there was no contract to enforce. Nor has HeartBrand segregated its fees and costs associated with its fraud claims, for which it is not entitled to anything under the contract. Even if it were, HeartBrand did not win either of its fraudulent inducement claims or its fraud claim related to the Twinwood Purchase cattle.

Texas law requires that a movant segregate recoverable from unrecoverable fees. Here, the only basis for recovering fees is the contract governing the 2010 sale of the HeartBrand cattle. Thus, the only recoverable fees are those associated

with the contract claim related to the HeartBrand cattle on which it prevailed. Neither the contract nor Texas law authorizes recovery of fees for fraud or antitrust claims, especially when a party does not win the claims.

Yet HeartBrand fails to even mention its fraud and contract claims that were dismissed on summary judgment or that the jury rejected, let alone segregate fees associated with them or the antitrust claims that were dismissed without prejudice. Instead, it cites the narrow "inextricably intertwined" exception to the segregation requirement to swallow the general rule entirely. Dkt. #246 at 7-8 & n.15 (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)). According to its reading of Texas law, because it won *one* recoverable claim—its contract claim relating to the HeartBrand Purchase cattle—it need not segregate *any* fees and costs incurred in prosecuting and defending its many unrecoverable claims. This position is unreasonable on its face. HeartBrand must segregate its fees and costs and may recover only those it proves were necessary to prevail on its contract claim related to the HeartBrand Purchase cattle.

## Argument and Authorities

### A.   Fees must be segregated except in limited circumstances.

Texas only permits recovery of attorney fees where authorized by statute or contract. *Tony Gullo Motors*, 212 S.W.3d at 310. The general rule is that "[w]hen a party presents multiple claims, some of which support recovery of attorneys' fees

and some of which do not, the party must segregate the attorneys' fees attributable to claims for which fees are recoverable." *Petro-Hunt, L.L.C. v. Wapiti Energy, L.L.C.*, 2012 WL 761144, at *10 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The party seeking to recover fees "bears the burden of demonstrating segregation is not required." *UL, Inc. v. Pruneda*, 2010 WL 5060638, at *18 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

A narrow exception exists where "recoverable and unrecoverable fees are inextricably intertwined." *Tony Gullo Motors*, 212 S.W.3d at 311-12. However, "[i]ntertwined facts do not make tort fees recoverable; it is only where discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313-14; *Jacks v. G.A. Bobo*, 2011 WL 2638751, at *4 (Tex. App.—Tyler 2011, no pet.) ("A common set of underlying facts is not enough."). "[I]f *any* attorneys' fees relate solely to a claim for which attorneys' fees are unrecoverable, a claimant must segregate . . . ." *Keys v. Litton Loan Servicing, L.P.*, 2009 WL 4022178, at *8 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (emphasis added).

When a party fails to segregate and seeks all of its fees on recoverable and unrecoverable claims, courts routinely reject their fee applications. *See, e.g.*, *CTMI, LLC v. Fischer*, 2013 WL 2725580, at *3-4 (Tex. App.—Dallas 2013, no pet.). (reversing judgment and remanding to trial court where "appellees made no

attempt to segregate *any* fees attributable to their tort claims, and generally asserted that *all* attorney fees they incurred for their tort claims were inextricably intertwined with their breach of contract claims") (emph. in original); *Clearview Props., L.P. v. Prop. Texas SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.— Houston [14th Dist.] 2009, pet. denied) (trial court erred in determining that party was not required to segregate fees); *Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 170-71 (Tex. App.—Houston [1st Dist.] 1996, no writ) (comparing elements of fraud and contract claims and holding that the exception to segregation did not apply).

### B.    HeartBrand must segregate its unrecoverable fees and costs.

HeartBrand is entitled to no fees and costs for pursuing its unsuccessful contract and fraud claims because it did not prevail. Additionally, there is no basis for recovering fees related to its lone successful fraud claim related to the Beeman Purchase cattle. Texas law does not provide for the recovery of fees on a fraud claim. *Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 69 (Tex. App.—Houston [14th Dist.] 2011, no pet.). HeartBrand does not dispute this. *See* Dkt. #246 at 7-8. Instead, it incorrectly argues that segregation is not required for *any* work it did in the case—even on its contract and fraud claims that were dismissed or the jury rejected—because *all* work allegedly was "inextricably intertwined" with work on the contract claim related solely to the 2010 cattle. *Id.*

All of its legal work is not inextricably intertwined, and HeartBrand must segregate
its fees and costs to recover any of them.

