IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:12-cv-00014 |
| HEARTBRAND BEEF, INC., et al., | § § § | |
| Defendants. | § § | |

**PLAINTIFF BEAR RANCH'S REPLY IN SUPPORT OF
MOTION FOR ATTORNEY FEES**

HeartBrand's response to Bear Ranch's motion ignores the parties' contract, the record in this case, and Texas law. After years of litigation and dozens of claims, HeartBrand "prevailed" on *one* claim for which fees are recoverable, winning enforcement of only *some* of the Full-Blood Contract restrictions alleged against *one* of four herds. In contrast, Bear Ranch won meaningful relief—that there is no obligation to sell progeny to HeartBrand—with respect to *all* cattle, and complete relief—that no restrictions apply at all—to *three* of four herds, a substantial majority of the cattle. In so doing, Bear Ranch enforced the terms of the 2010 Agreement as written and defeated HeartBrand's efforts impermissibly to expand its scope and terms. Contrary to HeartBrand's revisionist account of the record and the Court's rulings, misstatement of the meaning of "prevailing party"

under Texas law, and as set forth in Bear Ranch's motion, Dkt. #247, Bear Ranch is entitled to its fees, expenses, and costs under the Contract and Texas law.

### A. Bear Ranch Is the Prevailing Party.

HeartBrand contends that Bear Ranch cannot recover its attorney fees because it did not prevail on the "main issue." Dkt. #249 at 2-6. But whether a party prevails under a contractual attorney fee provision depends on whether it obtained "actual and meaningful relief, something that materially alters the parties' legal relationship," not whether it prevailed on the "main issue." *Intercontinental Group P'ship v. KB Home Lonestar L.P.*, 295 S.W.3d 650, 652, 661 (Tex. 2009). But even if the main-issue test applies as HeartBrand contends, an examination of the contract claims demonstrates that Bear Ranch—not HeartBrand—prevailed on the "main issue."

#### 1. Fees are only available for the contract claims.

The parties agree that recovery of attorney fees in this case is only authorized by the parties' 2010 Agreement. *See* Dkt. #246. That contract provides for fees to the "prevailing party" in a "legal action . . . brought to enforce *this Agreement*." PX1 § XX (emph. added). Thus, neither party is entitled to fees related to any of the fraud claims. *See, e.g.*, Dkt. #247 at 4-9 (HeartBrand is not entitled to fees on the Beeman Purchase fraud claim, for which there is no contract, nor its unsuccessful fraud claims.). Likewise, in determining which party is the

"prevailing party," the fraud claims and associated remedies are irrelevant.

In *Intercontinental*, 295 S.W.3d at 651-52, the Texas Supreme Court addressed what "prevailing party" means in a contractual attorney-fee provision when that term is undefined. The contract at issue there included language nearly identical to the 2010 Agreement in this case: "If either party named herein brings an action to enforce the terms of *this Contract* or to declare rights hereunder, the prevailing party . . . shall be entitled to his reasonable attorney's fees." *Id.* at 653 (emph. added). The court held that the contract's "attorney's-fees provision makes clear that the prevailing party is judged by 'an action to enforce the terms of *this Contract* or to declare rights *hereunder*.'" *Id.* at 661 (emph. in original). The majority refused to consider a non-contractual counterclaim in determining a prevailing party because the "counterclaim was not rooted in the parties' written contract, but rather in an alleged separate oral agreement." *Id.* Likewise, only the contract claims should be considered in determining the prevailing party entitled to fees under the contract in this case.

### 2. Bear Ranch prevailed by obtaining "meaningful relief."

In arguing that Bear Ranch did not prevail on the main issue, HeartBrand cites dozens of cases, yet fails to cite or discuss the Texas Supreme Court's 2009 decision in *Intercontinental*, which rejects the "main issue" test on which HeartBrand relies. *Id.* Instead, the court held that a party "prevails" if it obtains

"actual and meaningful relief, something that meaningfully alters the parties' legal relationship." *Id.* at 652. This includes obtaining a declaratory judgment. *Id.* at 659 ("[W]e agree the plaintiff would 'prevail' when . . . the plaintiff obtains rescission of the contract, specific performance, an injunction, or a declaratory judgment."). The court rejected the "main issue" test urged by HeartBrand here, because it ignored the contract's standard for a prevailing party: enforcement of the contract. *Id.* at 661 ("[T]he dissent resurrects an old version of Black's Law Dictionary to define 'prevailing party' as the one who prevails on the 'main issue' of the case . . . . [T]his analysis . . . disregards the language of the contract."). Additionally, a party prevails under a contractual fee provision when the party successfully defends against breach-of-contract claims. *Uretek (USA), Inc. v. Ureteknologia de Mexico S.A. de C.V.*, 2013 WL 3942075, at *3 (S.D. Tex. 2013).

