**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI | § | |
| ASSOCIATION, INC., | § | |
| and RONALD BEEMAN, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF BEAR RANCH, LLC'S
MOTION TO ALTER OR AMEND THE JUDGMENT**

R. Paul Yetter
James E. Zucker
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010

Andrew R. Seger
KEY TERRELL & SEGER LLP
4825 50th St., Suite A
Lubbock, Texas 79414

Attorneys for Plaintiff Bear Ranch,
LLC

## TABLE OF CONTENTS

Index of Authorities ........................................................................3

Overview .......................................................................................4

Standard of Review .......................................................................6

Argument and Authorities..............................................................7

I.     The Judgment Should Be Amended to Remove Rulings and Relief
       Now Improper or Unnecessary Due to HeartBrand's Use of an Open
       Model. ...................................................................................7

       A.     The breach of contract ruling should be removed.............................. 7

       B.     The fraud ruling should be removed. ................................................. 11

       C.     The unjust enrichment and exemplary damages rulings should
              be removed. ...................................................................................... 12

       D.     The Twinwood and Spears Purchase Cattle injunctions should
              be removed. ...................................................................................... 13

II.    The Final Judgment Erroneously Awards HeartBrand a Selective,
       Discount Buyback of HeartBrand Purchase Cattle and Progeny. .................16

III.   The Maintenance Cost Findings Conflict With the Buyback Approach
       and Penalize Any Appeal. ..........................................................20

IV.    The Final Judgment Should Be Clarified as to Certain Issues Relating
       to the Beeman Purchase Cattle and Exemplary Damages............................21

Conclusion and Prayer ..........................................................22

INDEX OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Fontenot v. Mesa Petroleum Co.*,
   791 F.2d 1207 (5th Cir. 1986) ...............................................................7

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) .................................................................7

*Texas A&M Research Found. v. Magna Transp., Inc.*,
   338 F.3d 394 (5th Cir. 2003) .................................................................7

*U.S. v. Swift & Co.*,
   286 U.S. 106 (1932)....................................................................16, 17

**State Cases**

*Cheung-Loon, LLC v. Cergon, Inc.*,
   392 S.W.3d 738 (Tex. App.—Dallas 2012, no pet.) .........................................8, 9

*City of the Colony v. N. Texas Mun. Water Dist.*,
   272 S.W.3d 699 (Tex. App.—Ft. Worth 2008, pet. dism'd)................................9

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
   960 S.W.2d 41 (Tex. 1998)...............................................................12

*Gamma Group, Inc. v. Transatlantic Reins. Co.*,
   242 S.W.3d 203 (Tex. App.—Dallas 2007, pet. denied)..................................18

**State Statutes**

TEX. CIV. PRAC. & REM. CODE § 41.003...........................................................14, 15

**Rules**

Federal Rule of Civil Procedure 59(e).........................................................5, 7, 23

**Other Authorities**

RESTATEMENT (1ST) CONTRACTS § 288 ....................................................................9

Pursuant to Federal Rule of Civil Procedure 59(e), plaintiff Bear Ranch, LLC respectfully requests that the Court alter or amend the February 24, 2016 Final Judgment. Bear Ranch does not agree to entry of a judgment, but if the Court does maintain a judgment against Bear Ranch, then it should be amended as below.

### OVERVIEW

First, the Final Judgment should be amended to remove rulings and remedies rendered improper or unnecessary by new developments. As noted in our response to HeartBrand's supplement to its motion for fees, Dkt. #259, HeartBrand moved to an *open* business model selling Akaushi cattle *unrestricted* in the marketplace. Ex. A (1/25/16 HeartBrand Ltr. to AAA Members). Its prior representations of a closed model underlay the parties' contracts, their claims against each other, the jury's verdict, and the remedies in the judgment. Accordingly, the Final Judgment should be amended to remove:

- The ruling as to breach of contract, because the restrictions have no value, are no longer enforceable for failure of consideration and frustration of the contracts' purpose, and any failure by Bear Ranch to comply is excused;

- The ruling as to fraudulent inducement, because Bear Ranch's alleged misrepresentation to abide by the 2010 contract restrictions as to the Beeman Purchase Cattle is no longer material, nor is there any injury;

- The rulings as to unjust enrichment and exemplary damages, because HeartBrand's representations of a closed model were fundamental to the verdict and the Court's rulings as to these issues; and

- The injunctive relief as to the Twinwood and Spears Purchase Cattle, because it is no longer necessary and it imposes significant and perpetual burdens on cattle not covered by the 2010 contracts or any fraud finding.

