United States District Court
Southern District of Texas
**ENTERED**
April 20, 2016
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-14 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI | § | |
| ASSOCIATION, INC., | § | |
| and ROBERT BEEMAN. | | |
| | | |
| Defendants. | | |

## <u>MEMORANDUM AND ORDER</u>

HeartBrand Beef, Inc. seeks close to $5 million in attorneys' fees, expenses, and costs related to this complex and lengthy litigation in which it obtained a favorable verdict on its breach of contract claim (as well as a ruling in its favor on one fraudulent inducement claim).  Docket Entry No. 246.  It seeks this amount pursuant to the following fee provision in the 2010 purchase agreement in which HeartBrand sold 424 Akaushi breeding cattle to Bear Ranch:

> If any legal action is brought to enforce this Agreement by either of the parties hereto, it is expressly agreed that the prevailing party in such legal action shall be entitled to recover from the other party reasonable attorney's fees, expenses, and costs.

1

Docket Entry No. 72–5, at 6 ¶ 20.  The contract also provides another fee recovery provision, which is a one-way provision in favor of HeartBrand, in the "Remedies for Breach" section:

> [Bear Ranch] further agrees that it will reimburse HeartBrand all of its reasonable attorney fees and any other costs incurred in enforcing the terms of this agreement.

Docket Entry No. 72–5, at 5 ¶ 16.

Both sides agree that these provisions entitle HeartBrand to recover fees, expenses, and costs related to the contract claim on which it prevailed.  But the contract claim was just one of numerous claims brought by both sides.  Resolving the fee question thus requires the Court to perform a couple preliminary tasks before it conducts a lodestar analysis of the fee request.  First, it must determine which of HeartBrand's claims and defenses to Bear Ranch's claims are "recoverable" under the fee provision.  After sorting out the recoverable and unrecoverable claims, the Court needs to determine whether the work related to the unrecoverable claims was nonetheless inextricably intertwined with the work on recoverable claims allowing a full award or whether there is a basis for segregation or percentage allocation.

## I.   BACKGROUND

The Court has repeatedly summarized the nature of this suit,[1] but will briefly do so again to provide necessary context.   Although HeartBrand obtained the favorable jury verdict, Bear Ranch brought this lawsuit.   HeartBrand thus was defending against Bear Ranch's claims and asserting counterclaims of its own.

Bear Ranch brought this lawsuit seeking to invalidate restrictions listed in the 2010 purchase agreement.   Among other things, those restrictions forbid Bear Ranch from reselling the cattle without HeartBrand's permission.   Docket Entry No. 72–4, at 1-5.   Bear Ranch later purchased additional Akaushi cattle from three other parties that had obtained cattle from HeartBrand.   These were "handshake" deals not governed by a contract.   *Bear Ranch LLC v. HeartBrand Beef Inc.*, 2014 WL 1052515, at *5–7 (S.D. Tex. Mar. 18, 2014).   HeartBrand nonetheless took the view that the 2010 contractual restrictions extended to cattle acquired in these later deals.

In seeking to invalidate the restrictions, Bear Ranch's initial complaint focused on antitrust and unfair competition claims.[2]   That complaint also alleged

---

[1] *See Bear Ranch, LLC v. Heartbrand Beef, Inc.*, 2016 WL 852775, at *1 (S.D. Tex. Mar. 4, 2016); 2015 WL 5178120, at *1–*4 (S.D. Tex. Sept. 4, 2015); 2014 WL 1052515, at *1–*2 (S.D. Tex. Mar. 18, 2014).

[2] The first claim alleged conspiracy in violation of Section 1 of the Sherman Act; the second alleged monopolization in violation of Section 2 of the Sherman Act; the third alleged unfair practices under the Packers & Stockyards Act; and the fifth sought a declaration that the restrictions were void for violating the public policy against alienability of property.   Docket Entry No. 1, at 9-12.

that HeartBrand induced Bear Ranch to enter into the contract by mispresenting that it was the exclusive source of Akaushi cattle in the United States.   Docket Entry No. 1, at 11 (Fourth Claim).   Bear Ranch also asserted a breach of contract claim alleging that HeartBrand had failed to protect the integrity of its Akaushi genetics by not including restrictions in sales with other ranchers.   *Id*. at 13 (Seventh Claim).   Finally, it sought declarations that the restrictions in the 2010 agreement do not apply to the cattle acquired in the later "handshake" deals or to the offspring from the 2010 cattle.   *Id*. at 14-15 (Eighth and Ninth Claims). Despite the variety of claims sounding in statute, tort, and contract, the central aim of the case from its inception is reflected in the following request for relief: "That the Court adjudge and declare that HeartBrand's contract with Bear Ranch is unenforceable."

