IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  6:12-cv-00014 |
| | § | |
| HEARTBRAND BEEF, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF BEAR RANCH'S CONSOLIDATED REPLY IN
SUPPORT OF MOTIONS FOR NEW TRIAL AND TO ALTER/AMEND**

In its briefing, HeartBrand tries to minimize the significance of its move to

an open model. Outside of court, it's a different story, as its new ad shows:



Ex. A (HeartBrand *Wagyu World* ad, Mar./Apr. 2016). Its announcement – that unrestricted Akaushi are "now available to the World!" – casts serious doubt on the facts told at trial about the existence, importance, and value of HeartBrand's closed model. In its briefing, however, it gives a self-serving narrative of its decision and alleged reasons with no supporting evidence, which can be summed up as, "it's all Bear Ranch's fault." The only way for justice to be done is through discovery, and a new trial, into when HeartBrand first considered abandoning its business model, why it decided to do so, and when unrestricted sales began.

Through selective quotation, HeartBrand argues that Bear Ranch's motions seek a new trial based on evidence of facts that allegedly changed only *after* trial. Not so, as is obvious from reading the motions. *See, e.g.*, Dkt. #260 at 6, 11, 18. Also, regardless of the timing of HeartBrand's decision, the new evidence reveals that the facts *at trial* were not as represented to the jury, especially concerning the value of the cattle and a closed system that no longer exists, if it ever fully did.

Further, HeartBrand ignores the unique circumstances of its counterclaims, which resulted in injunctive relief and a constructive trust for the indefinite future. It is the opposite of equity for the rulings to ignore reality, which is why the Court has full power to modify them at any time. There can be no doubt "of the power of a court of equity to modify an injunction in adaptation to changed conditions," and

in particular, a "continuing decree of injunction . . . is always subject to adaptation as events may shape the need." *U.S. v. Swift & Co.*, 286 U.S. 106, 114 (1932).

HeartBrand also barely responds to defend the unjust enrichment and exemplary damages findings, in light of the new evidence. *See* Resp. at 16 & n.5. The only "harm" the jury found from the alleged Beeman Purchase fraud was unjust enrichment, and it awarded exemplary damages based on that "harm." Yet, as the Court has ruled, unjust enrichment requires that the transferee "has realized a benefit," Dkt. #240 at 11, but "Bear Ranch has not yet realized any of the gains from its theoretical unjust enrichment." *Id.* at 15; *see also id.* at 22 (noting that the buyback remedy was designed to "prevent[] unjust enrichment"). Since Bear Ranch was not unjustly enriched, there was no harm at trial to support the exemplary damages finding. Nor is there any legal or equitable basis now for an injunction as to the Twinwood and Spears Purchase Cattle, which HeartBrand defends merely by recommending that the Court defer ruling. Resp. at 27-28.

Bear Ranch respectfully requests that the Court order a new trial on all issues, not just an improper mini-trial HeartBrand hopes will generate a windfall. *See* Dkt. #270 (Pl.'s Resp. to Mot. for New Trial at 1-3). Further, although Bear Ranch does not agree to entry of judgment, if the Court decides to do so, it should alter or amend the judgment to remove rulings and remedies rendered improper or

unnecessary given HeartBrand's abandonment of the closed model underlying virtually every aspect of the judgment. Dkt. #261.[1]

## I.     The Court Should Order a New Trial on HeartBrand's Counterclaims.

The parties agree that there should be a new trial. HeartBrand seeks a new trial *solely* for improper purposes, however, to depress the jury's buyback findings through attacks on Bear Ranch's management of the herds—attacks that it has not supported with evidence, either here or since first making them in 2015 to avoid the Court's buyback ruling. It also seeks to revive its hopelessly speculative award for unjust enrichment that never occurred, to bail out its troubled business. Rather than simply buy back the cattle (which would afford it a complete remedy and "prevent[] unjust enrichment and a windfall," Dkt. #240 at 22), HeartBrand's improper request is designed to *achieve* a windfall, while insulating the liability and remedies findings from the impact of newly discovered evidence.

