IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:12-cv-14 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI | § | |
| ASSOCIATION, INC., | § | |
| and RONALD BEEMAN, | § | |
| | § | |
| Defendants. | § | |

**REPLY IN SUPPORT OF
HEARTBRAND'S MOTION FOR NEW TRIAL, MOTION TO ALTER OR
AMEND THE JUDGMENT, AND/OR MOTION FOR CLARIFICATION**

Defendant HeartBrand Beef, Inc. submits this Reply in support of its Motion for New Trial, Motion to Alter or Amend the Judgment, and/or Motion for Clarification (Dkt. # 262).

HeartBrand asks the Court to grant a new trial on remedies to receive evidence pertinent to the Court's remedies in light of the passage of time. If the Court grants a new trial on remedies, the rest of HeartBrand's motion (seeking certain non-substantive clarifications to the remedies and a substantive alteration or amendment of the auction and transportation terms in the judgment) would be moot. Because Bear Ranch seems to agree that there is a need for new evidence pertinent to remedies, a partial new trial should be granted.

**I.      The parties agree that new evidence on remedies is needed.**

HeartBrand identified three specific legal errors in the Final Judgment, as it relates to the remedy for fraud, that require a new trial on remedies. *See* Dkt. # 262 at 10-12. HeartBrand requests a new trial <u>only</u> for the limited purpose of deciding remedies. A new trial on liability, for which Bear Ranch again advocates in its response to HeartBrand's motion, is not warranted for the reasons HeartBrand has already briefed. *See* Dkt. # 269 at 7-16, 18-21.

Bear Ranch's remaining response—seemingly advocating preservation of a judgment Bear Ranch also seeks to vacate—is that HeartBrand should be willing to buy Bear Ranch's cattle today based on an averaging-based extrapolation of the trial evidence concerning the Bear Ranch herd as it existed in 2014. Bear Ranch disregards the lack of evidence to support that averaging-based extrapolation. At the time of trial, the jury was asked to determine a herd-based cost figure for the Beeman Purchase cattle. The $6.8 million amount determined by the jury was the cost of acquiring and maintaining those cattle as they existed in March 2014. But since the jury's verdict, the herd subject to the Final Judgment has changed in ways that were not and could not have been anticipated (due to facts about the herd that were unknown at the time of trial and to the passage of time). Some expensive cattle included in the 2014 herd are no longer alive; though HeartBrand cannot buy those cattle now, their expense still is incorporated in the 2014 figures. New calves

have been born since trial, and though the judgment applies the 2014 figures to these calves ratably, it is undisputed that the recently born calves have been produced for very little money. Bear Ranch has mismanaged the cattle since trial, reducing the commercial value in the herd for which HeartBrand would be called to account to Bear Ranch. And we now know that Bear Ranch has not kept the Beeman Purchase herd separate as was originally believed. The newly discovered overlaps between herds implicate the costs associated with those animals in ways unanticipated by the jury's verdict.[1]

Bear Ranch suggests that the Court should simply assume that these factors will all balance out—that it needs to over-recover for young calves because it is under-recovering for older, expensive animals. *See* Dkt. # 270 at 4. But there is no proof in the record that the number of young calves in 2016 bears any reasonable relationship to the "under-valued" animals Bear Ranch posits. There hardly could be. At trial, no party sought to forecast a prospective per-head remedy to be applied two years later. Moreover, Bear Ranch has no equitable entitlement to windfall profits on new calves that spring from fraudulently obtained livestock, for

---

[1] Bear Ranch's comment that HeartBrand never objected to the jury's herd-based findings (Dkt. # 270 at 5) ignores two critical facts. First, the jury's whole-herd cost findings are not being applied in the judgment on a whole-herd basis. Bear Ranch seeks to extrapolate from the jury's findings, not accept them on the basis on which they were calculated. Second, due to the passage of time, the 2016 herd to which the jury's whole-herd cost finding is applied in the Final Judgment is not the herd about which the jury made findings based on the trial record. HeartBrand could not have objected to a per-head averaging and extrapolation of the jury's findings prior to filing a motion for new trial, because the jury did not engage in a per-head averaging and extrapolation. Bear Ranch's attempt to manufacture a waiver issue is meritless.

purposes of balancing or for any other purpose. Bear Ranch's Response tellingly does not argue otherwise.

