UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-14 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI | § | |
| ASSOCIATION, INC., | § | |
| and ROBERT BEEMAN. | | |
| | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

This ruling resolves HeartBrand's request for attorneys' fees. HeartBrand initially requested close to $5 million in attorneys' fees, expenses, and costs.[1] Docket Entry No. 246; 258. The Court previously limited that request to those fees, expenses, and costs incurred in "enforcing the agreement" between the parties. It classified which of the many claims and counterclaims were "recoverable" under this provision—meaning Bear Ranch was required to pay fees for work related to those claims—and which were not. *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 2016 WL 1588312, at *3–*4 (S.D. Tex. Apr. 20, 2016). The Court recognized, however, that much of the work done on the unrecoverable claims would have been incurred

---

[1] This amount was calculated using the lodestar method—multiplying the reasonable number of hours expended by the reasonable hourly rate for the work performed. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995).

1

in pursuing the recoverable claims (or defeating the recoverable the counterclaims). *Id.* at *4–*5 (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006)). To achieve a fair apportionment, the Court thus ordered HeartBrand to submit a revised fee request that did two things: (1) eliminated those fees related solely to the damages work on the nonrecoverable fraud claims, as the Court determined that work was subject to segregation; and (2) proposed a percentage of the remaining attorneys' fees that would have been recovered absent the unrecoverable claims. *Id.* at *5. For the latter determination, the Order recommended that the parties consider proxies such as the number of witnesses at trial who testified concerning aspects of the "recoverable" claims. *Id.* HeartBrand's revised request (Docket Entry No. 275) is now before the Court. to which Bear Ranch had had multiple opportunities to respond (Docket Entry Nos 276, 282).

## I.   The Fee Calculation

### A. The Segregation for Work on Fraud Damages

Per the Court's order, HeartBrand excluded those fees solely related to its unrecoverable fraud claims. This amounted to a total reduction of $592,340.94 made up of: 470.25 hours of attorney time, representing $236,697.50 in fees; $352,533 in expert fees; and $5,467.74 in other expenses. Docket Entry No. 275. Bear Ranch does not dispute that this reduction adequately covers the work exclusively done on HeartBrand's fraud claims. The Court accepts this reduction.

### B. The Percentage Reduction

HeartBrand then proposed percentage reductions of the remaining fees by dividing the litigation into three phases:

- Phase 1: Beginning of litigation through summary judgment
- Phase 2: Summary judgment through the jury verdict
- Phase 3: Post-trial to present

For each phase, HeartBrand used a different benchmark for the reduction.

The Court agrees that the division of the litigation into phases is reasonable and provides the most accurate reflection of the fees and expenses that would have been spent in a case with just recoverable claims. Although Bear Ranch contends there is "no rational basis" for dividing this litigation into phases to determine reasonable attorneys' fees, the mix of claims was different during each of the three phases as both summary judgment and trial winnowed the number of claims. The Court itself has emphasized that the "summary judgment ruling changed the complexion of the case." *See Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 2015 WL 5178120, at *3 (S.D. Tex. Sept. 4, 2015). So much so that it resulted in the Court granting a trial continuance and allowing HeartBrand to assert a new damages model. Docket Entry No. 110, at 1 (noting these two allowances "based on the changed landscape of the case resulting from Court's summary judgment ruling").

The trial obviously substantially changed the nature of the case, with post-trial briefing focusing primarily on the proper remedy for the claims on which HeartBrand prevailed. Indeed, another court has found a phased system useful. *See Eagle Suspensions, Inc. v. Hellman Worldwide Logistics, Inc.*, 2015 WL 252442, at *3–*4 (N.D. Tex. Jan. 20, 2015) (dividing case into six phases to determine the "percentage of fees that should be excluded at each stage for work relating solely to claims other than the [recoverable claim]"). The whole point of the Court's mandate to propose a percentage allocation for the nonsegregable work was to determine how much would have still been incurred absent the unrecoverable claims; a phased system accomplishes this more precisely than would a uniform allocation.

