United States District Court
Southern District of Texas
**ENTERED**
August 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BEAR RANCH, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-14 |
| | § | |
| HEARTBRAND BEEF, INC., | § | |
| AMERICAN AKAUSHI | § | |
| ASSOCIATION, INC., | § | |
| and ROBERT BEEMAN. | | |
| | | |
| Defendants. | | |

## AMENDED FINAL JUDGMENT

Plaintiff Bear Ranch, LLC brought five claims against defendants HeartBrand Beef, Inc., The American Akaushi Association, Inc., and Ronald Beeman. Counter-Claimants HeartBrand and Beeman bought six claims against Bear Ranch. Prior to trial, the court made the following rulings:

- On November 26, 2013, the Court dismissed Bear Ranch's claim for a declaratory judgment concerning its defense of fraudulent inducement of contract (Claim 2). Dkt. #70.

- On March 18, 2014, the Court ruled on Bear Ranch's motion for summary judgment. Dkt. #91. Specifically, the Court:

    o granted partial summary judgment to Bear Ranch on its declaratory claim that the Full-Blood Contract restrictions from July 2010, with the exception of certain provisions, do not apply to the cattle purchased from Spears, Beeman, and Twinwood (Claim 4);

1

- o granted summary judgment to Bear Ranch on HeartBrand's claims regarding alleged misrepresentation about Bear Ranch's purpose in acquiring the cattle, while reserving rulings on other alleged misrepresentations (Counterclaims 1 and 5);

- o granted summary judgment to Bear Ranch on Beeman's fraud claim (Counterclaim 2); and

- o granted summary judgment to Bear Ranch on HeartBrand's contract claim relating to failure to sell offspring to HeartBrand, but ruled that other alleged breaches relating to AAA registration, enrollment, reporting, and rules remained (Counterclaim 6).

On May 16, 2014, the Court called this case for trial as to the parties' remaining claims. Plaintiff Bear Ranch and defendants HeartBrand, American Akaushi Association, and Beeman appeared and announced ready for trial. Having determined that it had jurisdiction over the subject matter and the parties in this case, the Court impaneled and swore in the jury, which heard the evidence and arguments of counsel.

- On May 27, 2014, the Court dismissed Bear Ranch's contract claim against HeartBrand (Claim 3). Minute Entry of 5/27/14.

The Court then submitted questions, definitions, and instructions to the jury, but not with regard to defendant American Akaushi Association. In response, the jury made findings, including advisory findings, that the Court received, filed, and entered of record. The jury found in response to the Court's questions that:

- HeartBrand did not fraudulently induce Bear Ranch to agree to the HeartBrand purchase;

2

- Bear Ranch did not fraudulently induce HeartBrand to enter into the 2010 Agreements;

- Bear Ranch did fraudulently induce HeartBrand's approval of the Beeman Purchase;

- Bear Ranch did not fraudulently induce HeartBrand to approve the Twinwood Purchase;

- Bear Ranch was unjustly enriched by purchasing cattle in 2011 from Beeman in the amount of $23,199,000;

- Harm to HeartBrand resulted from fraud by Bear Ranch by clear and convincing evidence with respect to the Beeman purchase, and $1,825,000 was an appropriate punitive remedy for that conduct;

- Bear Ranch failed to comply with the 2010 Full-Blood Contract or F-1 Program Contract;

- Bear Ranch's failure to comply was not excused; and

- Bear Ranch spent certain reasonable amounts acquiring, producing, and maintaining the cattle from the various cattle purchases, including:

    o Akaushi cattle that Bear Ranch acquired in the HeartBrand Purchase and any offspring of those animals: $6,034,000;

    o Akaushi cattle that Bear Ranch acquired in the Beeman Purchase and any offspring of those animals: $6,832,000;

    o Akaushi embryos in Bear Ranch's possession: $90,000; and

    o Straws of Akaushi semen in Bear Ranch's possession: $160,000.

The Court then ruled on HeartBrand's requested equitable remedies, sitting as a finder of fact. Dkt. #240.

3

Pursuant to the Court's pretrial rulings, the jury verdict, and the Court's ruling on HeartBrand's equitable remedies, it is ORDERED, JUDGED, and DECREED that:

1. The Court orders that Bear Ranch take nothing by its suit against the Defendants, including its claims that: (i) Defendants fraudulently induced Bear Ranch to enter into the Full Blood Contract (attached as Exhibit 1) and F1 Program Contract (attached as Exhibit 2), executed by Bear Ranch and HeartBrand on July 8, 2010; (ii) Bear Ranch has a defense of fraudulent inducement that defeats any enforcement by Defendants of any contract with Bear Ranch; and (iii) Defendants breached the terms of the Full Blood Contract and F-1 Program Contract.