### 1.    HeartBrand cannot recover where it did not prevail.

The most glaring example of its improper failure to segregate is its claims
for fees and costs relating to fraud and contract claims that it lost at summary
judgment or trial. Four HeartBrand counterclaims were dismissed on MSJ:

- Fraudulent inducement regarding alleged misrepresentations concerning
  Bear Ranch's purpose in acquiring the HeartBrand Purchase cattle
  (Counterlaim 1);

- Fraudulent inducement as to Beeman Purchase cattle (Counterclaim 2);

- Common law fraud regarding calf registration (Counterclaim 5);

- Breach of contract regarding failing to sell offspring to HeartBrand
  (Counterclaim 6).

Dkt. #91 at 30. HeartBrand also brought counterclaims for fraudulent inducement
as to the HeartBrand Purchase, and fraud relating to the Twinwood Purchase, both
of which the jury rejected. *See* Dkt. #172 at 17, 19. Its motion ignores these
unsuccessful claims, with their associated fees and costs, and never explains why it
failed to segregate. Its fees and costs on these claims are unrecoverable, and it was
required to segregate.

HeartBrand's claim that the fees incurred on its unsuccessful claims are "so
intertwined that they need not be segregated," Dkt. #246 at 8, is unsupportable.
The fact that it *lost* these claims, yet won one recoverable contract claim, proves

that the work done on its unsuccessful claims are not "inextricably intertwined." *See Farmers Group Ins., Inc. v. Poteet*, 434 S.W.3d 316, 333 (Tex. App.—Fort Worth 2014, pet. denied) (reversing award where "Poteet failed to segregate her attorney's fees related to the alleged breach of the appraisal provision from those fees incurred in pursuit of the claims upon which she did not prevail"); *PPI Tech. Servs., L.P. v. Onca Petrol. Dev., Inc.*, 2008 WL 5273991, at *3 (Tex. App.— Houston [1st Dist.] 2008) ("Onca did not successfully defend against PPI's counterclaim . . . . As such, Onca cannot say that its defense of PPI's counterclaims was necessary to fully recover on its contract claim . . . . [I]t should have been required to segregate its attorney's fees."), *vacated on other grounds*, 2009 WL 618241, at *1 (Tex. App.—Houston [1st Dist.] 2009).

HeartBrand's losing contract and fraud claims are unrecoverable and were distinct from the recoverable claim it won. Thus, it must segregate the fees associated with its prevailing claim from those on which it lost.

### 2. HeartBrand cannot recover fees related to its fraud claim regarding only the Beeman Purchase cattle.

Likewise, HeartBrand was required to segregate its fees and costs related to its Beeman Purchase fraud claim, because they are unrecoverable. As with most tort claims, fees incurred in prosecuting claims for fraud are not recoverable under Texas law. *Chevron*, 346 S.W.3d at 69. And fees related to the fraud claim are not recoverable under the parties' contract—the only other potential basis for

-6-

recovery—because the Court found there was no contract for the sale of the Beeman cattle. Dkt. #91 at16-19. The parties' 2010 HeartBrand contracts provide for "reasonable attorney fees and any other costs incurred in enforcing the terms of *this agreement*," PX1§XVI (emph. added), and for the prevailing party in "any legal action . . . brought to enforce *this Agreement*," *id.* §XX. HeartBrand's fraud claim cannot enforce "this agreement," because no enforceable agreement existed by virtue of the statute of frauds.

Moreover, its Beeman Purchase fraud claim is independent of its recoverable claim for breach of the 2010 contracts. It involved different elements, facts, and remedies. As a result, the jury could have found in favor of HeartBrand on both claims (as it did), one, or neither. The only factual overlap between the HeartBrand breach claim and fraud claim was that the alleged promise concerned abiding by the 2010 Contract restrictions. But "[i]ntertwined facts do not make tort fees recoverable." *Tony Gullo Motors*, 212 S.W.3d at 313.