Bear Ranch is a "prevailing party" under *Intercontinental*, the 2010 Agreement, and for successfully defending HeartBrand's contract claims. In 2014, the Court granted summary judgment to Bear Ranch on its declaratory claim and on part of HeartBrand's contract claim. Dkt. #91 at 30. In particular, the Court granted two forms of relief to Bear Ranch that "materially altered the parties' legal relationship," *Intercontinental*, 295 S.W.3d at 652, which prove its status as the prevailing party:

- Granting Bear Ranch's motion as to HeartBrand's breach claim and holding that Bear Ranch is not obligated to sell cattle back to HeartBrand, Dkt. #91 at 8-11; and

- Granting Bear Ranch's summary judgment on Bear Ranch's declaratory claim that the contract restrictions do not apply to cattle purchased from Beeman, Twinwood, and Rancho Delhi. *Id.* at 30.

In opposing this relief, HeartBrand claimed that the contract construction advocated by Bear Ranch was inconsistent with the purported "program" it said was embodied by the 2010 Agreement's terms and "would render the contract unsuitable for its explicitly stated purposes." Dkt. #77 at 3-4. But the Court rejected HeartBrand's attempts to justify the "program" of contract restrictions HeartBrand sought to impose on Bear Ranch. As a result of the Court's ruling, Bear Ranch is not required to sell Akaushi offspring from any of the herds to Heartbrand, and none of the restrictions (other than marketing the beef as Akaushi and registration requirements) apply to the cattle purchased from Beeman, Twinwood, and Rancho Delhi. The Court's elimination of HeartBrand's program of unjustified contract restrictions defeated all contract claims for three of the herds and fundamentally and permanently altered the parties' relationship from what HeartBrand claimed.

Accordingly, and as set forth in Bear Ranch's motion (Dkt. #246), Bear Ranch is a "prevailing party" under the Contract and Texas law and is entitled to attorney fees, expenses, and costs.

### 3. Bear Ranch prevailed on the contract claim with respect to the majority of the cattle.

Assuming HeartBrand is correct that the main-issue test applies to determine the prevailing party on the contract claims, a comparison of the contract claims on which each party succeeded reveals that Bear Ranch obtained complete and meaningful relief with respect to three of the four herds and the majority of the cattle and some relief on all cattle. In short, Bear Ranch prevailed on the main issue.

As discussed above, Bear Ranch defeated HeartBrand's attempt to "enforce [the 2010] Agreement" on the Beeman Purchase, Twinwood Purchase, and Rancho Delhi Purchase cattle by prevailing on its declaratory claim that the 2010 Agreement does not apply to those cattle or their progeny. *See* Dkt. 61 at 22-23 (HeartBrand Counterclaim 6); Dkt. #91 at 30. Put another way, Bear Ranch successfully enforced the 2010 Agreement by limiting it to the cattle to which it actually applied—the HeartBrand Purchase cattle—and prevented HeartBrand's attempt improperly to expand its scope. In doing so, Bear Ranch obtained meaningful relief—unrestricted cattle. Indeed, the Court's holding confirmed that 66% of the cattle Bear Ranch originally acquired were unrestricted. *See* Dkt. #199 Exh. 4 at 5-6 (initial quantities purchased). And 58% of the herd at the time of trial was unrestricted. *Id.* at 4-5 (number of cattle by herd as of March 31, 2014). In other words, Bear Ranch obtained meaningful relief relative to the majority of the

cattle, and HeartBrand did not.

Also as discussed above, Bear Ranch obtained meaningful relief relative to the HeartBrand Purchase cattle. Bear Ranch defeated HeartBrand's claim that Bear Ranch had to sell all offspring to HeartBrand when the Court concluded that the 2010 Agreement did not require the sale of progeny to HeartBrand, but that Bear Ranch was free to use the progeny for its meat program. Again, this was Bear Ranch *enforcing* the 2010 Agreement by defeating HeartBrand's attempt to add new terms to the Agreement. (Of course, Bear Ranch defeated that claim with respect to the Beeman Purchase, Twinwood Purchase, and Rancho Delhi Purchase cattle by obtaining the declaration that the 2010 Agreement did not apply at all.) Thus, Bear Ranch obtained meaningful relief from the Court with respect to *all* cattle.

In contrast, HeartBrand only obtained meaningful relief with respect to the HeartBrand Purchase cattle, and even then, it only dealt with registration with the American Akaushi Association. Dkt. #91 at 30. The main issue in this case has never been registration and reporting, but rather, whether Bear Ranch could sell the cattle to whomever it chose and whether it had to sell progeny back to HeartBrand. On those two questions, Bear Ranch indisputably won with respect to the majority of the cattle. Because the standard for determining the "prevailing party" is enforcing "this Agreement," Bear Ranch is entitled to its fees as the prevailing

party.[1]

## B. The Declaratory Relief Enforced the 2010 Agreement as Written.

HeartBrand strains to argue that Bear Ranch's declaratory judgment claim and defense of HeartBrand's contract claim did not involve "enforce[ment] of this Agreement," as set forth in the 2010 Agreement. Dkt. #249 at 6 (citing Full-Blood Contract §XX). But HeartBrand's argument ignores that the declaratory judgment "enforced" the 2010 Agreement by preventing HeartBrand's improper and unilateral expansion of the scope of the Agreement. The Court's declaration necessarily rejected HeartBrand's argument that the Full-Blood Contract should be extended to these non-HeartBrand sales, thus enforcing the terms of the contract as written.