Second, assuming the breach of contract ruling is not removed, the Final Judgment should be amended because it incorrectly awards HeartBrand a *partial*, hand-picked buyback of HeartBrand Purchase Cattle. This conflicts with the contract remedy of repossession of *all* cattle and progeny, the Court's September 2015 Memorandum and Opinion, and HeartBrand's prior demands for a full buyback. At the same time, an incorrect *per-head* buyback price ($3,898) is used in the Final Judgment, derived from the jury's *herd*-based valuation of all of the HeartBrand Purchase cattle and progeny at the time of trial—1,548 animals of all ages, purposes, shapes, and sizes. This *under*-compensates Bear Ranch for its acquisition, production, and maintenance costs up to trial, and it gives HeartBrand the most costly animals at a price that only applies to the average animal, not the premium individual animals HeartBrand picked in post-trial letters to the Court.

Third, assuming the contract and fraud rulings are not removed, the Final Judgment's provisions relating to post-trial maintenance costs are incorrect and should be amended. The Final Judgment only permits Bear Ranch to recover post-trial maintenance for some animals and not others, while also incorrectly providing a *one-time*, *fixed* maintenance amount for costs that are not fixed but ongoing since trial. Further, in making Bear Ranch responsible for maintenance costs beyond the

fixed amount specified, the Final Judgment penalizes Bear Ranch in the event that either party appeals.

Finally, assuming the fraud ruling is not removed, Bear Ranch requests that the Final Judgment be altered or amended to clarify two issues: if HeartBrand elects not to reacquire the Beeman Purchase Cattle or to sell them at auction, Bear Ranch may sell those cattle *unrestricted*; and the $1,825,000 award for exemplary damages is not for "harm" to HeartBrand, as the Final Judgment states. We believe these clarifications are consistent with the Court's intention, but request that the Final Judgment be amended to clarify these intentions.

## STANDARD OF REVIEW

A motion to alter or amend the judgment under Rule 59(e) is used to correct "a manifest error of law or fact." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). The Fifth Circuit has explained that "[i]f the trial court has entered an erroneous judgment," then the trial court "should correct [the judgment]." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (quotes and cites omitted). In addition, Rule 59(e) motions are appropriate where the judgment should be reconsidered by the Court in light of new evidence. *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003).

ARGUMENT AND AUTHORITIES

**I.    The Judgment Should Be Amended to Remove Rulings and Relief Now Improper or Unnecessary Due to HeartBrand's Use of an Open Model.**

HeartBrand's "closed" business model was the fundamental assumption of the parties' 2010 contracts, the claims each brought against the other, the jury's verdict, and the remedies allowed by the Court in its Final Judgment. But HeartBrand now has an *open* system and is "selling unrestricted cattle." Ex. A (1/25/16 HeartBrand Ltr. to AAA Members); *see also* Ex. B at 6 (brochure for January 2016 auction for "[g]enetics never before available in the US," including three HeartBrand bulls "with full breeding rights from HeartBrand."). This follows evidence submitted to the Court in July 2015 regarding unrestricted Akaushi sales by third parties like Matador Ranch, which sales HeartBrand denied. Dkt. #238 (Mot. to Reopen Evidence at Ex. A¶¶7-8); Dkt. #254 (Resp. to Pl.'s Update at 3) ("Matador Ranch has not been selling unrestricted cattle."). This important new evidence means that various rulings and remedies flowing from the 2014 trial are improper or unnecessary as a matter of law, and should be removed from the Final Judgment.