After a year of discovery, Bear Ranch filed an amended complaint that significantly changed the types of claims being asserted, but not the nature of the relief being sought.   Gone were the antitrust claims.   Remaining were the fraudulent inducement and breach of contract claims, as well as the claims seeking declarations that the contractual restrictions do not extend beyond the cattle directly obtained in the 2010 agreement.   The fraud claim allowed the amended complaint to still seek invalidation of the 2010 restrictions: it sought a ruling

"[d]eclaring that Bear Ranch's defense of fraudulent inducement precludes liability on any contract with [HeartBrand]."  Docket Entry No. 59, at 16.

In the meantime, in addition to defending against Bear Ranch's lawsuit, HeartBrand had filed counterclaims.  Docket Entry No. 7.  As later amended, those alleged that Bear Ranch (1) fraudulently induced HeartBrand into agreeing to the 2010 contract; (2) fraudulently induced HeartBrand into approving the contract for the later acquired Beeman cattle; (3) engaged in fraud relating to that same Beeman transaction; 4) engaged in fraud with respect to the later acquired Twinwood cattle; 5) engaged in fraud with respect to false representations made to the American Akaushi Assocation about registration of cattle; and 6) breached the 2010 agreements by, among other things, not registering offspring with the American Akaushi Association.  Docket Entry No. 111 at 15-24.

Some of the claims were resolved pretrial.  Bear Ranch prevailed on its request for a declaration that the 2010 contractual restrictions do not apply to the later-acquired cattle.  *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 2014 WL 1052515, at *5–*7 (S.D. Tex. Mar. 18, 2014).  HeartBrand failed to defeat summary judgment on one aspect of its fraudulent inducement claim relating to the 2010 contract (concerning Bear Ranch's purpose in acquiring the cattle) and on its

entire fraudulent inducement claim relating to the 2011 Beeman sale (because no contract existed).[3] *Id*. at *7–*10.

At trial, the jury rejected all of Bear Ranch's remaining claims. HeartBrand prevailed on its claim that Bear Ranch breached the 2010 purchase agreement by failing to comply with registration requirements and its fraud claim relating to the Beeman transaction. The jury rejected HeartBrand's other fraud claims.

## II.   ANALYSIS

As this lengthy procedural history shows, HeartBrand enjoyed some successes and some defeats. And its successes came on one claim that supports a fee award under the contract (the breach of contract claim) as well as one that does not (the fraud claim). *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (noting that "there is no question [that fraud claim] fees were not recoverable"). This is not an uncommon situation, and the governing Texas law provides guidance on how to decide fee disputes when work for some claims is recoverable but work on other claims is not. *See id.* at 312 (noting that Texas courts "have been flooded" with cases addressing how to deal with cases including both "recoverable" and "unrecoverable" fees). The first task, however, is to decide which claims support fees in this case and which do not.

### A.  On Which Claims and Defenses Are Fees Recoverable?

---

[3] HeartBrand also agreed to dismissal of its fraud claim relating to registration statements (Counterclaim 5 listed above), and the Court dismissed one allegation in the breach of contract claim. *See id.* at *12 & n.6.

The answer is straightforward for the claims HeartBrand asserted.  Work on its breach of contract claim was work done to "enforce the agreement" (the language of both contractual fee provisions) and it prevailed on that claim.  Work on its fraud claims was not done to "enforce the agreement;" those claims sought to invalidate the 2010 agreement or related to the later "handshake" deals.  Thus even the fraud claim on which HeartBrand prevailed does not independently support a fee award.

More difficult is classifying the work HeartBrand did in responding to Bear Ranch's claims.  This includes the antitrust claims that Bear Ranch dismissed, as well its fraud and contract claims.  One of those claims plainly does not support a fee award:  the work related to Bear Ranch's successful effort to obtain a declaration stating that the 2010 contract restrictions do not extend to subsequent purchases.  As the losing party, HeartBrand is not entitled to fees for its work responding to that claim.  Nor was defending that claim part of "enforcing the agreement" as the Court held that the 2010 contract did not extend to subsequent sales.  *See Bear Ranch, LLC*, 2016 WL 852775, at *2.