### A.     HeartBrand's response is based on the false premise that the newly discovered evidence relates only to post-trial facts.

An alleged closed system is the cornerstone of the counterclaims and pleas for remedies at trial. The counterclaims were "premised on the notion that allowing

---

[1]     HeartBrand has conceded that its original new trial request on the Beeman Cattle offspring costs was improper, by expanding the request in its response. *See* Dkt. #262 (Def.'s Mot. for New Trial at 12) ("HeartBrand requests a new trial on remedies so that it may present new testimony and evidence regarding the appropriate acquisition, production, and maintenance costs of the Beeman Cattle Offspring."). Now HeartBrand says it seeks a new trial on the "buy-back price for the 2010 and 2011 cattle (among other possible remedies)." Dkt. #269 at 23.

Bear Ranch to maintain unrestricted cattle . . . would undermine the integrity of the Akaushi genetics [that HeartBrand] had spent two decades maintaining." Dkt. #240 at 2. For example, as HeartBrand testified, "the important thing for us is to control and have the requirements on these cattle . . . . So if anything deviated from that, it could destroy the whole program." 5/27/14 Tr. at 31 (Fielding). The jury was not presented with any scenario where HeartBrand would abandon its model and sell unrestricted Akaushi *itself*. Now, we know HeartBrand is doing so. *See* Dkt. #260-1 (1/25/16 Ltr. to AAA members). But little else is known, like when it began to consider changing its business, decided to do so, and began implementing its plan.

The new evidence is not, as HeartBrand says, merely evidence of facts *post*-trial. Its strawman therefore is irrelevant, Resp. at 4-11, 20-21, as is its selective quotation of Bear Ranch's motions, *id.* at 5-6. But Bear Ranch's position is clear:

- "The rulings and remedies flowing from the 2014 trial relate to a factual landscape that no longer exists, if it ever did," Dkt. #260 at 6;

- "the existence, necessity, and validity of HeartBrand's closed model at least could have been accepted by the jury and the Court, assuming the model wasn't already on its way out," *id.*;

- "despite Bear Ranch's diligent efforts to uncover before and during trial the status of HeartBrand's closed model, it is unknown when HeartBrand first began planning to change, and in fact did change, its business model," *id.* at 11;

- "the jury at the least was entitled to know, and should have known, that HeartBrand would soon have an open business model, if it did not already have one," *id.* at 18.

The new evidence shows when HeartBrand *announced* its decision to certain producers (all except Bear Ranch), not when the change was considered, planned, and decided. If it's true that a closed business model once was fundamental to the value of HeartBrand's business, it likely began considering and planning this major step long in advance and even before trial. At a minimum, it was planning this material change to its business at the end of 2015—the very time the Court issued its Order and considered the parties' proposed judgments and scope of equitable relief designed to protect the "closed" model. Yet HeartBrand chose to stay silent. The announcement itself and circumstances surrounding it suggest that the facts *at trial* were not as represented to the jury, warranting discovery and a new trial on all issues relating to the counterclaims HeartBrand won.

Further, even if HeartBrand's planning, decisions, and sales of unrestricted Akaushi were entirely post-trial, its abandonment of a closed model is still new evidence of facts *at the time of trial*. At trial, HeartBrand represented that its model and cattle were exceedingly valuable, and would command astronomical prices if unrestricted—cows "worth anywhere between $35,000 to $250,000 apiece" and from "$50,000 to over a million dollars per bull." 5/27/14 Tr. at 263 (J. Andrien). Indeed, this model supposedly was to last in perpetuity, to support its speculative unjust enrichment expert opinions. *Id.* at 334-35. These inflammatory representations of alleged facts at trial necessarily impacted the jury's findings.