Furthermore, Bear Ranch's insistence that HeartBrand is seeking a windfall is misguided. HeartBrand requests a remedy consistent with the *Restatement*, which provides that a wrongdoer receives credit for money "expended in acquiring or preserving the property in question," but he will be "denied any credit" for his "services." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51(5) (2011) [hereinafter *Restatement*]. Bear Ranch is not entitled to be made whole for the costs of owning cattle that it fraudulently obtained. *Id.* Rather than addressing this standard or offering "evidence tending to show that the true extent of unjust enrichment is something less," *id.* § 51 cmt. i, Bear Ranch merely pleads that it may suffer consequences from its fraud.[2]

At bottom, the herd of cattle to which the Court's Final Judgment remedy for fraud applies is not the same herd for which the jury determined acquisition and maintenance costs of approximately $6.8 million. Applying a per-animal buyback price for the current herd based on a derivate of the total cost of the 2014 herd is not supported by the evidence in the record. A new trial on remedies is needed so that the Court can receive evidence of the production and maintenance costs of the

---

[2]  Bear Ranch repeatedly references the full-herd basis of costs/buyback being what is contemplated by the contracts. *See, e.g.*, Dkt. # 270 at 5, 6. But the Beeman Purchase remedy is for fraud, not breach of contract. The fairness of a "full contractual buyback" is not part of the determination of a fraud remedy to prevent unjust enrichment.

<u>current</u> herd of Beeman Purchase cattle and that a windfall to Bear Ranch for the inflated "costs" of Beeman Cattle Offspring can be avoided.

## II.     Clarification of the Final Judgment is appropriate.

If the Court does not grant a new trial on remedies, clarification of the Final Judgment under Rule 60(a) is appropriate on certain points. First, Defendants urged that the Court explicitly confirm the judgment's application of the buyback-or-auction election to the Beeman Cattle, not to the Beeman Cattle Offspring. Bear Ranch responds that if the buyback and auction elections do not apply to Beeman Cattle Offspring, then HeartBrand should be ordered to buy the animals. Dkt. # 270 at 8-9. In other words, in response to a minor, nonsubstative clarification of the Final Judgment, Bear Ranch requests a different, substantive alteration to the judgment—one that would remove altogether the constructive trust option provided in Paragraph 15 of the Final Judgment and disregard the fact that the Court used two distinct terms ("Beeman Cattle" and "Beeman Cattle Offspring") to describe the affected assets. If Bear Ranch wanted to alter or amend the judgment in this fashion, it ought to have moved for such relief under Rule 59(e).

Second, HeartBrand requested clarification that the constructive trust described in paragraph 15 of the Final Judgment applies to any affected animals as to which HeartBrand did not elect purchase or auction. Bear Ranch appears to

concede that the purchase, auction, and constructive trust options apply to all affected animals. Dkt. # 270 at 7-8.

Third, HeartBrand requested clarification that the constructive trust provided in the Final Judgment applies to <u>all</u> cattle sales, including sales of beef, not just sales of live animals or genetics. Dkt. # 262 at 8-9. Bear Ranch responds that "sales of beef or beef products bear no relationship to the unjust enrichment remedy for fraud" because "Bear Ranch has always been entitled to sell the beef" under the contracts. Dkt. # 270 at 9, 10. Bear Ranch is mixing up its causes of action and ignoring the nature of an unjust enrichment remedy.

Bear Ranch committed the wrong of fraudulent inducement and thereby obtained cattle assets it would not otherwise have. The unjust enrichment remedy is <u>not</u> designed to force Bear Ranch to live up to the promises it made (under which one assumes Bear Ranch would have obtained the cattle, but kept them under contract); rather, the unjust enrichment remedy is designed to disgorge Bear Ranch's ill-gotten gains to reflect the true but-for world in which Bear Ranch honestly disclosed its intentions and thus would not have obtained the cattle at all.

The central premise of an unjust enrichment remedy is that "[a] person is not permitted to profit by his own wrong." *Restatement* § 3. In cases of fraud by misrepresentation, "[a] transfer induced by fraud or material misrepresentation is subject to rescission and restitution. The transferee is liable in restitution as

necessary to avoid unjust enrichment." *Id.* § 13. Under Texas law, rescissionary remedies restore the parties to the position they would have been in had they not entered the transaction. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 346 (Tex. 2011).[3]

Whether Bear Ranch would have been able to sell beef if it had obtained the Beeman Cattle under the contract restrictions is of no relevance to the question at hand. Absent its fraud, Bear Ranch would not have the cattle. Including beef sales in the constructive trust is necessary to ensure Bear Ranch does not "profit by [its] own wrong." Otherwise, if beef sales were exempted from the constructive trust, Bear Ranch could slaughter every animal subject to the constructive trust and effectively neuter the trust's force as a remedy against unjust enrichment. Clarification that the constructive trust in the Final Judgment covers <u>all</u> proceeds attributable to the Beeman Cattle and Beeman Cattle Offspring is therefore necessary to prevent Bear Ranch from sidestepping the fundamental purpose of the