The next task is to determine the most reasonable allocation for each phase.

<u>Phase 1 (Filing–Summary Judgment Ruling)</u>: HeartBrand did not submit a percentage reduction for all Phase 1 work. Instead it removed only those fees that were expended preparing part of HeartBrand's response to Bear Ranch's summary judgment motion. Docket Entry No. 275, at 3–4. This reduction is insufficient even though the Court will award HeartBrand fees for the vast majority of work during this period.

During Phase 1, HeartBrand was largely on the defensive beating back Bear Ranch's attempts to invalidate the contractual restrictions (with the passage of time and jury verdict, it can be easy to forget that Bear Ranch actually filed this suit).

*Bear Ranch, LLC*, 2015 WL 5178120, at *2–*4. And much of Phase 1 expenses were devoted to discovery—an area of substantial overlap among all the claims. The Court agrees that most of the discovery would have been needed even absent the unrecoverable fraud claims HeartBrand asserted (or the unrecoverable contract claim on which Bear Ranch prevailed at summary judgment). But the fraud claims, which focused on the "handshake" deals that occurred after the parties' initial transaction in 2010, no doubt required some additional discovery.

Based on the Court's familiarity with this complex litigation, it concludes that HeartBrand is entitled to 80% of its fees incurred in Phase 1; that percentage is a reasonably accurate reflection of the amount of work that would have been incurred absent the unrecoverable claims.[2] This reduction is also sufficient to remove any work that was done solely on behalf of AAA or Beeman.[3]

Phase 2 (Summary Judgment Ruling–Trial): HeartBrand asserts that it should be awarded 76% of its fees incurred during this time (except for those fees relating

---

[2] If anything, 80% understates the amount of Phase 1 work that would have been incurred solely for recoverable claims.

[3] Although Bear Ranch insists that there was significant work done solely on behalf of AAA and Beeman that should warrant a further departure, it has made no such showing. Bear Ranch lists time entries exclusive to those parties for tasks like waivers of service, document collection, and disclosure statements that add up to very little time relative to the entire litigation. The Court does not recall issues exclusive to AAA and Beeman becoming a focus of the case. Review of the billing records confirms this. Thus any amounts attributable solely to work on behalf of AAA and Beeman are minimal and are included in the 20% reduction of Phase 1 work that the Court concludes would not have been necessary had only the recoverable claims been pursued/defended against.

to work on fraud damages that has already been excluded in full); it used trial time as a barometer and found that 804 of 1,057 total trial minutes—or 76%—were expended on those claims this Court has already deemed recoverable. Docket Entry No. 275, at 5. The Court agrees that trial time is an accurate measure of what amount of fees were recoverable; in fact, minute-by-minute allocation is an even more refined measure than the witness-by-witness allocation the Court suggested. HeartBrand is therefore entitled to 76% of its fees and expenses incurred in Phase 2.

Phase 3 (Post-trial): HeartBrand used a different benchmark for Phase 3—pages in post-trial briefing. Of the total 304 pages filed, only 133 pages —or 44%—were attributable to recoverable claims. Docket Entry No. 275, at 5–6. This point of reference reasonably reflects the amount of work post-trial that was expended on recoverable claims. *See* Docket Entry No. 276, at 6. Indeed, Bear Ranch embraces the number, pushing for it to be used for the entire litigation. HeartBrand is thus entitled to 44% of its fees incurred during Phase 3.[4]

---

[4] The Court sought clarification as to whether the request for fees on fees (that is, the time spent litigating the fee request) was included in HeartBrand's proposed phases; it was. *See* Docket Entry No. 286. This Court has discretion to award costs and fees for time spent litigating a fee request based on the merits of the underlying fee request, and it will do so in this case. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995); *see DaSilva v. U.S. Citizenship & Immigration Servs.*, 599 F. App'x 535, 544 (5th Cir. 2014) (affirming district court decision to deny fees when fee litigation was the result of counsel's initial failure to keep an accurate timesheet). HeartBrand's fee litigation resulted in it obtaining a majority of the original request, though with a significant reduction. The partial award of work spent on fees litigation corresponds to its partial success on the fee request.