2. The Court declares that the Full Blood Contract and F-1 Program Contract do not of their own force apply to cattle purchased by Bear Ranch from Tony Spears, Ronald Beeman, and Twinwood Cattle Company, Inc. However, equitable remedies pertaining to these cattle are addressed below.

3. Based on the jury's verdict, Bear Ranch is liable for fraudulent inducement committed against HeartBrand in connection with Bear Ranch's 2011 purchase of full-blood Akaushi cattle from Beeman.

4. The Court orders the imposition of a constructive trust over the "Beeman Cattle,"[1] Bear Ranch will hold these cattle in constructive trust for

---

[1] The "Beeman Cattle" are those animals acquired by Bear Ranch from Ronald Beeman.

HeartBrand, which will have an equitable claim to the cattle, and Bear Ranch will surrender the cattle to HeartBrand upon receipt of payment for Bear Ranch's costs. The trial record reflects there were 1,800 head of cattle from the 2011 Beeman sale, and the jury found that the buy-back price, reflecting the reasonable amount of acquiring, producing, and maintaining these cattle, was $6,832,000, or $3,796 per head. HeartBrand will pay to Bear Ranch by wire transfer $3,796 per head, plus the maintenance costs detailed below, simultaneously with the transfer of title of the cattle. The parties will split the cost of transporting the cattle from Bear Ranch's facilities in Colorado and Texas.

5. If HeartBrand does not wish to reacquire the cattle on these terms, the Court authorizes a judicial sale or auction process, to be completed within 180 days from the date of this order. HeartBrand will be able to determine whether its standard contractual restrictions apply. Proceeds from the judicial sale or auction up to $3,796 per head, plus the maintenance costs detailed below, will be paid to Bear Ranch, with any proceeds above that amount paid to HeartBrand. In the event that HeartBrand does not wish to either reacquire the Beeman Cattle on the terms described in Paragraph 4 or does not wish to proceed with a judicial sale or auction of the Beeman Cattle, the Beeman Cattle will remain in Bear Ranch's possession with HeartBrand maintaining a constructive trust over the sale of any cattle as described below in paragraph 15.

6. The Court further orders that HeartBrand shall recover exemplary damages from Bear Ranch in the amount of ONE MILLION, EIGHT-HUNDRED-TWENTY-FIVE THOUSAND AND NO/100THS DOLLARS ($1,825,000). HeartBrand may elect to credit this amount against any amount due under paragraph 9 by written notice to Bear Ranch. Post-judgment interest shall accrue on this amount, at the rates set forth in 28 U.S.C. § 1961(a), from the date of this judgment to the date the amount is paid or credited.

7. Based on the jury's verdict, Bear Ranch is liable for breach of the 2010 Full-Blood Contract and the 2010 F1 Program Contract, each executed by Bear Ranch and HeartBrand on July 8, 2010.

8. As a remedy for its breaches, no later than the sixtieth day after this judgment is signed, Bear Ranch shall deliver to HeartBrand the 2010 cattle and their offspring; the straws of semen and embryos identified on the attached Exhibit A; all DNA samples taken from any of those animals, semen, or embryos; and all "Cattle Records"[2] pertaining to any of those animals, semen, or embryos.

9. For the items described in paragraph 8, HeartBrand shall pay to Bear Ranch. in the manner described in paragraph 13, the following amounts:

    a.    $3,898/head of cattle based on the jury's finding as to amounts Bear Ranch reasonably spent acquiring, producing, and

---

[2] "Cattle Records" are any documents or data compilations relating to the specified animals or genetics, including DNA test results; parentage and breeding records; health and immunization records; calving records; and records of birth weight, weaning weight, and calving ease.

6

        maintaining the 2010 cattle and their offspring that were living as of March 31, 2014;[3]

    b.    $90,000.00, based on the jury's finding as to amounts Bear Ranch reasonably spent acquiring, producing, and maintaining Akaushi embryos;

    c.    $160,000.00, based on the jury's finding as to amounts Bear Ranch reasonably spent acquiring, producing, and maintaining Akaushi semen; and

    d.    Additional maintenance costs of $525 for each mature bull and for each mature cow not in production.[4]

10.    The Court orders that the deliveries described in paragraph 8 shall be made to HeartBrand's ranch located at 732 Jeff Davis Road, Harwood, Texas 78632, or another location or locations to be determined by HeartBrand.[5]  Bear Ranch will pay the cost of transporting the animals.

11.    As to any animal or genetics delivered pursuant to paragraph 8 that arrives at the delivery point in a condition other than a good merchandising physical condition, or which is determined within 90 days after delivery to have a disease or health defect affecting the animal's suitability as a breeding or feeding animal, or to not be full-blood Akaushi, HeartBrand may refuse to take delivery of

---

[3] This amount is calculated as $3,898 (the average price per head extrapolated from the jury's verdict) per head of remaining 2010 cattle (excluding cattle that have died, were designated terminal by Bear Ranch, or that are already beyond their productive lives).