Indeed, HeartBrand itself distinguished between the claims. In briefing, it emphasized the differences in the rights arising under the 2010 Contracts and those arising from the allegedly fraudulent promise in 2011:

> The no-oral-modification language [in the 2010 Contracts] is irrelevant to Bear Ranch's 2011 fraud. A promise to modify written obligations under the Contracts is different from fraudulently promising to adopt the same contract terms for a separate purchase . . . . Enforcing separate promises as to the 2011 purchase,

even if the promises are the same as or similar to the promises in the Contracts, does not require enforcing the rights that arose in 2010.

Dkt. #192 at 3.

The contract and fraud claims involve separate remedies and proof relating to those remedies. Whereas HeartBrand sought the contract remedy of buying back the 2010 cattle, it sought the remedy of unjust enrichment on its fraud claim. Indeed, it presented a fantastical $90 million damage model as unjust enrichment from the alleged fraud related to the 2011 cattle. *See* Dkt. #240 at 7 (HeartBrand's supplemental expert report was permitted "to value the equitable remedy of unjust enrichment on its fraud claims"). The costs associated with developing the unjust enrichment damage model— which includes a "significant degree of speculation" and the Court does not rely on, *id.* at 13—has absolutely no bearing on the contract remedy for the 2010 herd and is not recoverable. HeartBrand's fraud claim led it to incur costs to address issues unique to that claim, requiring segregation.

An additional distinction is that a claim for breach of contract allows for expectancy damages, but HeartBrand was not permitted to recover such damages through its fraudulent inducement claim because of the statute of frauds. In fact, it disclaimed expectancy as a remedy for its fraud claim relating to the Beeman herd. Dkt. #77 at 45 ("[N]either count 3 nor count 4 seeks to enforce an expectancy recovery."). Accordingly, the Court did not extend the restrictions from the 2010 contracts to the 2011 cattle as a remedy for HeartBrand's successful fraud claim,

notwithstanding its continued mischaracterization of the Order in its motion. *See* Dkt. #240 at 17-20; Dkt. #246 at 10.

In short, HeartBrand's vague references to the "intertwined and overlapping nature" of its recoverable contract claim and unrecoverable fraud claim as to the Beeman Purchase cattle, Dkt. #246 at 10, is insufficient to meet its burden to show that segregation of its fees and costs is not required. It expended fees relating "solely to a claim for which such fees are unrecoverable" and must segregate those fees. *Tony Gullo Motors*, 212 S.W.3d at 313.

### C.   HeartBrand gets no fees for Bear Ranch's antitrust claims.

Despite receiving no relief from the Court or jury on the antitrust and consumer-protection claims asserted by Bear Ranch (Dkt. #1 ¶¶35-46, 53-55), HeartBrand nevertheless includes all fees and costs associated with those claims in its fee request. In doing so, it ignores the fact that those claims were dismissed without prejudice by Bear Ranch after discovery showed that representations by HeartBrand concerning the alleged exclusivity of its genetics—a key element of the claims—was false and that Akaushi genetics were spread around the world. *See* Dkt. #43 at 4-8; Dkt. #57 at 4. HeartBrand cannot recover fees for these claims because it won no "actual and meaningful relief" and is not a prevailing party. S*ee Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009).

In general, a defendant is not a prevailing party where the plaintiff nonsuits without prejudice, because the nonsuit "works no change in the parties' legal relationship." *Epps v. Fowler*, 351 S.W.3d 862, 869 (Tex. 2011). "[T]ypically, the plaintiff remains free to re-file the same claims seeking the same relief." *Id.* A narrow exception applies "if the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits." *Id.* at 870. That exception arises only where "the plaintiff knowingly pursues a baseless action," and is intended to "discourage the litigation of frivolous, unreasonable, or groundless claims." *Id.* at 869-70. To determine whether this occurred, courts will assess its merits "when filed." *Id.* at 871.