As the Court noted in its March 2014 Memorandum and Order, "[t]he primary issues raised in Bear Ranch's motion are *the scope of the restrictions in its 2010 agreement* with HeartBrand and whether those restrictions also apply to cattle Bear Ranch purchased in three subsequent transactions with other parties." Dkt. #91 at 2 (emphasis added). The Court further noted that "*HeartBrand* contends that

---

[1]  To the extent that HeartBrand suggests Bear Ranch did not prevail with respect to the Beeman Purchase, Twinwood Purchase, and Rancho Delhi Purchase cattle because the Court imposed a constructive trust requiring Bear Ranch to sell the Beeman Purchase cattle back to HeartBrand and imposing the 2010 Agreement restrictions on the Twinwood Purchase and Rancho Delhi Purchase cattle, those are fraud remedies and do not factor into determining the "prevailing party" under the contract. *Intercontinental*, 295 S.W.3d at 661.

the 2010 Full-Blood Contract and its restrictions automatically extend to any subsequent Bear Ranch purchases of Akaushi cattle from other HeartBrand producers." *Id.* at 11 (emphasis added). The Court, however, interpreted the 2010 Agreement, and granted summary judgment "in Bear Ranch's favor on its request for a declaration that the Full-Blood Contract restrictions, with the exception of the marketing and registration provisions, *do not apply* to the cattle it purchased from Spears, Beeman, and Twinwood." *Id.* at 19 (emphasis added). HeartBrand's position that Bear Ranch's declaratory claim and defense of HeartBrand's breach of contract claim did not concern "enforce[ment]" of the Contract is entirely unsupported.

HeartBrand also mistakenly argues that Bear Ranch is not entitled to its fees associated with its declaratory claim because that claim "effectively repudiated the existence of any contract as to those sales." Dkt. #249 at 6-7.[2] But Bear Ranch does not seek its fees pursuant to the terms of a non-existent contract with the third-party sellers. Bear Ranch is entitled to reimbursement from HeartBrand under the terms of the 2010 Agreement, which it enforced as written by virtue of the Court's

---

[2]   HeartBrand reiterates this in its recent Reply, asserting that Bear Ranch is taking conflicting positions with respect to fees associated with the claims related to the Beeman Purchase cattle. Dkt. #251 at 5 n.1. HeartBrand ignores that Bear Ranch successfully defended HeartBrand's contract claim seeking to enforce the 2010 Agreement with respect to the Beeman Purchase cattle, whereas there is no basis for fees associated with HeartBrand's fraud claim.

declaration that it did not apply to the subsequent cattle purchases. In other words, Bear Ranch successfully defended against HeartBrand's attempted extension of the contract's terms.

Finally, in making its argument, HeartBrand (again) ignores controlling Texas authority that a party may prevail for purposes of fee recovery through relief other than breach of contract damages, including a claim for declaratory relief. *Intercontinental*, 295 S.W.3d at 659. Here, the Court's declaration that the 2010 Agreement did not extend to the non-HeartBrand sales constituted meaningful contractual relief that entitles Bear Ranch to an award of its fees, expenses, and costs.

C.   **Bear Ranch Is Entitled to Its Full Fee Request.**

HeartBrand complains that Bear Ranch is not entitled $10,507 in fees, because those fees were incurred prior to HeartBrand's assertion of counterclaims. Dkt. #249 at 9. While that is true, the mere fact that they were incurred before HeartBrand filed its counterclaim does not mean those fees were not necessary to enforce the 2010 Agreement as written and defeat HeartBrand's attempts to expand the scope of the Agreement. Those fees were incurred largely in drafting Bear Ranch's original Complaint, which included the declaratory claim on which it prevailed and, thereby, enforced the 2010 Agreement. Dkt. #1. Had those fees not been incurred prior to the filing of the counterclaim, they still would have been

necessary to defeat HeartBrand's counterclaims and would have been incurred after HeartBrand's filing. Whether incurred when drafting the original Complaint or after HeartBrand filed its counterclaims, the fees represent work necessary to enforce the contract and to which Bear Ranch is entitled.

## Conclusion and Prayer

For these reasons, Bear Ranch respectfully requests that the Court grant the Motion for Fees, Expenses, and Costs (Dkt. #247), and award Bear Ranch reasonable and necessary attorney fees in the amount of $276,456 and its expenses and costs of $20,998.

Dated: October 5, 2015                    Respectfully submitted,

/s/Paul Yetter
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
James E. Zucker
State Bar No. 24060876
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER LLP
4825 50th St., Suite A
Lubbock, Texas 79414
(806) 793-1906
(806) 792-2135 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

## Certificate of Service

I certify that on November 5, 2015, a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ Jim Zucker
James E. Zucker