**A.    The breach of contract ruling should be removed.**

The breach of contract ruling is invalid as a matter of law and should be removed from the Final Judgment. HeartBrand's move to an open model has caused a failure of contractual consideration and frustration of the contracts'

-7-

purpose, and any failure to comply with those (unenforceable) contract restrictions is excused.

"A failure of consideration occurring after a contract's inception constitutes a defense to an action on the written agreement." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 748 (Tex. App.—Dallas 2012, no pet.); *see City of the Colony v. N. Texas Mun. Water Dist.*, 272 S.W.3d 699, 733 (Tex. App.—Ft. Worth 2008, pet. dism'd) (explaining the difference between "lack of consideration" and "failure of consideration"). "A total failure of consideration is ground for cancellation or rescission of the contract." *Cheung-Loon*, 392 S.W.3d at 748. A partial failure "is a defense pro tanto"—*i.e.*, to the extent of the failure. *Id.* Further, a party to a contract is discharged from its duties where the basis of the contract has become frustrated.

> Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears.

RESTATEMENT (1ST) CONTRACTS §288.

Here, under the 2010 contracts, in exchange for Bear Ranch's payment of the purchase price and agreement to abide by third-party sale, registration, DNA testing, and other restrictions, HeartBrand agreed to sell Bear Ranch Full-Blood Akaushi cattle from within its closed system of Akaushi producers, which Bear

Ranch would join. Dkt. #211-8 at §I, II & p.1 ("HEARTBRAND is the sole owner of Akaushi Full-Blood cattle exported from Japan . . . . HEARTBRAND and PRODUCER desire that HEARTBRAND'S preeminent position as the owner of Akaushi genetics outside of Japan be recognized and preserved," and therefore "this Agreement contains certain restrictions and other provisions intended to protect HEARTBRAND'S position."). The restrictions' value and purpose was to protect the closed system described in the contracts. *See* 5/19/2014 Tr. at 71 (HeartBrand explaining its plan to "get partners, produce partners who will agree to do the very same thing we're doing, do it the same way we're doing it, abide by the rules so we can protect the breed"), 73 ("[Y]ou've got to abide by the rules . . . . you got to do it the same way we do."). The contracts' remedies provisions required, in the event of breach by the producer, a full HeartBrand buyback of "all cattle," to ensure the protection of its closed system. Dkt. #211-8 at §XVI.

HeartBrand's announced decision to sell *un*restricted Akaushi eliminates the consideration Bear Ranch bargained for in agreeing to become a HeartBrand producer and to abide by restrictions that applied to all Akaushi cattle owners, including HeartBrand, to protect the "closed" system. HeartBrand represented to the Court and jury that the core value of its business for selling Akaushi cattle was "to make sure that it's done within the system, within this closed system of producers." 5/28/14 Tr. at 231. HeartBrand said the contracts' restrictions were

"the only thing preserving HeartBrand's program" and "the only thing protecting the breed." *Id.* at 271-72. "It's important that we get the cattle back . . . because this is a closed system." 5/19/14 Tr. at 74. The jury and Court accepted these facts as true in rendering the verdict, arriving at later remedies decisions, and entering the Final Judgment. HeartBrand now sells cattle unrestricted. Ex. A (1/25/16 HeartBrand Ltr. to AAA Members). Because Bear Ranch's bargained-for consideration—restricted cattle commanding a premium price–has now failed, and the contracts' purpose has been frustrated, through HeartBrand's sales of unrestricted cattle and move to an open business model. Accordingly, the contract restrictions are no longer enforceable.

Further, even if Bear Ranch breached a contract by failing to comply with the contract restrictions, any such breach is excused as a matter of law. When the jury found that Bear Ranch breached the 2010 contracts and that its failure to comply was not excused by waiver, defined as "an intentional surrender of a known right or intentional conduct inconsistent with claiming that right, the jury did not consider the new evidence of HeartBrand's intentional move to an open business model. Dkt. #172 at 23. That evidence renders valueless and purposeless the restrictions that formed the basis of the contracts, that HeartBrand sought to enforce, and that Bear Ranch allegedly breached.