In contrast, HeartBrand's work in response to other Bear Ranch claims was necessary to "enforce the agreement."  The first element of a breach of contract claim is the existence of a valid contract.  *See Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000) (listing elements of

breach of contract claim). As detailed above, Bear Ranch's antitrust and fraud claims sought to invalidate the 2010 agreement. *See, e.g.*, Docket Entry No. 59 at 13 ("Bear Ranch seeks a judgment . . . that it has a valid defense of fraudulent inducement that defeats any enforcement by [HeartBrand] of any contract with Bear Ranch"); *id.* ("[A]ny contractual restrictions on its use of the cattle and semen [Bear Ranch] purchased from HeartBrand are unenforceable"); *id.* at 14 ("[T]he contractual restrictions on its use of the cattle [Bear Ranch] purchased from HeartBrand are unenforceable."); Docket Entry No. 1 at 10 (seeking a judgment preventing the enforcement of the 2010 agreement because it constituted a "monopolization of the market for the sale of Akaushi beef in the United States); *id.* at 16 ("HeartBrand's contract with Bear Ranch is unenforceable."). "Without overcoming" these claims, HeartBrand could not have enforced the agreement via its breach of contract claim. Docket Entry No. 246 at 9. The work done in preventing HeartBrand from prevailing on these claims that would have invalidated the 2010 agreement was thus necessary to "enforcing" that agreement.

Although this conclusion flows from the plain language of the fee provisions, analogous support comes from Texas cases applying the statute that allows for recovery of fees in breach of contract cases. That statute allows recovery of fees for work "if the claim is for: an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8). Texas courts have construed this language

to mean the statute allows recovery of fees if "a litigant [prevails] on a breach of contract claim and recover[s] damages." *See Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 40 (Tex. 2012).  This standard is, if anything, narrower than the contractual language that entitles HeartBrand to "reasonable attorney fees and any other costs incurred in enforcing the terms of this agreement."  Docket Entry No. 72–5, at 5 ¶ 16.   Yet the Supreme Court of Texas has recognized in interpreting the statutory provision that "to prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, *res judicata*, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary."[4] *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14.

This same principle applies not just to work required to beat back defenses that if successful would preclude recovery on a breach of contract claim, but also to work overcoming counterclaims that seek to undermine the contract.  Just a year after deciding *Tony Gullo Motors*, the Supreme Court held that plaintiffs that succeeded on a breach of contract claim could also recover fees related to overcoming a counterclaim much like the fraud one Bear Ranch asserted here

---

[4] The Texas Supreme Court noted this in the context of a lengthy discussion explaining the "inextricably intertwined" standard used to determine whether to segregate fees. *See id.* at 310–14. But this statement is best read as addressing what fees are flat-out recoverable, rather than saying that the legal services were intertwined and therefore nonsegregable.  This understanding is consistent with the Supreme Court's clarification the following year in *Varner v. Cardenas*.  218 S.W.3d 68, 69 (Tex. 2007) (per curiam).  *Varner* held that to the extent plaintiffs had to overcome defendant's contractual counterclaims to succeed on their own breach of contract claim, those fees were also recoverable because they were "necessary to recover on their contract." *Id.*

9

contending that it did not receive what it was promised (exclusive Akauhshi cattle). *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam).   When the plaintiff in *Varner*, another case involving ranches, filed suit to collect on a promissory note, the defendant unsuccessfully asserted a counterclaim alleging the ranch was 180 acres less than plaintiffs represented.   *Id.*   The Supreme Court recognized that "[b]y asserting a shortfall in acreage as a defense and counterclaim, the [plaintiffs] sought to reduce the amount collected on the note; to collect the full amount, the [plaintiffs] had to overcome this defense."   *Id.*   And as "[plaintiff's] attorney's efforts to that effect were necessary to recover on their contract, they are recoverable."   *Id.*   Similarly, in *7979 Airport Garage*, the plaintiffs filed a breach of contract suit, and defendants counterclaimed asserting their own breach of contract and fraud claims.   *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 (Tex. App.—Houston [14th Dist.] 2007).   Those counterclaims were intended to "reduce or avoid lability for [plaintiff's] contract claim."   *Id.*   Because plaintiffs "had to defeat [defendant's] claims before it could recover," it was entitled to recover for work responding to those counterclaims.   *Id.*

Just as the plaintiffs in *Varner* and *7979 Airport Garage* had to prevent the defendants from prevailing on fraud and contract counterclaims in order to enforce their contracts, HeartBrand had to first overcome Bear Ranch's claims that sought

to prevent the contract's enforcement.[5]  This reasoning leads the Court to classify

the claims as follows:

|  | HeartBrand Claims | Bear Ranch Claims |
|---|---|---|
| "Recoverable" | • Breach of contract | • Antitrust and other unfair competition claims<br><br>• Fraud in the inducement re: 2010<br><br>• Breach of contract |
| "Unrecoverable" | • Fraud in the inducement re: 2010<br><br>• Fraud and fraud in the inducement re: Beeman<br><br>• Fraud re: Twinwood<br><br>• Fraud re: AAA registration | • Declaration of no contract restrictions re: subsequent purchases<br><br>• Declaration of no contract restrictions re: offspring |