Now, given HeartBrand's changed business model and refusal to buy back the cattle (even for a fraction of what it claimed they were worth), there can be no doubt that those "facts" *at trial*, which distorted the result, were pure fantasy then, as they are surely now. Indeed, HeartBrand doesn't even disclose to the Court the price at which it has been selling the unrestricted Akaushi, Resp. at 9 n.3. One can only presume that this is because the price is so much less than what it presented at trial. Its now-discarded business model and cattle were not then worth $90 million or more, as told to the jury, which the newly discovered evidence confirms.

### B.   Regardless of when HeartBrand changed its business model, the fact entirely undermines key rulings.

Even if HeartBrand were correct (which it is not) that the new evidence *only* relates to post-trial facts, the Court should still order a new trial.

First, its response ignores the unique nature of this case, concerning claims for equitable and injunctive relief flowing into the indefinite future. The jury did not find, and was not asked to consider, any actual damages resulting from the alleged Beeman Purchase fraud. Instead, it found harm in the form of unjust enrichment, which necessarily assumed that HeartBrand's business model was closed and would remain so. *See* Dkt. #172 (Verdict at 11, 20-21). The Court's remedies decisions beginning in 2015 through the final judgment assumed a closed HeartBrand model. *See* Dkt. #240 (Mem. & Order at 2, 14, 21); Dkt. #242 (9/28/15 Ltr. at 2) (HeartBrand stating that "the Court . . . was clear that its remedy was

intended to preserve HeartBrand's closed system"). At the time that HeartBrand was planning to announce its open model, it was demanding that the Court enforce liability findings and equitable remedies dependent on a closed model that, at a minimum, it would shortly abandon, if it had not already done so. *See* Dkt. #245 (10/5/15 Ltr. at 10) (HeartBrand stating that the "Court has now concluded that it can preserve HeartBrand's business model").

Second, the very sources HeartBrand cites show that courts do *not* uniformly refuse to grant a new trial based on evidence of facts arising after trial. It cites a treatise for the proposition that "[n]ewly discovered evidence must be of facts *existing at the time of trial*." Resp. at 5 (citing 11 C.A. WRIGHT, ET AL., FED. PRAC. & PROC. §2808 (3d ed. 2012)) (emph. in original). It neglects to point out that in the same section, the treatise cites an important "general exception" to the rule. 11 Wright & Miller § 2808 n.4 (citing *Washington v. U.S.*, 214 F.2d 33 (9th Cir. 1954)). As noted in *Washington* and repeated in the treatise:

> The policy of the law in having an end to litigation, would in most cases prevent the reopening of a case because of after-occurring events . . . . But a general exception exists where substantial justice requires a reopening and when the after-occurring event is of major importance in its impact on the case. The cases state that not only will an Appellate court correct error, but will also do substantial justice, and in so doing, will consider changes of law or fact which have occurred since the decision below.

214 F.2d at 46-47 & n.14 (collecting cases; noting the general exception "involves many situations," including the "later happening of an event in issue").

HeartBrand's sales of unrestricted Akaushi raise significant questions about facts at the time of trial. But regardless, abandonment of its model is undoubtedly "of major importance in its impact on [this] case." *Id.*; 11 WRIGHT, *supra*, §2808.

Recognizing that its move to an open model upends the findings, rulings, and remedies based on a closed system in need of protection, HeartBrand simply points the finger. Resp. at 2. But Bear Ranch did not cause HeartBrand to operate a money-losing business for decades. *See* 5/27/14 at 317. Bear Ranch did not pursue a speculative unjust enrichment claim, producing the majority of HeartBrand's fees and costs, including over $700,000 for the opinions of expert Andrien. Nor can it seriously assert (again, without evidence) that Bear Ranch's "failure to comply with the terms of the contacts" caused HeartBrand's "liquidity" issues, Resp. at 2, where Bear Ranch is one of over 250 HeartBrand producers and where liquidity issues have characterized HeartBrand's business from the outset.