---

[3] The logical fallacy in Bear Ranch's reasoning (that absent its fraud, the fraudulently induced transaction still would have gone forward, just on different terms) is not unlike the logical fallacy observed and rejected in *Formosa Plastics*, where a plaintiff claimed it had been induced by misrepresentations to enter into a contract at too low a price, and it would have tried to charge a higher price had it known the truth. The Supreme Court recognized that in misrepresentation cases, the but-for world cannot be based on an "entirely hypothetical, speculative bargain that was never struck and would not have been consummated." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998). Bear Ranch's insistence that beef sales are outside the scope of the constructive trust is a request for relief that is "too remote, uncertain [and] based purely on conjecture"—conjecture that the transaction would have still have occurred even with Bear Ranch's misrepresentations regarding the applicability of the contract restrictions. *Allstate Ins. Co. v. Rehab Alliance of Tex., Inc.*, 2015 WL 1843249, at *6 (Tex. App.—Houston [14th Dist.] Apr. 21, 2015, no pet. h.).

constructive trust—preventing Bear Ranch from profiting off of any of the Beeman Purchase animals in its possession, regardless of what rights it may have had in those animals had it not obtained them via fraud.

### III. The Final Judgment should be amended as to the auction-price guaranty and the allocation of transportation costs for the 2010 cattle.

HeartBrand requests that the Court reopen or amend the judgment to remove the requirement that HeartBrand make up the difference (and effectively serve as a guaranty to Bear Ranch) on any cattle sold at auction where the sale price of the animal does not cover the prescribed buyback amount plus maintenance costs. Dkt. # 262 at 13-16. Bear Ranch does not deny that it never requested this guaranty. Nor does Bear Ranch direct the Court to any authority supporting the notion that a victim should protect a wrongdoer from potential losses resulting from the wrongdoer's fraudulent conduct. The law makes Bear Ranch liable for such losses. *See* RESTATEMENT § 51 cmt. j (conscious wrongdoer is accountable for both the profits and losses of its use of the property obtained by fraud).

Bear Ranch insinuates that HeartBrand's objection calls the value of Akaushi cattle into question. Dkt. # 270 at 12. Leaving Bear Ranch at the risk of loss on its individual animals is hardly inconsistent with recognizing the demonstrated marketability of Akaushi genetics in general. Bear Ranch's management (or mismanagement) of individual animals will necessarily affect the price at which those animals sell. Making HeartBrand responsible for every

8

shortfall against the extrapolated, averaging-based figure in the judgment inequitably makes HeartBrand responsible for Bear Ranch's own conduct. There is no equitable basis to assign to HeartBrand sole financial responsibility for the condition and quality of individual animals that have been out of HeartBrand's control for several years. This is particularly so where Bear Ranch entirely failed to turn over performance and lineage data during the course of its relationship with HeartBrand (in violation of contract terms, Association rules, and its representations), and the newly discovered evidence shows the cattle were mismanaged and their lineage inadequately documented during that time (despite Bear Ranch's constant claims that it was maintaining complete records). *See* Dkt. # 242 at 3-5.

Bear Ranch also implies that HeartBrand may not organize a true auction but may instead "coordinate" "to arrange sales (either to others or to itself) at below-market prices." Dkt. # 270 at 11. This is nothing more than rank speculation that HeartBrand would engage in collusion. Speculation is no basis for inequitably shifting Bear-Ranch-caused shortfalls in cattle prices below extrapolated, averaging-based cost figures, especially where Bear Ranch has conceded that averaging-based figures for particular cattle do not work. The Final Judgment should remove any HeartBrand-funded guaranty of cattle prices.

HeartBrand also requests that the Court amend the judgment to require Bear Ranch to pay for all transportation costs of returning the 2010 Cattle, rather than those transportation costs being split between the parties. Dkt. # 262 at 17-19. The contract is clear that Bear Ranch, as the breaching party, should bear the costs of transportation. Bear Ranch makes no plausible argument otherwise, offering instead only a passing reference to "custom in the industry." Custom has no bearing on the allocation of transportation costs here where the allocation of those costs are specifically addressed in the parties' contract.

## **CONCLUSION**

HeartBrand requests that the Court grant HeartBrand's motion for new trial and order a new trial <u>only</u> on remedies. Alternatively, HeartBrand prays that the Court grant relief under Rule 59(e) and 60(a) and amend the Final Judgment to clarify the scope of relief provided therein.

                                             Respectfully submitted,

                                             VINSON & ELKINS L.L.P.

                                             */s/ James A. Reeder, Jr.*
                                             James A. Reeder, Jr.
                                             Attorney-in-Charge
                                             Texas Bar No. 16695010
                                             Federal Bar No. 12381
                                             1001 Fannin Street, Suite 2500
                                             Houston, Texas 77002-6760
                                             Telephone: 713-758-2636
                                             Facsimile: 713-615-5033

OF COUNSEL:

Jason M. Powers
Texas Bar No. 24007867
Federal Bar No. 23567
Stacy M. Neal
Texas Bar No. 24060322
Federal Bar No. 892868
J. Eric Pardue
Texas Bar No. 24074852
Federal Bar No. 2312738
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

     I hereby certify that on April 25, 2016, a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system.

                                             */s/ Stacy M. Neal*
                                             Stacy M. Neal