The Court will thus applying the following percentages to the amounts billed excluding what has already been segregated as related only to the fraud damages:

Phase 1: 80%

Phase 2: 76%

Phase 3: 44%

### C. Costs and Expenses

HeartBrand did not apply its phased reductions to its vendor expenses, which mostly involve expenses for litigation services. Although HeartBrand is entitled to expenses and costs under the terms of the contract, those expenses are limited just like the attorneys' fees to those amounts expended to "enforce the agreement." *Bear Ranch, LLC*, 2016 WL 1588312, at *3–*4. The Court therefore reduces the vendor costs and expenses for each phase using the same percentage reductions used to reduce the attorneys' fees.

D. **Calculation**

| Phases | Fees | Vendor Expenses | % Allocation | Total |
|---|---|---|---|---|
| 1 | $1,853,987.21 | $769,955.28 | 80% | $2,099,153.99 |
| 2 | $987,955.42 | $37,381.55 | 76% | $779,256.10 |
| 3 | $830,207.77 | $36,980.50 | 44% | $381,562.84 |
| Total | | | | $3,259,972.93 |

II. **Reasonableness of the fee request**

The Court now reviews the reasonableness of the award; which can be adjusted up or down if relevant factors show such an adjustment is necessary to reach a reasonable fee. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). In this calculus, the Court considers the following eight factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.*; *Bennigan's Franchising Company, LLC v. Team Irish, Inc.*, 2011 WL 5921540 (N.D. Tex. 2011) (applying these factors to contractual award of fees). Evidence of each factor is not necessary, and the Court will only address a few that are particularly probative or contested here. *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex.App.—Dallas 2008, no pet.).

Requested fees must bear a reasonable relationship to the amount in controversy or to the complexity of the case. *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) ("[T]he most critical factor in determining an award of attorneys' fees is the 'degree of success' obtained by the victorious plaintiffs."). Neither of those considerations is tied directly to the amount of damages ultimately awarded, so awards have been held reasonable even when the amount of attorneys' fees far surpasses the amount of actual damages. *See Chaparral Texas, L.P. v. W. Dale Morris, Inc.*, 2009 WL 455282, at *13–*15 (S.D. Tex. Feb. 23, 2009), *amended*, 2009 WL 1810125 (S.D. Tex. June 23, 2009) (collecting Texas cases demonstrating that the complexity of litigation can justify a higher fee award even when the amount recovered was minimal in comparison).

The stakes in this case were substantial. Tens of millions of dollars were potentially in controversy based on expert testimony and the jury's advisory award exceeded $20 million. Although HeartBrand may have not achieved a significant financial recovery in the judgment, the equitable relief it obtained has significant economic value. By successfully establishing the enforceability of its contractual restrictions—for both sides was the primary focus throughout the case, HeartBrand preserved its then-existing business model. Indeed, Bear Ranch viewed the value of the restrictions to be significant enough to bring this case, and to assert antitrust claims which are notoriously expensive to pursue. Bear Ranch's devotion of substantial resources to the case supports the reasonableness of HeartBrand doing the same.

And even if HeartBrand's successes were disproportionate to the fees and costs award, "disproportion alone does not render the award of attorneys' fees excessive." *Northwinds Abatement, Inc.*, 258 F.3d at 355 (affirming $712,000 in attorneys' fees on recovery of $74,570 in actual damages on various state statutory and common law claims). A disproportionally large fee is more likely to be found excessive if the prevailing party's counsel overprepared by expending more time and resources than warranted by the legal issues or the amount in controversy. *See, e.g.*, *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 234 (5th Cir. 2000)

($529,209.88 in fees for one year of work by 11 attorneys and 6 paralegals was excessive "for what was—or at least should have been—simply a coverage dispute" about whether the insurer was obligated to indemnify and defend an additional insured against a $435,000 negligence claim). That was not the case here. This Court's familiarity with the complexities of this case and the amount in controversy, the amount of work required to successfully defend against Bear Ranch's multiple attempts to invalidate the contract, the similar amount of resources expended by the other side, and the duration of this case leads to the conclusion that the time spent was proportionate.[5]