[4] No additional maintenance costs are required for fed calves or mature cows in production, because the calf price being paid already exceeds the maintenance and production cost of such animal units.

[5] Bear Ranch and HeartBrand may, without requesting permission of the Court, mutually agree to substitute another delivery location or locations and to do so on such conditions as they may mutually agree.

7

or revoke acceptance of said animal or genetics. Such animals or genetics shall be returned to Bear Ranch at Bear Ranch's election and at its sole expense. Any payments made by HeartBrand for such animals or genetics shall be refunded within 30 days, or may be credited against remaining amounts owed by HeartBrand to Bear Ranch at HeartBrand's option.

12. The Court further orders that until such time as the items described in paragraph 8 are delivered, that Bear Ranch take at its own cost all commercially reasonable steps to care for and preserve the animals, genetics, and data in its possession that are subject to delivery, and shall do so in a commercially reasonable fashion. HeartBrand shall be entitled to inspect the cattle during ordinary business hours to verify that Bear Ranch has taken such commercially reasonable steps beginning from the time this judgment is signed to the time any deliveries contemplated herein occur.

13. HeartBrand shall pay the amounts specified in paragraph 9 on the following schedule: 50% of the amount due shall be paid within three business days after delivery; and the remaining 50% shall be paid no later than 120 calendar days after delivery.

14. As to all surviving "Twinwood Cattle,"[6] or "Spears Cattle,"[7] remaining in Bear Ranch's possession now or in the future ("Covered Cattle"), the Court finds that unrestricted sales of those cattle will undermine the integrity of HeartBrand's Akaushi program, causing irreparable injury to HeartBrand, and would also result in Bear Ranch being unjustly enriched on all the cattle it has obtained, including the 2011 Cattle it obtained under fraudulent pretenses. Accordingly, the Court orders that Bear Ranch (and its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them with actual notice of this judgment) shall be and hereby are permanently required to abide by any restrictions included in the 2010 Full-Blood Contract (attached as Exhibit C) and 2010 F1 Program Contract (attached as Exhibit D) with respect to the Covered Cattle. Specifically, and without limiting the foregoing:

    a. Bear Ranch is permanently enjoined from selling, leasing or giving any of the Covered Cattle to any party other than HeartBrand.[8]

    b. Bear Ranch is permanently enjoined from allowing any third party to use the Covered Cattle for any purpose without the express written permission of HeartBrand.[9]

---

[6] The "Twinwood Cattle" are those full-blood Akaushi cattle acquired by Bear Ranch from Twinwood Cattle Company and also includes any offspring, semen, or embryos derived therefrom.

[7] The "Spears Cattle" are those full-blood Akaushi cattle acquired by Bear Ranch from Tony Spears and also includes any offspring, semen, or embryos derived therefrom.

[8] Full-Blood Contract Section I.
[9] Full-Blood Contract Section I.

9

      c.      Bear Ranch is required to register Covered Cattle with the American Akaushi Association and enroll them in the Whole Herd Reporting System.[10]

      d.      Bear Ranch is required to comply with the Rules of the American Akaushi Association, including payment of assessments due under those rules.[11]

      e.      Bear Ranch is required to submit to the American Akaushi Association DNA results for each calf produced from the Covered Cattle.[12]

15. As to all remaining Beeman Cattle or "Beeman Cattle Offspring,"[13] (that is, any that HeartBrand chooses to not purchase or sell at auction), HeartBrand will maintain a constructive trust over the proceeds of any sales of such cattle. Those cattle may be sold without the restrictions. Any amounts Bear Ranch receives for such cattle above $3,796 per head, plus maintenance costs described herein, shall be paid to HeartBrand within 30 days of the sale.

16. The Court retains jurisdiction of this matter for the purpose of overseeing the relief described in paragraphs 8 through 15. The Court may appoint a special master if substantial disputes arise concerning the enforcement of this judgment.

---

[10] Full-Blood Contract Section V; F-1 Program Contract Section VII.
[11] Full-Blood Contract Section V; F-1 Program Contract Section VII.
[12] Full-Blood Contract Section X; F-1 Program Contract Section X.
[13] The "Beeman Cattle Offspring" is any animal with at least one forebear that is or was one of the Beeman Cattle or is descended from any those animals.

17.     Bear Ranch will pay HeartBrand $3,259,972.93 in attorneys' fees and costs.  HeartBrand may file another fee request if successful on appeal.

18.     The amount awarded pursuant to paragraph 17 shall accrue post-judgment interest at the rates set forth in 28 U.S.C. § 1961(a) from the date of the award to the date the amount is paid.

19.     The Court orders execution to issue for this judgment.

20.     The Court denies all relief not granted in this judgment.

21.     This is a FINAL JUDGMENT.

**SIGNED** this 11th  day of August, 2016.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by Designation