In its original complaint, Bear Ranch sought declaratory and injunctive relief to invalidate the restrictions in the contract because, among other reasons, they unreasonably restrained the sale of Akaushi beef in the U.S. market, in violation of §1 of the Sherman Act, 15 U.S.C. § 1, and constituted an illegal monopoly in that same market, in violation of §2 of the Sherman Act, 15 U.S.C. § 2. (Dkt. #1 ¶¶ 35-41) At the time, HeartBrand represented that it was the only source in the U.S. for Akaushi beef, i.e., that it had a 100% market share. *Id.* ¶16. While Bear Ranch was aware that some entities owned cattle apparently derived from HeartBrand's, it did not know whether they were restricted, how they came to be owned, or how they were produced. On that basis, Bear Ranch alternatively requested a declaration that

the restrictions were unenforceable because, in contradiction to its claim that a purchaser had to contract with HeartBrand to gain access to Akaushi genetics outside of Japan, HeartBrand was not actually the sole source of Akaushi cattle.

Market definition is a "deeply fact-intensive inquiry" which can be decided "only after a factual inquiry into the commercial realities faced by consumers." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (cites omitted). Here, discovery established that HeartBrand had far from the exclusive position in the market that it represented. Among other new information, Bear Ranch learned that HeartBrand's predecessor had engaged in widespread sales of Akaushi genetics and other entities had imported additional Akaushi cows and bulls into the U.S., with HeartBrand's knowledge. Dkt. #43 at 4-7. These newly-discovered facts strengthened Bear Ranch's fraud claims (and provided a basis for amending its complaint to include a fraudulent inducement claim), but also demonstrated for the first time that HeartBrand lacked the market dominance it claimed. *Id.* at 8.

In dismissing its competition claims, Bear Ranch did not seek to avoid an unfavorable outcome on the merits. Indeed, HeartBrand never filed any motion seeking adjudication of the competition claims. Nor has HeartBrand shown that the claims lacked merit when filed. It requested that the Court require Bear Ranch to dismiss the competition claims with prejudice or pay HeartBrand's fees and costs associated with the antitrust claims, but the Court declined. *See* Dkt. #49 at 15;

Dkt. #57 at 5-6 (recognizing that "allowing the amendment will also have some beneficial effects that will help offset any increased costs"). Instead, the Court granted leave for Bear Ranch to amend its complaint, thereby voluntarily dropping the competition claims without prejudice, because "new information relevant to fraudulent inducement ha[d] come to light during discovery." Dkt. #57 at 4. In other words, HeartBrand's false representations of exclusivity and market share constituted a "previously unknown flaw" to Bear Ranch's claim which was revealed only through discovery. *Epps*, 351 S.W.3d at 871.

Because HeartBrand did not win any competition claims, it has no basis to recover its fees and costs associated with defending those claims.

### D.    There's no way to assess the "reasonableness" of this fee request.

Given HeartBrand's failure to segregate its recoverable from unrecoverable fees and costs, and failure to show that segregation is not required, it has made it impossible for Bear Ranch or the Court to evaluate whether any recoverable fees and costs are reasonable in amount or require adjustment, under the factors set out in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The lodestar method requires multiplying the number of "reasonable hours" spent by counsel, which in HeartBrand's case includes hundreds if not thousands of hours spent on tasks relating to unrecoverable claims. Further, Bear Ranch's and the Court's ability to assess whether particular work was performed by HeartBrand

to advance its recoverable claim is hampered by its redaction of its fee bills. *See,*
*e.g.*, Dkt. #246-1 at107-14 (April 2013 invoice). In addition to its duty to
segregate, as a practical matter, HeartBrand is in a far better position than Bear
Ranch or the Court to determine whether the redacted time entries relate to
recoverable or unrecoverable claims. Accordingly, Bear Ranch respectfully
reserves the right to supplement its response to address these issues if and when
HeartBrand complies with its segregation obligations.

## Conclusion

HeartBrand won one contract claim among many unsuccessful claims, and
one claim does not entitle it to all of its fees and costs. It has to segregate
recoverable fees for the contract claim from its unrecoverable fees, including for
claims it lost, fraud claims, and competition and consumer-protection claims.

Dated: October 26, 2015        Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
James E. Zucker
State Bar No. 24060876
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER LLP
4825 50th St., Suite A
Lubbock, Texas 79414
(806) 793-1906
(806) 792-2135 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

## Certificate of Service

I certify that on October 26, 2015, a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ James E. Zucker
James E. Zucker