Accordingly, Bear Ranch respectfully requests that the Court amend the Final Judgment to remove the breach of contract ruling as to Bear Ranch and reflect that there was no material breach of any contract by Bear Ranch and that HeartBrand take nothing on any claim for breach of contract.

### B.   The fraud ruling should be removed.

The Court should also amend the Final Judgment to remove the ruling on HeartBrand's claim for fraudulent inducement.

HeartBrand alleged that Bear Ranch fraudulently induced its approval of the Beeman Purchase based on an oral promise that Bear Ranch would abide by the 2010 contract restrictions. HeartBrand's move to an open business model and sale of unrestricted cattle renders those restrictions valueless and unenforceable as a matter of law. Therefore, any alleged "misrepresentation" by Bear Ranch to abide by the restrictions is no longer material, nor could it cause injury to HeartBrand. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (explaining the elements of fraud).

The core of the claim for fraudulent inducement as to the Beeman Purchase was that Bear Ranch, under alleged false pretenses, obtained *un*restricted Akaushi. *See* Dkt. #240 at 2 (explaining that HeartBrand's counterclaims are "premised on the notion that allowing Bear Ranch to maintain unrestricted cattle . . . would undermine the integrity of the Akaushi genetics it had spent two decades

maintaining"), 11 (stating that the benefit conferred on Bear Ranch from fraud was "restriction-free Akaushi"). HeartBrand's abandonment of its closed model has eliminated the purpose and value of the restrictions. Any "misrepresentation" by Bear Ranch to abide by such restrictions is no longer material, nor has HeartBrand been injured by Bear Ranch's possession of unrestricted cattle, where Bear Ranch has never sold any, and where HeartBrand itself sells unrestricted Akaushi in the marketplace. The only potential injury was to an alleged "closed" system that no longer exists.

Accordingly, Bear Ranch respectfully requests that the Court remove the judgment's ruling regarding fraudulent inducement as to the Beeman Purchase and amend the Final Judgment to reflect that there was no fraudulent inducement as a matter of law and HeartBrand take nothing on any claim for fraudulent inducement.

### C.    The unjust enrichment and exemplary damages rulings should be removed.

For similar reasons, the Court should remove the rulings in the Final Judgment as to unjust enrichment and exemplary damages. Bear Ranch has not been unjustly enriched through the acquisition of unrestricted Akaushi, where it has never sold any cattle obtained, and where the restrictions no longer have any purpose or value. Even setting aside the issue of HeartBrand's now open business model, the jury's unjust enrichment finding is in conflict with the Court's finding

that "Bear Ranch has not yet realized any of the gains from its theoretical unjust enrichment" and that a simple return of the Beeman cattle would "keep that unjust enrichment from happening in the first place  . . . ." Dkt. #240 at 15-16. There has been and was no unjust enrichment, and the ruling should be removed from the Final Judgment.

Further, HeartBrand's decision to sell unrestricted Akaushi means the closed system Bear Ranch allegedly injured, or threatened to injure through future unrestricted sales (which have never occurred), no longer exists. The lack of harm or any potential future harm to HeartBrand means that the exemplary damages finding is unsupported as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE §41.003 (stating that "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . fraud").

Accordingly, Bear Ranch respectfully requests that the Court alter the Final Judgment to remove the unjust enrichment and exemplary damages rulings and reflect instead that HeartBrand take nothing on any claim for exemplary damages and that Bear Ranch is not, and will not be, unjustly enriched.

### D.    The Twinwood and Spears Purchase Cattle injunctions should be removed.

The Court should remove the rulings allowing injunctive relief as to the Twinwood and Spears Purchase Cattle.