---

[5] Bear Ranch correctly points out that because the antitrust claims were dismissed without prejudice, there was no "prevailing party" on those claims.  That does not, however, prevent HeartBrand from recovering its fees and costs related to the antitrust claims.  HeartBrand was a prevailing party on its breach of contract claim.  In order to prevail on that breach claim, HeartBrand had to prevent Bear Ranch from prevailing on the antitrust claims that would have invalidated the 2010 agreement as an unreasonable restraint on trade; it did not have to win those claims outright.  Under the cases discussed above, work preventing Bear Ranch from prevailing on the antitrust claims was thus necessary for HeartBrand to enforce its agreement.

### B. Whether Work on the Recoverable and Unrecoverable Claims is Inextricably Intertwined?

Classifying the claims as recoverable or unrecoverable would end the fee inquiry if attorneys and others working on litigation billed their time by claim. *Tony Gullo Motors I, L.P.,* 212 S.W. 3d at 313 ("[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees."). Of course, that is not how it is done. And even if that were the practice, much of the work related to one claim also relates to another claim. For example, discovery about the formation of the 2010 agreement would be relevant to the recoverable breach of contract claim and also the unrecoverable fraud counterclaim HeartBrand asserted for that same transaction.

Texas law recognizes that work on recoverable and unrecoverable claims may be "so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314. A decade ago, the Supreme Court of Texas reined in some lower courts expansive view of intertwinement, explaining that "[i]ntertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. It also noted that one approach trial courts had adopted instead of requiring burdensome retrospective itemizations by claim—allocating as a percentage of total fees the amount that likely would have been incurred even if the unrecoverable claims were not in the

case —was entitled to the deferential review that factual determinations are ordinarily given by appellate courts.  *Id.* at 314 & n.83; *see also Chaparral Texas, L.P. v. W. Dale Morris, Inc.*, 2009 WL 455282, at *8 (S.D. Tex. Feb. 23, 2009) *amended*, 2009 WL 1810125 (S.D. Tex. June 23, 2009) ("Federal courts applying *Chapa* have used a percentage formula to reduce fees when the prevailing party did not adequately segregate time spent on successful and unsuccessful claims.").

Having reviewed the submissions related to the fee request, and based on the Court's extensive experience with this case, it concludes that most of the work incurred by HeartBrand cannot be segregated.  This is especially true with respect to liability work.  As already explained, any attempt to allocate discovery and trial work relating to the 2010 agreement by "contract" or "fraud" would be futile.  And although there might be a better basis for segregating the liability work between recoverable 2010 agreement and the unrecoverable subsequent transactions, there is still a great deal of overlap between witnesses for all the claims.  The voluminous billings in this complex and unusually contentious case also make it very difficult to segregate every time entry.

There is, however, one area in which segregation seems appropriate.  The expert-intensive work concerning HeartBrand's damages model for its fraud claim is not recoverable as it had nothing to do with the contract claim.  That work

13

should also be more cleanly and easily segregable than other work. The damages model arose late in the litigation, after HeartBrand changed its damages model in response to the Court's summary judgment rulings (which held that the 2010 restrictions did not apply to the subsequent purchases).

The Court thus thinks it appropriate to handle the fee issue as follows. HeartBrand should submit within ten days a revised request that segregates the work attributable to the damages on its fraud claim (that also includes the work done responding to Bear Ranch's damages experts). Along with that segregation, HeartBrand should propose a percentage of the remaining amount that it believes would have been incurred absent the unrecoverable claims.[6] Bear Ranch will then have ten days to respond to the new submission. In proposing an allocation percentage, the parties should consider the following as an inexact yet still useful proxy: going through the list of trial witnesses (absent the experts who will already have been "segregated out") and assessing which would have been necessary for a trial just involving the recoverable claims and the portion of that testimony related to the recoverable claims. The parties may also be able to come up with similar representative samples that may provide a basis for extrapolating the overall allocation percentage.

---

[6] Included in this percentage reduction, HeartBrand should reduce the amount of fees to account for work that was done solely on behalf of AAA or Ronald Beeman, (to the extent there was any such work) as neither was party to the 2010 agreement that provides the basis for fees.

**SIGNED** this 20th day of April, 2016.

_____
Gregg Costa
United States Circuit Judge[*]

_____

[*] Sitting by Designation