Also unsupported is HeartBrand's attempt to minimize the significance of its now-open model. *Id.* at 1-4. It claims to have a "partially" closed model—to the extent that is even possible—by selling unrestricted cattle to some buyers, while "offering" others "on an entirely restricted basis." *Id.* at 2. But HeartBrand neglects to say whether a single purchaser has accepted its "offers" of *restricted* cattle now, given that it sells them unrestricted "to the World!" Ex. A (*Wagyu World* ad). Nor

does it cite any evidence to prove it has sold unrestricted Akaushi for "higher prices" (it lists none) than "offered" for cattle sold under contract. Resp. at 9 n.3.

Rather than unsupported assertions, discovery and a new trial are needed to determine the facts as they truly stood at trial, given this new evidence.

### C. HeartBrand seeks to insulate unsupported liability findings, while relitigating remedies, to generate a windfall.

A new trial on all liability and remedy issues is the equitable and balanced way to assess the significance of abandonment of the closed system that underlies HeartBrand's counterclaims and relief obtained. Instead, it seeks a gerrymandered "new trial" that would leave in place factual determinations entirely undermined by newly discovered evidence. At the same time, it hopes to relitigate buyback prices of the cattle and its plea for remedies, including millions in "unjust enrichment" that never occurred, pertaining to a factual landscape that may never have existed and certainly does not now.

### D. A new trial is needed to remedy substantial prejudice introduced by expert Andrien's valuation opinion.

There is no need to re-hash why HeartBrand should not have put Andrien's opinions before the jury, because there is no better proof of the inappropriateness of the opinions than the complete lack of support that they have received since trial. This hard-fought, low-dollar case became something quite different when the opinions were offered. HeartBrand trumpeted to the jury Andrien's opinions that

the cattle sold are worth $90 million and the Beeman Purchase cattle $76 million. These outlandish valuations could only inflame and confuse the jury, affecting its liability findings, $23 million equitable award, and $1.825 million punitive award. That trumpet cannot be un-sounded without a new trial.

HeartBrand's response does little to address the obvious concerns raised by Andrien's untethered opinions on the value of HeartBrand's herd. The Court gave no credence to the opinions when fashioning an equitable remedy.

And although HeartBrand doggedly defends the opinions, it can't explain why it no longer wants back this supposedly gilded herd, a fact the jury would have benefitted from knowing. It would be clamoring for that herd, if Andrien's opinions had any validity, or at least for an auction. It wants neither, and the reason is plain: the herd is not worth even close to what the flawed opinions concluded. Because the opinions should never have been offered to the jury, a new trial is warranted. *See Carson v. Polley*, 689 F.2d 562, 570 (5th Cir. 1982); *See Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683 (5th Cir.1986).

HeartBrand entirely misses the point with its argument that, once Andrien's $90-million trumpet blared in the jury's face, Bear Ranch could put on rebuttal testimony. Dkt. # 269, at 26-27. The Andrien opinions came out at the last-minute, leaving Bear Ranch with no ability to generate meaningful rebuttal evidence (as it

did later, for the Court's hearings on equitable remedies). In any event, the opinions never should have been placed before the jury in the first place.

## II.    If the Court Decides to Maintain a Judgment Against Bear Ranch, It Should Alter or Amend the Judgment As Requested.

If the Court were inclined to maintain a judgment, Bear Ranch respectfully requests that it be altered or amended as set forth in its motion. Dkt. #261.

### A.    The breach of contract ruling should be removed.

First, HeartBrand's move to an open model caused a failure of contractual consideration and frustration of purpose. *Id.* at 7-11. The breach of contract finding therefore should be removed from the judgment, if one is maintained.