Nor do HeartBrand's attorneys' rates lead this Court to alter the fee award. Attorneys' fees are to be calculated at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Court considers the relevant community to be the judicial district in which the litigation occurred (the Southern District of Texas), not the particular division in which the case was pending. *Comar Marine Corp. v. Raider Marine Logistics, LLC*, 2016 WL 99208,

---

[5] HeartBrand provided hundreds of pages of billing records that included the number of hours expended and detailed what tasks were completed. Although HeartBrand's attorneys may have block-billed by describing multiple activities in one time entry, there is more than sufficient detail to determine whether the hours were reasonably expended. *See OneBeacon Ins. Co. v. T. Wade Welch & Assos*, 2015 WL 5021954, at *8 (S.D. Tex. Aug. 24, 2015) ("The court is unconcerned with the block billing, given the level of detail on the bills."); *contrast La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) ("[Billing] records contain vague entries such as "revise memorandum," "review pleadings," "review documents," and "correspondence.").

at *4 (W.D. La. Jan. 7, 2016); *see Schlieper v. City of Wichita Falls*, 2003 WL 21355982, at *3 (N.D. Tex. June 6, 2003) ("[T]he Northern District of Texas . . . is the relevant community. It takes the same degree of skill, same time, same talents and same abilities for a Wichita Falls located attorney to prepare and try a federal civil case in the Dallas Division as it does for a Dallas located attorney to try such a case in the Wichita Falls Division.").

HeartBrand submitted billing rates varying from $684 for its most experienced attorney who has practiced for 25 years and developed a strong reputation, and $606 for another experienced partner, to associates who billed at a rate from $400 to $492 per hour. Docket Entry No. 246-1 at ¶¶10–14. These hourly rates are consistent with the prevailing market rates for attorneys in the Southern District of Texas who handle complex commercial litigation, which tends to see (along with patent litigation) the highest rates among the trial bar. *See Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) ("The record shows that the reduced hourly rates of $577.50, $542.50, and $280 were reasonable, customary rates."); *Lotte Chem. Titan (M) Sendirian Berhad v. Wilder*, 2014 WL 7151569, at *7 (S.D.Tex. Dec.12, 2014) ($500 per hour for partners and $375 per hour for associates). These rates also find support from the State Bar Survey, which shows that the median hourly rate charged by an attorney in the antitrust practice area in Houston was $476 per hour, and the median hourly rate charged by an attorney in a

firm of more than 400 attorneys in Houston, like Vinson & Elkins, HeartBrand's counsel, was $458. Docket Entry No. 276-1 at 9, 13. Finally, the rate charged by opposing counsel is also some evidence of what a reasonable rate is for a case like this one. And the rates charged by its lead counsel, also a well-recognized commercial litigator, are even higher at $725 to $760 per hour. *See* Docket Entry No. 247-2 at 2, 9. This Court thus finds HeartBrand's rates to be reasonable and sees no reason to adjust them.

## CONCLUSION

HeartBrand originally requested just about all its fees and expenses incurred in this litigation, a number close to $5 million. The Court has closely scrutinized that request, discerned which claims were "recoverable," required elimination of segregable amounts, and apportioned the remaining nonsegregable amounts. The Court's review resulted in a second round of briefing.

The Court recognizes that by utilizing segregation and then apportionment for three different phases, this was not the simplest way to calculate the fee award. But the more important concern was devising most closely approximated the amount of fees that would have been incurred in a case involving solely the recoverable claims and counterclaims. The Court is convinced that the resulting award of $3,259,972.93 is reasonable in light of all the relevant considerations.

This amount will be included in the amended final judgment the Court hopes to soon issue. HeartBrand may also file another fee request for its work on appeal if it succeeds in preserving its judgment.

**SIGNED** this 30th day of June, 2016.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by Designation