-13-

The Final Judgment imposes on Bear Ranch a permanent injunction as to the Twinwood and Spears Purchase Cattle, including their offspring and associated genetics. Dkt. #256 ¶14. Neither herd was covered by the 2010 contracts or their restrictions, and the jury made no fraud finding related to these cattle. Dkt. #240 at 20-21. Bear Ranch initially was amenable to abiding by the contract terms on these herds because of HeartBrand's representations about its closed business model. The Court subsequently held that Bear Ranch must permanently abide by the contract restrictions as to these cattle and any progeny, including:

- No sales or leases to anyone other than HeartBrand;

- No third-party use without HeartBrand's written permission;

- Registration with the AAA and enrollment in whole-herd reporting;

- Compliance with AAA rules, including payment of ongoing fees; and

- Submission to the AAA of DNA results for all calves.

Dkt. #256 ¶14.

Even if the Court does not amend the contract, fraud, unjust enrichment, and exemplary damages rulings, the Final Judgment should be amended to remove this injunctive relief. The Court largely justified this relief as to the Twinwood and Spears Purchase Cattle based on HeartBrand's representations that otherwise it will suffer "irreparable injury," as "unrestricted sales of those cattle will undermine the integrity of HeartBrand's Akaushi program." *Id.*; Dkt. #240 at 20-21.

The fundamental change in the factual landscape since trial undercuts the purpose of any injunction as to the Twinwood and Spears Purchase cattle. Even setting aside the Matador Ranch sales, with HeartBrand itself selling *un*restricted cattle, there can no longer be doubt that the closed model does not exist, and this injunction is not necessary. The Court is, of course, entitled to adjust the relief to account for new facts. *See U.S. v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent . . . . A continuing decree of injunction . . . is subject always to adaptation as events may shape the need.").

The Twinwood and Spears Purchase Cattle injunctions no longer have any purpose, while needlessly burdening Bear Ranch. It cannot sell the cattle to anyone but HeartBrand (which no longer wants the cattle), while HeartBrand itself pursues its new business of selling unrestricted cattle to third parties—who can sell the cattle, and their progeny and genetics, to anyone, and on and on. The injunctions impose burdensome restrictions that never applied by contract to the Twinwood and Spears Purchase cattle, including AAA registration, dues payments, and DNA testing, in perpetuity. With no closed system to protect, these injunctions have no practical effect other than to penalize Bear Ranch and impermissibly extend and rewrite the parties' contracts to include cattle never covered by the agreements.

Equity and the changed facts demand that the injunctions be removed; nor is there any legal basis for them to continue.

Accordingly, Bear Ranch respectfully requests the Court to amend the Final Judgment to remove the permanent injunctive relief as to the Twinwood and Spears Purchase Cattle and provide that HeartBrand is not entitled to any injunctive relief as to those cattle. *See* Dkt. #256 ¶14.

## II. The Final Judgment Erroneously Awards HeartBrand a Selective, Discount Buyback of HeartBrand Purchase Cattle and Progeny.

Assuming the Court does not amend the Final Judgment on the breach of contract ruling as described above, the Court should amend the Final Judgment as it relates to the buyback remedy for the HeartBrand Purchase Cattle. This remedy relates to the breach of the 2010 contracts. The judgment incorrectly allows a partial buyback, contrary to the terms of the contracts (which HeartBrand drafted), at extrapolated average per-head prices that only apply to the entire HeartBrand Purchase herd, not to premium animals hand-picked by HeartBrand.

The Court's original rulings and the contracts required HeartBrand to make a *full* buyback of the HeartBrand Purchase Cattle and progeny, just as it had been seeking at the trial, at the herd-based pricing determined by the jury. The Court's Memorandum and Opinion grants "HeartBrand's request for the contractual remedy of repossession of the *1,548* head of cattle from the 2010 sale accounted for at the time of trial for *$6,034,000*, the price determined by the jury." Dkt. #240

at 28 (emph. added). The Court further required HeartBrand to repurchase any HeartBrand Purchase progeny born since the trial at "$3,898 per head, the average price for each cattle extrapolated from the jury's verdict." *Id.* The Court requested proposed final judgments from the parties reflecting this ruling. *Id.* at 39.