HeartBrand's response ignores Texas law, cited in Bear Ranch's brief, *id.*, in favor of Restatement comments and relies on inapplicable law from other states. *See* Resp. at 11-15. As noted in its motion, the restrictions Bear Ranch agreed to in the 2010 contracts existed for no purpose *other than* to protect the closed system that it joined. Dkt. #261 at 8-9. The *only* relief HeartBrand sought for Bear Ranch's alleged breaches of the restrictions was a buyback of "all cattle," a contractual remedy designed, again, to protect a closed system. *Id.* at 9. The abandonment of that system goes to the heart of the contracts and renders the restrictions unenforceable and the jury's breach finding unsupported.

It is not true, as HeartBrand claims, Resp. at 12, that a contract must be "entirely without purpose" in order to establish failure of consideration. As Bear

Ranch noted in its motion, failure of consideration can be total or partial. Dkt. #261 at 8 (citing *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738 (Tex. App.—Dallas 2012, no pet.); *City of the Colony v. N. Texas Mun. Water Dist.*, 272 S.W.3d 699 (Tex. App.—Ft. Worth 2008, pet. dism'd)). The cited Restatement provision does not, as HeartBrand states, define "failure of consideration," but the defense of frustration, which is in any case more than satisfied here. No party would enter into contracts with onerous restrictions prohibiting cattle and DNA sales, and requiring perpetual registration and DNA verification, if the cattle could be obtained without such restrictions, even at a somewhat higher price. Accordingly, HeartBrand does not cite evidence of a single buyer that has signed onto such restrictions since it began selling unrestricted Akaushi. *See* Resp. at 2.

Nor is there any inconsistency in Bear Ranch's positions concerning the contractual restrictions. *See id.* at 15. It is ironic HeartBrand makes the argument, given its flip-flop on core litigated issues over the last six months, including in refusing to buy back cattle it said were all it ever wanted, to protect its "closed" system. *See* Dkt. #244 (10/2/15 Ltr. to the Court at 1-7). Bear Ranch bargained for the restrictions, which it learned were meaningless and fraudulently induced given that HeartBrand was *not*, as it represented, the sole source of Akaushi outside of Japan. Based on HeartBrand's testimony at trial, the jury rejected Bear Ranch's position and accepted *HeartBrand's* representations of a unique and tremendously

valuable closed system. Now, there is no doubt that the system is not closed and, as before, the restrictions are not enforceable.

### B.     The fraud ruling should be removed.

Second, the fraud ruling should be removed. The jury found in favor of HeartBrand on its fraudulent inducement claim as to the Beeman Purchase in the context of its representations of astronomical values for the cattle and its forever closed model, representations that obviously were not true at the time of trial.

For similar reasons, the fraud ruling cannot stand because the jury could not have found injury resulting from fraud. The only injury it was asked to consider and found was "unjust enrichment," which the Court has ruled did not occur. Dkt. #240 at 11, 22. Texas law requires proof that fraudulent inducement "caused injury," not that such alleged fraud might theoretically cause injury in the future. *See Balogh v. Ramos*, 978 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1998, pet. denied) (stating elements of fraudulent inducement); *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 274 (5th Cir. 2012) ("Under Texas law, a plaintiff much show he was injured because of his reliance on a misrepresentation to recover for fraud."). HeartBrand's response does not present any evidence of actual harm from the alleged fraud, merely alleging "lost opportunities" and other alleged effects on its operations that the jury never heard, and which in no way formed the basis for the fraud finding. Resp. at 2-3, 16 n.5.

### C.    The unjust enrichment and exemplary rulings should be removed.

Third, for similar reasons, the unjust enrichment and exemplary damages findings should be removed from the judgment. There was no unjust enrichment, other than "theoretical," and there was no harm to support the exemplary damages finding. "[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery results from . . . fraud." TEX. CIV. PRAC. & REM. CODE §41.003. HeartBrand provides little substantive response to Bear Ranch's motions on these issues, simply waving the argument off as of "dubious legal relevance" without an explanation. Resp. at 16 & n.5. It says only, citing no evidence, that HeartBrand "was harmed" from alleged "lost opportunities." *Id.* at 16 n.5. The only harm it presented to the jury was about unjust enrichment, which never occurred.