In so ruling, the Court's decision reflected the relief embodied in the parties' bargained-for contracts, which HeartBrand drafted and which should be construed against it. 5/23/14 Tr. at 38-39 (R. Beeman testifying that Bear Ranch signed HeartBrand's draft with "just a few minor changes"). HeartBrand should not be awarded relief it did not include or bargain for in its written agreements. *See Gamma Group, Inc. v. Transatlantic Reins. Co.*, 242 S.W.3d 203, 212 (Tex. App.—Dallas 2007, pet. denied) ("Courts do not rewrite contracts to insert provisions parties could have included or imply restraints for which they did not bargain."). The Court's September ruling also reflected the jury's valuation of the HeartBrand Purchase Cattle herd as a whole. The jury found a single, herd-based production, acquisition, and maintenance cost reflecting a mix of 1,548 animals— some older and some younger, of varying condition, some for breeding, others for slaughter, etc. The contract does not allow for, the jury did not hear, and the Court did not reopen the record to consider, a buyback price for the acquisition, production, or maintenance costs of *individual* HeartBrand Purchase animals, or even such costs as to sub-categories of animals like breeders, terminal animals, and

so forth. Other than Bear Ranch's submission of evidence on the herd condition in late 2015, the only other "information" in the record is mere representations by HeartBrand counsel, in letters to the Court, raising unsupported (and untrue) allegations of material changes in the condition of the various herds.

The Court's original ruling also reflected HeartBrand's longstanding request for relief on its contract claim, before its recent about-face and post-trial position. The Court held that return of *all* the HeartBrand Purchase cattle was required by the parties' "2010 arms-length bargain that '[i]n the event of a breach . . . by [Bear Ranch], HEARTBRAND shall be allowed to entitled to [sic] obtain injunctive relief to insure that it *obtains possession of all cattle described in this agreement*.'" Dkt. #240 at 27 (quoting Dkt. #211-8 at §XVI). As HeartBrand says in its Answer, it is entitled, upon proving a breach, to an injunction "to ensure that it obtains possession of *all* cattle" and it requested in its Answer "Return [of] the cattle and genetic material to which the [Contracts] apply (along with their offspring . . . .)." 1st Am. Answer, Dkt. #111 §23 & prayer (emph. added); *see also* Dkt. #193 (Defs.' Mot. for Entry of Final Judgment at 9-11) (same). Repossession of *all* the cattle and associated genetics was the parties' bargained-for remedy, requested by HeartBrand and (in September) enforced by the Court, at the jury's herd-based buyback price.

Nevertheless, the Final Judgment awards HeartBrand a *selective* buyback of only 369 breeders and genetic material based on lists provided by HeartBrand in letters after the trial and after the Memorandum and Opinion. Dkt. #256 at 6. Further, the Final Judgment incorrectly says that these 369 cattle represent "the 2010 cattle and their offspring that were living as of March 31, 2014." *Id.* ¶9(a). The 369 cattle hand-picked by HeartBrand include numerous animals born after that date. *See id.*, Ex. A at 8-12 (showing numerous animals with an "Actual CD" or calving date after March 31, 2014). In fact, the 369 are simply the premium Bear Ranch-raised animals that HeartBrand now wants—and at a bargain price.

Further, the Judgment uses an averaged buyback price of $3,898 per head for this hand-picked group of animals, even though that figure is a blended average cost derived from the jury's finding of the total cost for 1,548 animals of varying ages, conditions, intended uses, and so on. The herd-based totals were based on calculations testified to by the parties' respective financial experts, and neither expert opined that the breeding animals in the herd cost Bear Ranch only the *average* per head amount to raise. Nevertheless, HeartBrand's Exhibit A contains only the most costly (and valuable) animals, yet it demanded—and the Final Judgment uses—a lower, per-head buyback price derived from a much larger number of animals of varying value. In short, HeartBrand would get a small group of the most costly (and valuable) animals in return for paying the average per-

animal price—contrary to the record, contracts, evidence, and the Court's original ruling.

Accordingly, assuming the Court does not amend the Final Judgment to remove the ruling as to breach of contract, Bear Ranch respectfully requests that the Court amend the judgment to award HeartBrand the remedy of repurchase of *all* HeartBrand Purchase Cattle at the jury's herd-based price of $3,898 per head.