### D.    The Court should grant the remaining relief requested in Bear Ranch's motion to alter or amend the judgment.

Finally, as to the remaining items requested in Bear Ranch's motion, HeartBrand either concedes that the Court should grant them if it maintains a judgment, or provides no reason to do otherwise.

With regard to the Twinwood and Spears injunctions, HeartBrand says only that the Court should defer ruling, so that the injunctions "can be decided as part of the new trial on the fraud remedy." Resp. at 27-28. But there was no fraud or breach finding as to the Twinwood and Spears Purchase cattle. Dkt. #240 at 6, 21.

The *only* bases for those injunctions was the Court's equitable powers and Bear Ranch's consent. *Id.* at 21. With HeartBrand now operating an open system, *all* basis for those injunctions is gone. The Court should not "defer" granting Bear Ranch's requested relief if it enters a judgment.

Regarding the judgment's buyback remedy for the HeartBrand Purchase cattle, HeartBrand again provides no reason to deny Bear Ranch's requested relief. The judgment allows a partial buyback, contrary to the terms of the contracts, at per-head prices that only apply to average-cost animals, not the high-cost premium animals hand-picked by HeartBrand. *See* Dkt. #261 at 16-20.

HeartBrand says *now* that a partial buyback "does not plainly contradict" the 2010 contracts, Resp. at 18, even though it "plainly contradicts" all of its litigation representations prior to its September 2015 about-face, to avoid the effect of the buyback remedies it requested and which the Court granted. For example:

- HeartBrand requested, post-trial, repossession of all "2010 Cattle" and "2010 Offspring" and genetics for the jury's herd-based buyback price of $6,284,000, Dkt. #179 (Def.'s Stmt. of Desired Remedies at 2, 3);

- HeartBrand said, in requesting entry of a judgment, "HeartBrand is entitled to repossession of all cattle acquired from HeartBrand and their offspring," Dkt. #193 (Defs.' Mot. for Entry of Final Judgment);

- It said that "the repossession remedy applies not just to the cattle purchased under the Full-Blood Contract, but to 'all cattle described in this agreement' . . . . That includes the offspring . . . . It makes sense that the Contract would be so designed, since the repossession remedy is intended to recover all—not just some—of the data and genetics that the

parties agreed represented confidential trade secrets that supported HeartBrand's preeminent position," *id.* at 11; and

- It said that "[t]he only way to enforce the contract as intended is for the repossession remedy to cover not only the cattle Bear Ranch purchased in 2010, but all offspring of those cattle, of whatever generation." *Id.* at 16.

The judgment's partial buyback of the costliest animals at the average prices for the entire HeartBrand Purchase herd is unsupported by contract and the verdict, provides HeartBrand with an obvious windfall, and should be removed.

## CONCLUSION

For these reasons, Bear Ranch respectfully requests that the Court grant a new trial, as to all liability and damages issues for the counterclaims HeartBrand won. If the Court decides to maintain a judgment, Bear Ranch respectfully requests that the judgment be altered or amended as requested in its motion.

Dated:  April 25, 2016

Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154200
James E. Zucker
State Bar No. 24060876
YETTER COLEMAN LLP
909 Fannin Street, Suite 3600
Houston, Texas  77010
(713) 632-8000
(713) 632-8002 (Fax)
pyetter@yettercoleman.com
jzucker@yettercoleman.com

Andrew R. Seger
State Bar No. 24046815
KEY TERRELL & SEGER LLP
4825 50th St., Suite A
Lubbock, Texas 79414
(806) 793-1906
(806) 792-2135 (Fax)

Attorneys for Plaintiff Bear Ranch, LLC

## Certificate of Service

I certify that on April 25, 2016 a copy of this document was served on all counsel of record using the Court's e-filing system.

/s/ James E. Zucker
James E. Zucker