## III. The Maintenance Cost Findings Conflict With the Buyback Approach and Penalize Any Appeal.

The judgment should also be amended to remedy erroneous amounts HeartBrand must pay to account for Bear Ranch's maintenance costs since March 31, 2014 for the HeartBrand Purchase Cattle. *See* Dkt. #256 ¶9(d) & n.4.

The Final Judgment's post-trial maintenance amounts compound its error of allowing a selective buyback at an average per-head price because it erroneously singles out individual animals, such as calves and mature cows, as having no maintenance costs and uses a single, fixed amount for an ongoing cost. *Id.* Further, it orders Bear Ranch, until the HeartBrand Purchase Cattle are delivered, to pay any further maintenance costs without reimbursement. *Id.* ¶12. This needlessly penalizes Bear Ranch should either party choose to appeal.

Bear Ranch respectfully requests that the Court alter the Final Judgment as to post-trial maintenance costs, to include a per-day maintenance cost as provided in Bear Ranch's original proposed judgment. Dkt. #244-2 ¶7. Bear Ranch further

respectfully requests that the Court alter the Final Judgment to reflect that HeartBrand must pay, or at least the parties should share equally, the costs of maintenance during any appeal.

### IV.   The Final Judgment Should Be Clarified as to Certain Issues Relating to the Beeman Purchase Cattle and Exemplary Damages.

Finally, Bear Ranch respectfully requests that the Court amend the Final Judgment to correct or clarify certain issues, but only if the Court declines to amend the judgment to remove the Beeman Purchase fraudulent inducement ruling.

If the Court retains the fraudulent inducement ruling, the Final Judgment should then be clarified to allow Bear Ranch to sell the Beeman Purchase Cattle unrestricted, should HeartBrand elect not to reacquire or sell those cattle at auction, as the Final Judgment apparently intends but does not clearly provide. As a remedy for fraudulent inducement, the Final Judgment imposes a constructive trust over the Beeman Purchase Cattle. Dkt. #256 ¶4. HeartBrand gets the option to reacquire the cattle at the buyback price. *Id.* If it chooses not to do so, the Court authorizes a judicial sale or auction process, with proceeds above $3,796 plus maintenance costs paid to HeartBrand. *Id.* ¶5. However, as to any cattle HeartBrand elects not to reacquire or sell at auction, HeartBrand would maintain a constructive trust over the proceeds of any sale by Bear Ranch. *Id.* ¶15. The judgment does not specifically state that Bear Ranch may sell any such cattle unrestricted, *id.*, as the

Court stated in an earlier Order. *See* Dkt. #255 at 1 ("These cattle [*i.e.*, the Beeman Purchase Cattle] will not be subject to the restrictions given the statute of fraud ruling.").

Bear Ranch also requests that the Court correct a statement as to exemplary damages on page 3 of the Final Judgment, where it states that the $1,825,000 is "[h]arm to HeartBrand resulting from fraud by Bear Ranch." Dkt. #256 at 3. In fact, HeartBrand never claimed nor proved any actual or compensatory damages from the alleged fraud, and the jury was not asked about and did not award such damages. As the Final Judgment later notes, that amount was awarded as "exemplary damages," not compensatory damages for alleged harm to HeartBrand. *Id.* ¶6.

## CONCLUSION AND PRAYER

For the reasons above, Bear Ranch respectfully requests that the Court alter or amend the judgment under Rule 59(e). Bear Ranch also requests any further relief to which it is entitled.

Dated: March 23, 2016        Respectfully submitted,

<u>/s/ R. Paul Yetter</u>
R. Paul Yetter
Attorney-in-Charge
State Bar No. 22154200
James E. Zucker
State Bar No. 24060876
YETTER COLEMAN LLP
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER LLP
4825 50th St., Suite A
Lubbock, Texas 79414
(806) 793-1906
(806) 792-2135 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

## Certificate of Service

I certify that on March 23, 2016, a copy of the foregoing document was served on all counsel of record using the Court's e-filing system.

<u>/s/ James E. Zucker</u>
James E. Zucker